CIVIL COMPLAINT FORM TO BE USED BY A *PRO SE* PRISONER

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HASSAN A. TUCKER      #GP6788
Full Name of Plaintiff        Inmate Number

v.

JOHN E. WETZEL, PA. DOC SEC'Y
Name of Defendant 1

GEORGE M. LITTLE, PA DOC SEC'Y
Name of Defendant 2

KIMBERLEY, CORRECTIONS OFFICER I
Name of Defendant 3

FISHER, C/O I
Name of Defendant 4

REESE, C/O I
Name of Defendant 5

(Print the names of all defendants. If the names of all
defendants do not fit in this space, you may attach
additional pages. Do not include addresses in this
section).

Civil No. 1:22-CV-0631
(to be filled in by the Clerk's Office)

( X ) Demand for Jury Trial
(___) No Jury Trial Demand

FILED
SCRANTON

APR 29 2022

PER _____
DEPUTY CLERK

I.    NATURE OF COMPLAINT

Indicate below the federal legal basis for your claim, if known.

X     Civil Rights Action under 42 U.S.C. § 1983 (state, county, or municipal defendants)

___   Civil Rights Action under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388
      (1971) (federal defendants)

___   Negligence Action under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, against the
      United States

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HASSAN A. TUCKER #GP6788

V.

CIVIL No. _____

Robert Vance, Captain
Name of defendant 6

(X) Demand for Jury trial

Pelosi, Hearing Examiner
Name of defendant 7

Nature of Complaint:

Civil Rights Action under 42 U.S.C. § 1983

**II.**   **ADDRESSES AND INFORMATION**

**A.**   **PLAINTIFF**

_HASSAN A. TUCKER_

Name (Last, First, MI)

_D.O.C # GP6788_

Inmate Number

_PA. D.O.C.  SCI  PHOENIX_

Place of Confinement

_1200  MoKychic  Drive_

Address

_Collegeville, Montgomery, PA. 19426_

City, County, State, Zip Code

Indicate whether you are a prisoner or other confined person as follows:

\_\_\_   Pretrial detainee

\_\_\_   Civilly committed detainee

\_\_\_   Immigration detainee

_X_   Convicted and sentenced state prisoner

\_\_\_   Convicted and sentenced federal prisoner

**B.**   **DEFENDANT(S)**

Provide the information below for each defendant. Attach additional pages if needed.

Make sure that the defendant(s) listed below are identical to those contained in the caption.   If incorrect information is provided, it could result in the delay or prevention of service of the complaint.

Defendant 1:

_John E. Wetzel_

Name (Last, First)

_Pennsylvania  Department  of  Corrections  Secretary_

Current Job Title

_1920 Technology Parkway_

Current Work Address

_Mechanicsburg, PA. 17050 (~~centre~~  county)_

City, County, State, Zip Code

Defendant 2:

George Little

Name (Last, First)

Secretary of PA.D.O.C.

Current Job Title

1920 Technology Parkway

Current Work Address

Mechanicsburg, Cumberland, Pennsylvania, 17050

City, County, State, Zip Code


Defendant 3:

Kimberley (first name unknown to plaintiff)

Name (Last, First)

Correctional officer I

Current Job Title

1 Rockview Place

Current Work Address

Bellefonte, Centre, Pennsylvania, 16823

City, County, State, Zip Code


Defendant 4:

Fisher (first name unknown to plaintiff)

Name (Last, First)

Correctional Officer I

Current Job Title

1 Rockview Place

Current Work Address

Bellefonte, Centre, Pennsylvania, 16823

City, County, State, Zip Code


Defendant 5:

Reese (first name unknown to plaintiff)

Name (Last, First)

Correctional Officer

Current Job Title

1 Rockview Place

Current Work Address

Bellefonte, Centre, Pennsylvania, 16823

City, County, State, Zip Code

Defendant 6:

      Robert Vance

      Captain at sci Rockview

      1 Rockview Place

      Bellefonte, Centre, Pennsylvania, 16823

Defendant 7:

      Pelosi (first name unknown to plaintiff)

      Hearing Examiner

      1 Rockview Place

      Bellefonte, Centre, PA., 16823

III.   STATEMENT OF FACTS

State only the facts of your claim below. Include all the facts you consider important. Attach additional pages if needed.

   A.   Describe where and when the events giving rise to your claim(s) arose.

All of the events in this Complaint occurred in Pennsylvania's D.O.C. at State Correctional Institutions at SCI Rockview (from 8-1-19 to 3-31-21) and SCI Phoenix (from 3-31-21 to Present), and Mt. Nittany Hospital (from 4-27-20 to 4-30-20), while Mr. Tucker was and remains in PA DOC Custody. (See attached Complaint pages 1-18)

   B.   On what date did the events giving rise to your claim(s) occur?

The events giving rise to these claims occurred on 8-1-19 and they are presently ongoing. Significant events also occurred on 4-27-20. Mr. Tucker was in D.O.C. Custody at all relevant times.

   C.   What are the facts underlying your claim(s)? (For example: What happened to you? Who did what?)

On 8-1-19 Mr. Tucker was placed in Restricted housing Unit at SCI Rockview. Mr. Tucker was interrogated by SCI Rockview's administration while Robert Vance questioned Tucker about his religious beliefs and threatened to place Mr. Tucker on Restricted Release List (indefinitely in solitary confinement) Vance wrote discriminatory remark and information on a misconduct report charged to Mr. Tucker to retaliate for Tucker's reticence during Vance's interrogation. As a result of Robert Vance's prejudicial acts Hearing examiner Pelosi denied mr. Tucker's right to call witnesses for the misconduct hearing on 8-15-19 and rendered an impartial decision in collusion with Robert Vance which subjected Tucker to 150 days of disciplinary custody in Restricted housing, absent due process of a fair and impartial Hearing. On 11-17-19, following a surreptitious process that took place during Tucker's 150 day RHU sanction, Mr. Tucker was placed on the Restricted Release List by D.O.C. secretary John E. Wetzel without any right to be heard and absent any provisions to appeal the placement on RRL status, which keeps Mr. Tucker in solitary confinement indefinitely, imposing extreme restrictions and severe conditions. On 4-27-20, Correctional officers Fisher, Reese, and Kimberley physically abused and assaulted Mr. Tucker during and immediately following a suicide attempt (please see attached complaint pages 8-12) while Tucker was in a state significant Functional Impairment. (see attached complaint pages 1-18 for all facts, claims, relief)

## IV.    LEGAL CLAIM(S)

You are not required to make legal argument or cite any cases or statutes.  However, state what constitutional rights, statutes, or laws you believe were violated by the above actions.  If you intend to assert multiple claims, number and set forth each claim in separate paragraphs. Attach additional pages if needed.

This Complaint asserts Legal Claims of Violations of the First, Fifth, Eighth, and Fourteen Amendments to the United States Constitution, and the Pennsylvania Constitution. This complaint also asserts rights violated under the Americans With Disabilities Act Title II, and section 504 of the Rehabilitation Act. (see attached complaint, pages 1-18 for additional information.)

## V.    INJURY

Describe with specificity what injury, harm, or damages you suffered because of the events described above.

Due to protracted solitary confinement and the cruel and unusual conditions and abuse endured herein Mr. Tucker suffers irreversible psychological, physical damage. See attachments

## VI.    RELIEF

State exactly what you want the court to do for you.  For example, you may be seeking money damages, you may want the court to order a defendant to do something or stop doing something, or you may be seeking both types of relief.  If you are seeking monetary relief, state your request generally.  Do not request a specific amount of money.

Mr. Tucker seeks Compensatory, injunctive, declaratory, and punitive judgement against the defendants for damages and violations of Rights asserted herein this Complaint to desist this punishment. (see attachment, pages 16-18)

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HASSAN TUCKER
     plaintiff,

     v.

JOHN E. WETZEL, SECRETARY OF THE
PENNSYLVANIA DEPARTMENT OF CORREC-
TIONS; GEORGE M. LITTLE, SECRETARY
OF THE PENNSYLVANIA DEPARTMENT OF
CORRECTIONS; CORRECTIONAL OFFICER I.
KIMBERLEY, FISHER, CORRECTIONAL OFFICER;
REESE, CORRECTIONAL OFFICER; ROBERT
VANCE, CAPTAIN; PELOSI, HEARING EX-
AMINER,

       Defendants.

CIVIL No. _____

JURY TRIAL DEMANDED

SUPPLEMENTAL JURISDICTION EVOKED

## COMPLAINT

Plaintiff Hassan Tucker, pro se, files this complaint and states as follows:

### Jurisdiction and Venue

1. This action is being brought under the Civil Rights Act of 42 U.S.C. §1983 which provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the constitution and laws of the United States.

2. This Honorable Court has the jurisdiction over these Federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This complaint also includes pendant state law claims over which this Honorable Court has supplemental jurisdiction pursuant to 28 U.S.C. 1367.

4. Venue is proper in the MIDDLE DISTRICT OF PENNSYLVANIA pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims transpired within the territorial juris-diction of this District and the defendants are subject to personal jurisdiction within this District.

1

<u>Parties</u>

5. Plaintiff Hassan Tucker is an adult individual who is currently incarcerated at The State Correctional Institution at Phoenix ('SCI Phoenix' hereinafter), located at 1200 MoKychic Drive, Collegeville, PA. 19426.

6. Defendant John E. Wetzel is an adult individual who is employed by the Commonwealth of Pennsylvania as the Secretary of the Department of Corrections and maintains offices located at 1920 Technology Parkway, Mechanicsburg, PA. 17050. Defendant Wetzel is being sued in his individual capacity.

7. Defendant George M. Little is an adult individual who is employed by the Commonwealth of Pennsylvania as The Secretary of the Department of Corrections and maintains offices located at 1920 Technology Parkway, Mechanicsburg, PA. 17050. Defendant Little is being sued in his individual capacity.

<u>Facts</u>

8. Hassan Tucker has been incarcerated serving a term of Life without the possibility for parole since January 2005; in the custody of the Pennsylvania department of Corrections during all times relevant to this matter.

9. In April of the year 2006 Tucker was housed at the State Correctional Institution (SCI hereinafter) of Graterford for classification.

10. In May of the year 2006 Tucker was sent to SCI Camphill for further classification and evaluation before being assigned for permanent SCI location.

11. During classification and evaluation at SCI Camphill Tucker was examined by a Mental health profession and health care professionals to review preexisting mental health and physical conditions relevant to Tucker's individual recovery plan and appropriate housing.

12. In June of 2006 Tucker was sent to SCI Dallas which was designated as his permanent housing location.

13. In July of 2006 Tucker was psychologically evaluated and prescribed Zoloft to treat

2

## Parties

7a. Kimberley, Correctional officer, is an adult individual who has been employed by the Pennsylvania D.O.C at all times pertinent to this complaint and is being sued in his individual capacity. (first name unknown)

7 b. Fisher, Correctional officer, is an adult individual who has been employed by the commonwealth of Pennsylvania's Department of Corrections at SCI Rockview during all times pertinent to this complaint and is being sued in his individual capacity. (first name Unknown to plaintiff)

7. c Reese, Correctional officer at SCI Rockview, is an adult individual who has been employed by the Commonwealth of Pennsylvania's Department of Corrections during all times pertinent to this complaint. (first name is unknown to plaintiff). Reese is being sued in his individual capacity.

7 d. Robert Vance, Correctional officer/captain is an adult individual who has been employed by the Commonwealth of Pennsylvania's Department of Corrections at SCI Rockview during all times relevant to this Complaint.

7 e. Pelosi, Hearing Examiner, is an adult individual who has been employed at SCI Rockview in the Commonwealth of Pennsylvania's Department of Corrections during all times relevant to this complaint and is being sued in her individual capacity. ( Pelosi's first name is unknown to plaintiff).

diagnosis of depression, anxiety, and related disorders.

14. Upon evaluation of Tucker's mental health and medical records containing all of his significant mental and physical impairments. D.O.C. officials learned of all preexisting disabilities.

15. Tucker was born with severe asthma and frontal lobe damage of the brain.

16. Tucker has a history of suicidal vulnerability that dates as far back as 1996.

17. Tucker has a history of losing consciousness due to concussions suffered as a child as well as hyperventilation during severe asthma attacks.

18. Tucker has remnants of failed medical equipment (internal fixator) attached to the largest bone in his body (femur) from 1 of 3 operations required as a result of multiple gunshot wounds sustained at 15 years of age.

19. Tucker's knees lack full range of motion and his knees and back fail at times, as a result of gunshot wounds and sciatica.

20. Tucker has a litany of mental and physical impairments that D.O.C. official are aware of yet they have been indifferent.

21. Tucker has been improperly assigned housing unit placements.

22. Prisoners with impairments which make living on higher tiers of the unit hazardous to their safety are assigned to bottom bunk/bottom tier status

23. During the month of April, 2017 Tucker lost consciousness and fell head-first from the top tier of F-block at SCI Dallas, as a result of improper cell assignment, 20 feet above ground level.

24. Tucker was taken to Geisinger Choice emergency room where the wound atop his head was closed with 7 staples;

25. Tucker has been banausic in the aftermath of the traumatic ordeal, and assigned bottom.

26. In August 2017 following accusations of assault made against Tucker by a prisoner named Lovelings, Tucker was issued a misconduct report.

27. Tucker had a hearing for the misconduct report presided over by Hearing Examiner McKeon who refused to call Tucker's witness.

3

28. Tucker was found guilty and sanctioned to 90 days in solitary confinement in SCI Dallas' Restricted Housing unit (RHU).

29. Despite having 90 days to arrange a transfer to another SCI as Tucker served a 90 day sanction for assault, When Tucker sanction concluded in November of 2017 D.O.C. officials Kept Tucker in virtual isolation in the RHU for two additional months of administrative custody pending transfer to SCI Rockview.

30. In the month of January 2018 Tucker was transferred to SCI Rockview, after spending his first 12 years in D.O.C. custody at SCI Dallas.

31. In September of 2017 while in the RHU at SCI Dallas, Tucker was diagnosed with anxiety attributed to "difficulty adapting to" conditions of solitary confinement.

32. In August 1st of 2019 Tucker was placed in solitary confinement under investigation, for an incident where an inmate was assaulted.

33. On the 13th of August 2019, Tucker was issued a misconduct for assaulting the prisoner who informed the reporting officer (Captain Robert Vance) that Tucker was not responsible for his injury.

34. On August 14th 2019 Tucker submitted forms for summoning witnesses to the RHU lieutenant at 6:30am (approximately), whom signed the forms requesting witnesses and processed them.

35. On August 15th Tucker attended a misconduct hearing presided by Hearing Examiner Pelosi who refused honor Tucker's requested witnesses; including the prisoner who was injured and informed D.O.C. officials that Tucker was not responsible for his injury.

36. On August 15th of 2019 Hearing Examiner Pelosi sanctions Tucker to 150 days of disciplinary custody despite a preponderance of evidence and witnesses in Tucker's favor.

37. On August 1st 2019, Tucker was escorted to the security department in SCI Rockview and confronted by the prison's entire administration (warden, deputies, majors, captain, lieutenant, sergeant, and C/O ), at 19pm approximately.

38. On August 1st 2019 at approximately 9pm, during the interrogation, Tucker

7

was asked by Captain Vance, "Do you want to go on RRL?"

39. Tucker was asked by Vance, "are you in a gang?" To which Tucker replied "No".

40. Vance asked Tucker, "are you a muslim?" and Tucker stated, "Yes".

41. SCI Rockview's administration had decided to pursue "RRL" placement for Tucker on August 1st, approximately 2 weeks prior to providing the misconduct Report or Hearing where Hearing Examiner Palosi would determine guilt.

42. Captain Vance wrote additional information on Tucker's misconduct report such as his (Tucker's) Life sentence which is implicative of Tucker's conviction and highly prejudicial to the Hearing examiners ability to render an impartial verdict.

## Removal / Placement on Restricted Release

43. Restricted Release List status is the most severe extent of constraint in the Pennsylvania Department of Correction.

44. Restricted Release List (RRL) is a status of indefinite solitary confinement.

45. On November 18, 2019, Tucker was assigned/approved for RRL placement as he was serving a 150 day sanction on disciplinary custody (DC status) in SCI Rockview's RHU.

46. Tucker was precluded from participating in any proceedings required before being placed on RRL.

47. Tucker did not receive any notice to inform him that RRL status was going to be sought for him.

48. Tucker was not offered any opportunity to contest the RRL placement or propound any any input or information on his behalf.

49. On 12-26-19 Tucker received a D.O.C. document (DC-141 Part 1 #D 42705i) notifying him that he was placed on Adminstrative Custody status because "verified threats have been made against inmate Tucker by inmates in general population."

50. Tucker's 150 day sanction in the RHU expired on 12-26-19.

51. On or about 1-2-20 Tucker was escorted to a Program Review Committee hearing where was informed for the first time that RRL status had been applied for by SCI Rockview's Superintendent and approved for Tucker by D.O.C. secretary Wetzel on November 18, 2019.

52. SCI Rockview's application submitted to Secretary Wetzel required a vote sheet which is voted on by Rockview's, 2 Deputy Superintendents, Superintendent; as well as the Central Regional Director, and Deputy Secretary, before Wetzel makes the ultimate decision to place Tucker on the RRL.

53. During Tucker's attendance at a Program Review Committee ('PRC' Hereinafter) hearing conducted in November of 2019, Deputy Superintendents M. Houser and McMahon were apart of the committee; and did not inform Tucker that RRL status was being sought for him or, that RRL status had been approved after they had voted in favor of RRL placement for Tucker.

54. Tucker was informed by Deputy Houser that RRL status cannot be appealed, during a PRC Hearing held in January of 2020.

55. Secretary of the D.O.C. is the sole decision maker to ultimately decide to assign, continue, or remove Tucker's RRL status.

## Conditions of Confinement

56. RRL status requires Tucker to remain housed in the RHU which is a security Level 5 (SL5 hereinafter) housing unit recently recognised as indecent for Capital case prisoners.

57. In the RHU Tucker is confined to a small container for 22-24 hours a day.

58. The small space where Tucker is kept for 22-24 hours daily has a metal toilet, steel, desk, cabinet, and top-bunk bed, which drastically restricts his ability to move around for exercise or even sit upright in bed.

59. Tucker's completely isolated from all physical contact or interaction with other people, including but not limited to; other prisoners, staff, religious advisers, legal counsel, friends, or family (immediate family) visitors.

60. Tucker is handcuffed and shackled whenever exiting his cell to go anywhere inside of or outside of the prison.

61. Tucker remains shackled to stationary iron cages or gates with his hands cuffed and belted to his waist for hours as he attends screen video visits, official legal visits, and law library; alone in secured

rooms.

62. Since August 01, 2019 Tucker has been subjected to the following inhumane treatment and deprivations which impose immediate and pernicious significant atypical hardship beyond normal prison life in the general population of Pennsylvania's State Correctional institutions:

a. Tucker's cells in Rockview's RHU were windowless and his cell assignments in SCI Phoenix are obfuscated with tint to prevent any view beyond the container he spends virtual the entire day inside of everyday.

b. Tucker's cells have been illuminated 24 hours/7days a week by powerful florescent lights causing sleep deprivation, disorientation, deterioration of visual acuity, and unawareness concerning day which inhibits Tucker ability to adhere to religious beliefs requiring prayer to be performed during their prescribed times.

c. Tucker has had to endure very loud noise created by prisoners as well as correctional officers, which is constant and consistent with the RHU.

d. Tucker has been housed with prisoners suffering with severe mental illnesses (SMI), whom collect bodily waste (feces, urine, semen, blood, vomit) and spoiled food, to throw out of their food apertures, and underneath the bottom of the doors as well as smearing it on the walls, and ventilation screens.

e. The is no long water hose or direct source of water to properly clean the waste from the cells or surrounding areas so the waste runs inside of Tucker's cell or gets slung beneath his door when inmates from general population (wearing haz mat protective gear) attempt to mop up the bodily waste.

f. Tucker is compelled to move to a different cell every 90 days and has been placed inside of cells laden with remnants of bodily waste on every part including the bed and food aperture, and ventilation as well as the water fountain.

g. Tucker been denied cleaning supplies (disinfectant, rags, or toilet brushes, etcetera) to attempt to sterilized the cells he was confined to for 23 hours a day (24 hours on weekends) for 90 days at a time.

h. Tucker was denied basic issue clothing such as socks, underwear, and under shirts (afforded to general population prisoners) because the tailor shop/laundry supervisor does not deliver to SL5 housing units.

i. Several times (and as recently as July 30, 2021) during Tucker solitary confinement at SCI's Rockview and Phoenix, staff deployed and weaponized strong chemical spray from canisters as large as fire extinguishers to extract a single SMI prisoner or problematic prison in close proximity to Tucker, who is asthmatic; without any way to escape the fumes or any exhaust system to dispel the suffocatingly obnoxious spray which permeated his cell.

j. Tucker has been deprived of the institutional laundry service available all general population prisoners; leaving him no choice other than to handwash his clothing and bedding (including blanket/quilt) with a water fountain; and a sink that only holds about 1½ gallon of water at one time.

k. Tucker has been extremely restricted from possessing personal property; being limited to two pairs of underclothes, one religious book, and writing paper. Tucker can not keep any mail, pictures, leisurely literature, hygiene products, or food that he owned before August 01, 2017.

l. Tucker only keep a small amount of legal materials in his cell at one time and must exchange one document for one other legal document in order to retrieve legal material from his property in storage.

m. Corrections officers conduct cell checks every 15 minutes around the clock, during which officers enter the RHU through large iron sliding doors and punch checkpoints on the unit's walls that beep twice loudly reverberating throughout the RHU before flashing a bright LED flashlight directly in Tucker's eyes.

n. As a result of 24 hour noise and lighting Tucker suffers extreme sleep deprivation.

o. Tucker's only opportunity to attempt to seek reprieve from severely long stretches inside of the putrid 10 foot by 6 foot cell is, to be taken to a kennel-style cage approximately the same size as the cell.

### Unnecessary and Excessive use of Force

63. Under the weight of the brutal conditions of Solitary Confinement in SCI Rockview's RHU, on April 27th 2020, Tucker attempted to commit suicide by suspended asphyia at approximately 8:50 AM in his assigned cell on A-wing of G-block's RHU.

64. The first officer (C/O I Fisher) to respond to the cell for the suicide attempt was the subject of a Prison Rape Elimination Act (PREA) complaint filed by Tucker in March of 2020, with SCI Rockview's Security department.

65. As the first D.O.C. official to enter the cell, C/O I Fisher cut the bed sheet (from the 10 foot high vent) which was wrapped around Tucker's neck and let his unconscious body fall limp to the concrete floor between the toilet and metal bed frame.

66. Tucker's head hit the floor and he regained consciousness to feel officer kneeling on the back of his head/neck area, twisting his cuffed wrists, and kneeling on his ankles with their full body weight as Tucker complained of severe pain.

67. Tucker was handcuffed behind his back and forced to lay posteriorly on the gurney for an extensive period of time until he arrived at the medical Department where the licensed Health Care professional ordered officers to adjust the manacles and their position.

68. Injury to Tucker's neck and wrists were exacerbated by Officer's assaultive response to his suicide attempt and indifference during transport to the medical department.

69. C/O I Reese recorded the abuse which ensued from Tucker's assigned cell up until the Licensed Health care provider (LHP) ordered the cessation of the pain being inflicted by the handcuffs, to desist additional injuries.

70. The LHP determined that Tucker needed medical care beyond the capabilities of SCI-Rockview's medical Department.

71. On 4-27-20 at approximately 9:50 AM - 10:00 AM Tucker was taken to Mt. Nittany Hospitals emergency room where he was examined by a Doctor who determined that he should remain at Mt. Nittany for at least 3 days due to his condition which included heart trauma, concussion, neck, wrist, and leg bruises; as well as blood clots in his eyes and hands.

72. Upon Arrival at SCI's _Rockview_ medical department the correctional officers

attached a Remote Activator Custody Control (R.A.C.C.) vest to Tucker's Torso, which administers 50,000 volts of electricity when deployed.

73. Officer Reese (CIoI) recorded as the consequences of remotely activating the R.A.C.C. were admonished. The long list of reactions to the subjection of 50,000 volts include involuntary bowel movement, organ failure, and possible death.

74. Vulnerability to suicide and self-harm have been defined by Psychiatrists of The Disability Rights Network of Pennsylvania and recognised by D.O.C. officials as a state of "significant Functional Impairment"

75. Upon being placed inside of a hospital room at Mount Nittany officers, Kimberley (CIoI) was assigned to supervise Tucker.

76. CIoI Kimberley was previously reprimanded by Unit Manager Pasquale for denying Tucker breakfast and the right to Practice his religion upon conclusion of Ramadan in 2018, when Tucker filed a grievance (DC 804 Part I) regarding the violations.

77. CIoI Kimberley was armed with a revolver as well as the remote control to the R.A.C.C. vest that was placed on Tucker's body.

78. CIoI Kimberly activated the R.A.C.C. which sent unbearable electrical currents through Tucker's body for several seconds, causing Tucker to involuntarily release his bowel, and grind his teeth until they chipped, as he was handcuffed and shackled (right wrist/left ankle) to the hospital bed.

79. Kimberley sat and brandished the revolver firearm as he forced Tucker to wait several hours to clean the feces from his body.

80. Kimberley placed Tucker inside of the hospital room's bathroom (with one entrance/exit) while Tucker was handcuffed and shackled, and allowed Tucker to attempt to clean the feces from his posterior and nether regions, using wet wipes.

81. Tucker was handcuffed and shackled to the hospital bed for virtually three days straight; even as he attempted to sleep during convalescence.

82. The Correctional officer with autonomy away from the SCI, maintained control of the television in the hospital room where Tucker was kept; and played the volume stridently throughout the night rendering Tucker's attempts to sleep futile.

83. On April 30, 2020 upon reentering SCI Rockview, Tucker was stripped of all raiments and confined to a cold and filthy cell, with no bed mattress, sheets, or security quilt.

84. The cell was located in the Psychiatric observation ward and laden with bodily waste that permeated the cell with a putrid smell.

85. Tucker was denied any literature or institutional provisions to file grievances or propound any formal or informal requests to staff. (DC 135 or DC 804 Part 1)

86. Tucker was denied meals until May 4th 2020 (from 4/30/20 - 5/4/20).

87. The Psychiatric Observation Cell had a surveillance camera that allowed officers to watch Tucker writhe in the cold cell utterly exposed.

88. Tucker was deprived of the opportunity to shower from April 27th 2020 to May 05, 2020, while remnants of feces festered on his buttocks and legs.

89. After receiving his first shower in 9 days, Tucker was given worn out hand-me-down under garments from a pool of clothes collected from previous psychiatric inhabitants who had the ability to wear their clothing while treated similarly regarding hygeine deprivations.

90. Upon returning to SCI Rockview on 4/30/20 Tucker informed the psychiatrist that he did not feel suicidal, so Tucker should have been released from psychiatric observation cell (P.O.C.) within 24 hours.

91. On May 07, 2020 Tucker was moved from the P.O.C. to the medical housing unit (MHU) to quarantine for Covid 19 for the remainder of 14 days required for all prisoners entering the prison.

92. On May 13th 2020 Tucker was returned to the RHU under worse conditions than those which exacerbated and overwhelmed Tucker's anxiety, slough of despond, and suicidal

vulnerability.

93. C/O I's (officer) Fisher, Reese, Sharrow, and others ridiculed Tucker about his state of significant functional impairment while housed in the RHU from 5/13/20 - 3/30/21 when he was transferred to SCI Phoenix.

94. C/O I Fisher was assigned to escort Tucker to phone calls, with centre safe PREA correspondents, which were necessary due to C/O I Fishers PREA violations.

95. C/O I Fisher and his closest co-workers (C/O I's Sharrow, Reese, C/O II Hunter) encouraged Tucker to try killing himself again and Fisher stated to Tucker that he "should have let" Tucker "Die".

96. Fisher asked other officers such as C/O I's Reese and Sharrow, And C/O II's Hunter, Wagner, and Bartlett to deprive Tucker of everything, so the collectively defiled Tuckers meals, refused to take him to scheduled visits, deny him basic issued cleaning supplies, threw away Tucker's laundry, and destroyed his stored property in their control.

97. On 3/31/21, Tucker was transferred to SCI Phoenix to partake in a purported Intensive Management Unit (IMU) program; designated for RRL prisoners.

98. There is no Policy or effective procedure to support the IMU which operates under SL5 housing to maintain extreme deprivations, conditions, and treatment.

99. On July 8th, 2021, Tucker received a copy of a mass memo from Secretary Wetzel addressing all "IMU inmates" about the creation of the (IMU).

100. Secretary Wetzels July 8th 2021 mass memo stated in part; "Your path off of RRL is for you to maintain positive adjustment and obtain Unit team/administration's support for removal. Final approval currently remains at the discretion of the Secretary.

101. Tucker has been placed in the IMU despite having any former knowledge of the IMU or any Due process to be heard or contest placement in such extreme and restrictive circumstances indefinitely.

102. Tucker has no misconduct in years, nor is misconduct the rationale for his RRL/

Administrative custody placement.

103. Tucker is sentenced to Life without Parole, so as long as Tucker is subject to the vague directives concerning RRL/IMU, he could remain in virtual isolation, enduring these conditions for the rest of his natural life, imposing abysmal hopelessness.

104. Tucker is in serious peril of experiencing crippling psychological impairments for the rest of his life and will suffer pernicious effects on his mental health as he's continually held in solitary confinement.

105. The risks used inherent in indefinite solitary confinement are well known and apparent.

106. At all times relevant to this civil complaint, defendant Wetzel knew the harms proposed by prolonged solitary confinement, yet he failed to take reasonable action or measures to end the privation imposed on Tucker's basic human needs.

107. Defendant Wetzel has previously testified that he is aware of the body of literature and information expounding the effects of long-term solitary confinement.

108. Dr. Stuart Grassian is a board certified Psychiatrist who was on the faculty of the Harvard Medical School for over 25 years. He is a world renowned expert on the effects of solitary confinement, and has extensive experience in evaluating the psychiatric effects of solitary confinement.

109. Tucker is forced to sit in groups, with severely mentally ill (D-code) stability D-code prisoners, C-code prisoners who are undiagnosed or have had their D-codes downgraded or removed, to discuss things that could be used against Tucker in Court, because groups questions include questions of past and future crimes allegedly committed in violation of the Fifth Amendment of the Pennsylvania and United States Constitutions while Tucker is handcuffed to a stationary table with uncuffed prisoner moving around him in close proximity.

110. Mr. Tucker is coerced to answer questions of the IMU and its psycho-education program under duress, about crimes or what Tucker would do in some future criminal episode as a result of anger, rage, or frustration; in violation of the Fifth Amendment

of the ~~Pennsylvania~~ Pennsylvania and United States Constitutions.

111. During the course of his professional career, Dr. Grassian has opined as an expert regarding the psychiatric impact of federal and state segregation and disciplinary units.

112. Dr. Grassian's body of work was recognised by Supreme Court Justice Anthony Kennedy in his concurring opinion in Davis v Ayala, 576 U.S. 257, 289 (2015) ("research still confirms what this court suggested over a century ago: Years on end of near total isolation exact a terrible price... common side effects of solitary confinement include anxiety, panic, withdrawal, hallucinations, self mutilation, and suicidal thoughts and behaviors.").

113. Dr. Grassian has authored, "Psychiatric Effects of Solitary Confinement, 22 Wash. U.J.L. & Pol'y 325 (2006)" and several other scholarly compilations regarding the psychiatric effects of Solitary Confinement.

114. Defendant Wetzel has previously admitted his particular familiarity with Dr. Grassian's work research and had discussed Dr. Grassian's findings concerning solitary confinement with other doctors.

115. Defendant Wetzel has previously admitted that an inmate's mental health should be considered when placing an inmate in long term solitary confinement, yet Tucker has been informed by SCI Phoenix Deputy Panasiewicz and Corrections counselor Smith, as recently as July 14, 2021 that Secretary Wetzel has continued RRL status for Tucker and "there are no provision to appeal RRL", despite mental infirmities, and psychiatric episodes as severe as attempted suicide by Tucker on April 27, 2020.

116. In recent years, the use of solitary confinement has been publicly condemned as excessive and inhumane. When describing the Davis case cited above, Justice Anthony Kennedy told the House Appropriations Subcommittee on Financial Services and General Government: "This idea of total incarceration just isn't working, and it's not humane..... Solitary

Confinement literally drives men mad."

117. Six years ago, in 2016 the Department of Corrections acknowledged "the need to reduce the use of administrative segregation (identified as Restricted Housing/SL5 in Pennsylvania) and vowed it's commitment to doing this.

118. Tucker has remained in solitary Confinement for over four years (30 consecutive months) and counting, with every indication that he'll remain on RRL regardless of mental health staff's and D.O.C. officials awareness of Tucker's insidious decline and maladaptive mechanisms of extreme self-harm as a result of psychological suffering resulting from forlorn isolation.

119. On Restricted Release List status Tucker endures more severe restriction than those recently condemned for the Capital Case Unit (CCU), which was also an SL5 RHU.

120. Capital case unit prisoners could get married; while Tucker is prohibited from marrying his affianced, Darsea Smith, as long as he is on the RRL, due to an unconstitutional policy (DC-ADM 821) in violation of the Pennsylvania and United States constitution's First amendments.

121. Tucker, currently housed at SCI Phoenix on the same unit "L-Block" with Capital Case prisoners, so he is treated as the capital case prisoners have always been treated.


## CLAIMS

122. Predicated upon the facts herein, Mr. Tucker asserts the following claims against the defendants for violations of Pennsylvania's and The United states' constitutions, as well as Laws and treaties thereof:

      a. Eighth Amendment Cruel and Unusual Punishment

      b. Fourteenth Amendment Due Process, deprivations of equal protection, liberty,

property.

c. Fifth Amendment violations to the United States and Pennsylvania Constitutions.

d. First Amendment violations to The United States and Pennsylvania Constitutions.

## Exhaustion of administrative remedies

123. Mr. Tucker has exhausted any available administrative remedies for all claims herein.

124. No provisions to appeal RRL status exist.

## Relief Requested

125. Wherefore, plaintiff, Mr. Tucker requests that the Court grant the following relief:

A. Issue a declaratory judgement stating that:

1. The prolonged isolation in solitary confinement administered and maintained by defendants Wetzel and Little, absent any provision for plaintiff Tucker to contest or appeal RRL placement violates the plaintiffs rights under the Fourteenth Amendment to the United States Constitutions and the Pennsylvania Constitution.

2. The indefinite duration and horrendous conditions of confinedment which defendants Wetzel and Little have condemned Tucker, to violate plaintiffs rights under the United States Constitution and the Pennsylvania constitutions Eighth Amendment, prohibiting cruel and unusual punishments.

3. Correction officers' Fisher, Kimberley, Sharrow, and Reese physical abusive of plaintiff Tucker during his state of significant functional impairment, violated the plaintiffs rights under the Eighth Amendment to the United States Constitution and constituted an assault and battery under State laws of Pennsylvania.

4. The RRL status, having no appellate provisions, assigned to Mr. Tucker by defendant Wetzel and maintained by PA. D.O.C. secretaries Wetzel and LITTLE, explicitly prohibits Mr. Tucker from marrying his affianced, violating Mr. Tucker's First Amendment and Fourteenth Amendment rights to the UNITED STATES and Pennsylvania Constitutions.

5. Compelling Mr. Tucker to participate in purported IMU psychoeducation groups where he is required to divulge ostensive self incriminatory information amongst staff and prisoners (with active criminal matters pending) standing to use the information against plaintiff, creates a violation of his Fifth Amendment rights to the United States and Pennsylvania Constitutions.

B. Award Compensatory Damages in excess of the following amounts:

1. $75,000 Jointly and severally against defendants JOHN E. WETZEL and GEORGE M. LITTLE for denial of Due Process regarding the assignment and nature of RRL, being protracted isolation in indefinite solitary confinement under severe restrictions and conditions, constituting cruel and unusual punishment causal of irreversible physical and psychological detriments, and deliberate indifference to Mr. Tucker's significant functional impairment of suicidal vulnerabilities, as well as First amendment constitutional prohibitive violation of Mr. Tucker's marriage rights.

2. $80,000 each against defendants Fisher, Kimberley, and Reese for physical and psychological damages inflicted during Mr. Tucker's state of significant functional impairment due to suicidal vulnerability.

3. $80,000 each against Robert Vance and Hearing examiner, Pelosi, for Due Process Violations, retaliatory actions, and United States constitution violations of Sixth and Fourteenth Amendments during ~~imp~~ partial investigation and factfinding during hearing.

C. Award punitive damages in the following amount:

   1. $80,000 each against defendants Kimberley, Fisher, and Reese unnecessary use of excessive force, abuse; constituting assault and battery of the disabled; under Pennsylvania state law.

Mr. Hassan Tucker

## VII.   SIGNATURE

By signing this complaint, you represent to the court that the facts alleged are true to the best of your knowledge and are supported by evidence, that those facts show a violation of law, and that you are not filing this complaint to harass another person or for any other improper purpose.

Local Rule of Court 83.18 requires *pro se* plaintiffs to keep the court informed of their current address. If your address changes while your lawsuit is being litigated, you must immediately inform the court of the change in writing. By signing and submitting the complaint form, you agree to provide the Clerk's Office with any changes to your address where case-related papers may be served, and you acknowledge that your failure to keep a current address on file with the Clerk's Office may result in dismissal of your case.

*Hassan Tucker*

Signature of Plaintiff

4-15-22

Date



Watson Tucker
D.O.C. #JP6788
at Sci Phoenix
1200 Mokychic Dr.
Collegeville, PA. 19426

PRIORITY MAIL
neopost
04/26/2022
US POSTAGE $009.90
ZIP 19426
04 1M12252211

UNITED STATES POSTAL SERVICE
NEOPOST
USPS TRACKING #
9488 8178 9820 3207 2796 22

Office of the Clerk
United States District Court
for the
middle District of Pennsylvania
William J. Nealon Federal Bldg. and U.S. Courthouse
235 North Washington Avenue
P.O. Box 1148
Scranton, PA. 18501-1148

RECEIVED
SCRANTON
APR 29 2022
PER _____ DEPUTY CLERK

PRIORITY MAIL
TRACKED
INSURED
UNITED STATES POSTAL SERVICE
For Domestic and International Use
Label 107, May 2014