IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HASSAN A. TUCKER,** | : | CIVIL ACTION NO. 1:22-CV-631 |
| | : | |
| **Plaintiff** | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **JOHN E. WETZEL,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, Hassan A. Tucker, alleges violations of the First, Fifth, Eighth, and Fourteenth Amendments arising from a disciplinary sanction that resulted in him being placed in the Restricted Housing Unit ("RHU") at the Rockview State Correctional Institution ("SCI-Rockview"), his subsequent placement on the Pennsylvania Department of Corrections' Restricted Release List ("RRL") and resulting solitary confinement, an alleged use of excessive force on April 27, 2020, the conditions of his confinement, and a DOC policy that allegedly prevents him from marrying his fiancée. Defendants have moved to partially dismiss the complaint for misjoinder pursuant to Federal Rule of Civil Procedure 20 and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion will be granted in part and denied in part.

**I.    Factual Background & Procedural History**

Tucker initiated this case through the filing of a complaint on April 15, 2022, and the court received and docketed the complaint on April 29, 2022. (Doc. 1).

According to the allegations in the complaint, Tucker is currently incarcerated in the Phoenix State Correctional Institution ("SCI-Phoenix") and was incarcerated in SCI-Rockview and SCI-Phoenix during the period of time relevant to this case. (Id. at 6, 9). While incarcerated in SCI-Rockview, Tucker was placed in solitary confinement on August 1, 2019 because he allegedly assaulted another inmate. (Id. at 12). After Tucker was placed in solitary confinement, defendant Vance purportedly came to his cell and asked him several questions, including: "Do you want to go on RRL?"; "Are you in a gang?"; and "Are you a Muslim?" (Id. at 13). As a result of this "interrogation," SCI-Rockview officials allegedly decided to pursue RRL status for Tucker. (Id.)

Tucker was subsequently issued a misconduct citation on August 13, 2019 by defendant Vance arising from the alleged assault. (Id. at 12). The citation was referred for a hearing on August 15, 2019 before a disciplinary hearing officer, defendant Pelosi. (Id.) Pelosi, purportedly in collusion with Vance, denied Tucker's request to call witnesses. Pelosi supposedly found Tucker guilty of the underlying misconduct despite the complete absence of evidence supporting her decision. (Id.)

Tucker was placed on RRL status[1] on November 17, 2019. (Id. at 13). According to the complaint, Tucker was not afforded due process before being placed on RRL status. (Id.) The decision to place him on RRL status was allegedly done by affirmative vote of SCI-Rockview's superintendent and deputy

---

[1] The complaint alleges that placement on RRL subjects an inmate to "indefinite solitary confinement" and that it is the most severe movement restriction a DOC inmate may receive. (Doc. 1 at 13).

2

superintendents, the DOC's central regional director, the DOC's deputy secretary, and the DOC's secretary. (Id. at 14). Deputy superintendent Houser allegedly informed Tucker in January 2020 that he could not appeal the decision to place him on RRL. (Id.) The complaint avers that the ultimate decision of whether to place an inmate on RRL and whether to continue or remove an inmate from RRL is made by the secretary of the DOC. (Id.)

As a result of his placement on RRL, Tucker allegedly remains in solitary confinement for 22-24 hours a day in a cell in which it is difficult to exercise or sit upright in bed. (Id. at 14). He purportedly is restricted from any contact with other prisoners, prison staff, religious advisors, legal counsel, friends, or family. (Id.) According to the complaint, Tucker's cell in SCI-Rockview had no windows, while his cells in SCI-Phoenix contain windows tinted in an opaque manner preventing any view beyond the four walls of his cell. (Id. at 15). His cell has allegedly been illuminated 24 hours a day, resulting in sleep deprivation, disorientation, deterioration of vision, and confusion as to the time of day. (Id.) He has also purportedly been subjected to constant noise on the cell block; he has been housed in a block with inmates suffering from severe mental illness who frequently throw bodily waste and spoiled food from their cells. (Id.) Tucker is allegedly given no access to running water or cleaning supplies that could be used to clean the bodily waste and food waste contaminating his cell. (Id.) According to the complaint, Tucker has been forced to switch cells every 90 days and has been placed in several cells with "remnants of bodily waste" on the walls and fixtures of the cells. (Id.) He

3

has allegedly been denied socks, underwear, and under shirts as well as laundry services, coercing him to handwash his clothing. (Id. at 15-16).

The complaint alleges that on several occasions during Tucker's solitary confinement, prison staff used chemical sprays to remove inmates from their cells in close proximity to his cell, which exacerbated symptoms of his asthma. (Id. at 16). He is also restricted from retaining any personal property in his cell other than two pairs of underclothes, one religious book, and writing paper. (Id.) Corrections officers allegedly check all cells on Tucker's housing unit every 15 minutes, during which they shine flashlights in his eyes and look into his cell. (Id.) The complaint further alleges that Tucker's only reprieve from his cell is a short period of time that he spends inside a "kennel-style cage" that is about the same size as his cell. (Id.)

On April 27, 2020, Tucker allegedly attempted to commit suicide by hanging himself with a bedsheet. (Id.) The first officer to respond to Tucker's cell, defendant Fisher, purportedly cut the bedsheet from Tucker's neck and allowed him to fall to the floor. (Id. at 17). Tucker's head allegedly hit the floor and sometime later he regained consciousness to feel unnamed correctional officers kneeling on the back of his head and neck, twisting his handcuffed wrists, and kneeling on his ankles with their full body weight despite his complaints of extreme pain. (Id.)

Tucker remained handcuffed until he was taken to the prison's medical department, at which point an unnamed nurse directed the officers to loosen the handcuffs. (Id.) Defendant Reese, a correctional officer in the prison, allegedly recorded the officers' actions in restraining Tucker and transporting him to the

medical department with a handheld camera. (Id.) Correctional officers then supposedly attached a "remote activator custody control" ("RACC") to Tucker's torso, a device that was able to remotely administer an electric shock to Tucker's body. (Id. at 17-18).

The nurse examining Tucker after his suicide attempt determined that he needed medical care beyond that which could be provided by the staff at the prison. (Id. at 17). Tucker was accordingly transported to Mt. Nittany Hospital, where an unnamed doctor allegedly diagnosed him with heart trauma; a concussion; bruises to his neck, wrist, and leg; and blood clots in his eyes and hands. (Id.) Defendant Kimberly, a correctional officer at SCI-Rockview, was assigned to supervise Tucker in the hospital. (Id. at 18). Kimberly allegedly had a gun and the remote control that controlled Tucker's RACC on his body. (Id.) Kimberly purportedly activated the RACC for several seconds as Tucker was being handcuffed and shackled to his hospital bed, causing Tucker to involuntarily release his bowels and grind his teeth until they chipped. (Id.) Kimberly then allegedly "brandished" his gun and forced Tucker to wait several hours to have the feces cleaned off his body. (Id.) Defendant Kimberly also allegedly played the hospital room television at high volume throughout the night, making it impossible for Tucker to sleep. (Id.)

On April 30, 2020, Tucker was returned to SCI-Rockview, where he was placed in a "cold and filthy" psychiatric observation cell with no mattress, sheets, or blankets and several stains from bodily fluids on the walls. (Id. at 19). He was allegedly denied meals for four days until May 4, 2020 and was denied the use of a

5

shower from April 27, 2020 to May 5, 2020 while "remnants of feces festered on his buttocks and legs." (Id.)

Tucker was returned to the RHU on May 13, 2020, at which point correctional officers Fisher, Reese, and Sharrow allegedly began ridiculing Tucker for his suicide attempt. (Id. at 20). According to the complaint, these officers encouraged Tucker to attempt suicide again and Fisher stated that he "should have let [Tucker] die." (Id.) Fisher also allegedly directed other officers to "deprive Tucker of everything," which led the officers to "defile" Tucker's meals, refuse to take him to scheduled visits, deny him cleaning supplies, throw away his laundry, and destroy his personal property. (Id.)

Tucker was transferred to SCI-Phoenix on March 31, 2021, for placement in an intensive management unit ("IMU") designed for inmates on RRL. (Id.) Tucker was allegedly subjected to "extreme deprivations" after his transfer to the IMU, but was not given any process to contest his placement in the IMU. (Id.) While in the IMU, Tucker has been forced to participate in group sessions with other inmates where he has been compelled to answer questions about past crimes that he committed and to speculate about future crimes that he might commit. (Id. at 21). The complaint further alleges that Tucker is prohibited from marrying his fiancée while he is on RRL. (Id. at 23).

The complaint raises seven claims for relief: (1) that Tucker's prolonged solitary confinement as a result of his RRL placement by defendants Wetzel and Little constitutes cruel and unusual punishment under the Eighth Amendment; (2) that Tucker's continued placement on RRL by Wetzel and Little without any

procedures available to challenge the placement violates the Due Process Clause of the Fourteenth Amendment; (3) that Wetzel and Little have subjected him to unconstitutional conditions of confinement in violation of the Eighth Amendment; (4) that defendants Fisher, Kimberly, Sharrow, and Reese subjected him to excessive force in violation of the Eighth Amendment and committed assault and battery under Pennsylvania law; (5) that Wetzel and Little violated Tucker's rights under the First Amendment by restricting his ability to marry his fiancée; (6) that compelling Tucker to participate in group IMU sessions violates his Fifth Amendment right to be free from self-incrimination; and (7) that defendants Vance and Pelosi committed retaliation in violation of the First Amendment and violated Tucker's right to due process under the Fourteenth Amendment. (Id. at 23-25).

Defendants moved for partial dismissal of the complaint on August 10, 2022. (Docs. 17-18). Defendants argue (1) that the claims against Wetzel, Little, Vance, Reese, Fisher, and Pelosi are misjoined to Tucker's claims against Kimberly and should be dismissed pursuant to Federal Rule of Civil Procedure 20; (2) that the claims against Wetzel, Little, Reese, Vance, and Pelosi fail as a matter of law and that the claims against Pelosi are time barred under the applicable statute of limitations; (3) that Wetzel, Little, Reese, Vance, and Pelosi are entitled to qualified immunity; and (4) that Tucker's claims for declaratory and injunctive relief should be dismissed because Tucker lacks standing to pursue such relief. (Doc. 18). Defendants do not seek dismissal of Tucker's claims against defendant Kimberly. (See id.) Briefing on the motion is complete and it is ripe for disposition. (Docs. 18, 20-1). We address defendants' arguments below.

## II.  Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal

8

conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants. Sause v. Bauer, 585 U.S. __, 138 S. Ct. 2561, 2563 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### III. Discussion

Tucker brings his constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

### A.     Joinder

We first address defendants' misjoinder argument under Federal Rule of Civil Procedure 20.  Under Rule 20, claims against multiple defendants may be joined in the same action only if:

> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> **(B)** any question of law or fact common to all defendants will arise in the action.

See Fed. R. Civ. P. 20(a)(2).

Defendants argue that claims against all defendants other than Kimberly should be dismissed as misjoined because the allegations against Kimberly are based on a distinct incident that occurred in an outside hospital and the other claims do not arise from the same occurrence.  (Doc. 18 at 5-7).  Tucker argues to the contrary that all of his claims arise from his placement on RRL and are therefore sufficiently related to be joined under Rule 20.  (Doc. 20-1 at 1-2).

We agree with Tucker that the gravamen of his complaint is his placement on RRL.  Defendants Vance and Pelosi allegedly initiated disciplinary charges against Tucker in an effort to have him placed on RRL; defendants Wetzel and Little are allegedly responsible for his initial and continued RRL status; his conditions of confinement, First Amendment, and Fifth Amendment self-incrimination claims arise from the alleged conditions of his confinement on RRL; and his excessive force claims arise from his attempted suicide that allegedly occurred as a result of

those conditions of confinement. Hence, we conclude that all claims arise from Tucker's placement on RRL and are sufficiently related to be joined under Rule 20.

### B. Merits

Turning to the merits of Tucker's complaint, we first consider his claim that his placement on RRL by defendants Wetzel and Little constituted cruel and unusual punishment under the Eighth Amendment. Although placement on RRL does not by itself violate the Eighth Amendment, see Bramble v. Wetzel, No. 4:20-CV-2394, 2022 WL 55021, at *7 (M.D. Pa. Jan. 7, 2022), allegations of prolonged solitary confinement as a result of an inmate's RRL status may be sufficient to state an Eighth Amendment claim upon which relief may be granted. See Clarke v. Coupe, 55 F.4th 167, 179-80 (3d Cir. 2022); Palakovic v. Wetzel, 854 F.3d 209, 225-26 (3d Cir. 2017). Tucker alleges that his RRL placement has led to continued solitary confinement since November 17, 2019, a period of over three years. We find this sufficient to allege a violation of the Eighth Amendment.

Wetzel and Little are not entitled to qualified immunity at this time as to Tucker's Eighth Amendment claim. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. Al-Kidd, 536 U.S. 731, 735 (2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Tucker has sufficiently pleaded an Eighth Amendment violation by alleging that his RRL status has kept him in continued solitary confinement since November 17, 2019. The right

to be free from unconstitutionally prolonged solitary confinement was clearly established throughout that time.  See Palakovic, 854 F.3d at 225-26.

      The complaint additionally states a due process claim against defendants Wetzel and Little based on alleged denial of due process prior to Tucker's RRL placement.  The version of the applicable DOC policy that was in effect when Tucker was placed on RRL allowed the facility manager of a DOC prison to request an inmate's placement on RRL when the inmate "pose[d] a threat to the secure operation of the facility and where a transfer to another facility or jurisdiction would not alleviate the security concern."  See DC-ADM 802 (effective Nov. 14, 2016), *cited as exhibit in* Bramble v. Wetzel, No. 4:20-CV-2394, Doc. 56-2, at *11 (M.D. Pa. Sept. 27, 2021).  Once such a request was made, it would be forwarded to the corrections classification and program manager, the deputy superintendent for centralized services, the deputy superintendent for facilities management, the facility manager, the regional deputy secretary, and the executive deputy secretary. Id. at *12.  The executive deputy secretary was then required to forward the request to the secretary with her recommendation as to whether the inmate should be placed on RRL.  Id.  The secretary was charged with the final determination as to whether the inmate would be placed on RRL.  Id.  The complaint alleges that Tucker was not afforded the process contemplated by DC-ADM 802, as he was not given notice that the prison was seeking RRL placement or any opportunity to contest the placement.  (Doc. 1 at 13-14).  Whether the procedures outlined by DC-ADM 802 were followed when Tucker was placed on RRL is a factual issue that we cannot resolve on a motion to dismiss.

Similarly, Tucker's contention that he could not appeal his RRL placement is sufficient to state a due process claim upon which relief may be granted. Although both the 2016 version of DC-ADM 802 and the current version allow inmates to appeal both the initial decision to place an inmate on RRL and the decision to maintain the inmate's RRL status, see Bramble, No. 4:20-CV-2394, Doc. 56-2, at *15-16; DC-ADM 802, at *15-16 (effective Apr. 18, 2022), there is a dispute of fact as to whether defendants adhered to these appellate procedures with respect to Tucker's RRL placement. Moreover, deputy superintendent Houser allegedly misrepresented to Tucker that he could not appeal his RRL placement. (Doc. 1 at 14). Whether Tucker's purported reliance on this misrepresentation rendered DC-ADM 802's appeal process unavailable is a question of fact that we cannot resolve at this stage of litigation. Hence, we will deny the motion to dismiss with respect to the due process claim against defendants Wetzel and Little.

Wetzel and Little are not entitled to qualified immunity with respect to the due process claim at this stage of litigation. Defendants have the burden to show that they are entitled to qualified immunity, see Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014); Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir. 2010), and they have not developed any arguments as to why they are entitled to qualified immunity other than the conclusory statement that Tucker's allegations "do not demonstrate the existence of any constitutional violations nor do they demonstrate that the individual conduct of these defendants was in any way constitutionally prohibited." (Doc. 18 at 14). We concluded above that Tucker has adequately pleaded a violation of his right to due process, and defendant's conclusory qualified immunity

13

argument is not sufficient to conclude that the due process right at issue was not clearly established at the time of the alleged violation.

Tucker's conditions of confinement claim against Wetzel and Little fails to state a claim upon which relief may be granted. A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. Id. There are no allegations in the complaint that Wetzel and Little were aware of the conditions of Tucker's confinement beyond the fact of his solitary confinement. The conditions of confinement claim is based solely on the fact that Wetzel and Little held the supervisory role of secretary of the DOC. Because this is not a sufficient basis to allege Wetzel and Little's personal involvement, see id., we will dismiss the conditions of confinement claim.

Tucker's Fifth Amendment self-incrimination claim will similarly be dismissed for failure to allege personal involvement. Tucker claims he has been forced to incriminate himself during IMU meetings by making statements about past crimes he committed, but he does not allege how the named defendants were personally involved in this alleged civil rights violation.

Tucker's excessive force claim against defendants Fisher, Sharrow, and Reese fails to state a claim upon which relief may be granted.[2] Excessive force claims require allegations that force was applied "maliciously and sadistically for the very purpose of causing harm." Jacobs v. Cumberland Cty., 8 F.4th 187, 193 (3d Cir. 2021) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). Courts must consider whether force was "applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). several factors inform this analysis, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response.

Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002) (quoting Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)).

Tucker's only allegation of physical contact by defendants Fisher, Sharrow, and Reese is that Fisher cut a bedsheet away from Tucker's neck to prevent Tucker from committing suicide and allowed Tucker to fall to the floor. There is no basis to infer that this contact was done maliciously or sadistically to cause harm. To the contrary, it appears that Fisher was acting to prevent harm to Tucker. Tucker's Eighth Amendment claim also fails as a matter of law to the extent it is based on

---

[2] As noted above, defendants do not seek dismissal of the claims against defendant Kimberly. The claims will be allowed to proceed on that basis.

verbal harassment by Fisher, Sharrow, and Reese.  Harassing language by itself does not violate the Eighth Amendment.  See, eg., Sears v. McCoy, 815 F. App'x 668, 670 (3d Cir. 2020) (nonprecedential); Rieco v. Moran, 633 F. App'x 76, 79 (3d Cir. 2015) (nonprecedential).[3]  Finally, Tucker's allegation that Reese recorded the officers' actions in restraining Tucker and transporting him to the medical department with a handheld camera is not sufficient to state an Eighth Amendment claim, as there is no allegation that Reese failed to intervene in a constitutional violation or himself participated in a constitutional violation.  Hence, we will dismiss the Eighth Amendment claims against Fisher, Sharrow, and Reese.

Tucker's assault and battery claims against Fisher, Sharrow, and Reese will likewise be dismissed.  Under Pennsylvania law, assault is an act intended to cause another person reasonable apprehension of an imminent battery that succeeds in causing such apprehension.  Cucinotti v. Ortmann, 159 A.2d 216, 217 (Pa. 1960).  "Words in themselves, no matter how threatening, do not constitute an assault; the actor must be in a position to carry out the threat immediately, and he must take some affirmative action to do so."  Id.  Battery is a harmful or offensive contact with the person of another.  C.C.H. v. Philadelphia Phillies, Inc., 940 A.2d 336, 340 n.4 (Pa. 2008).  Here, Tucker does not allege any harmful or offensive contact by Fisher, Sharrow, or Reese, nor does he allege any act intended to place him in reasonable apprehension of a harmful or offensive contact.

---

[3] The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

Tucker's due process and retaliation claims against Pelosi and Vance fail to state a claim upon which relief may be granted. Retaliation claims require allegations that (1) plaintiff engaged in constitutionally protected conduct; (2) defendants took retaliatory action against plaintiff that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between plaintiff's protected conduct and defendant's retaliatory action. Javitz v. Cty. of Luzerne, 940 F.3d 858, 863 (3d Cir. 2019). Tucker does not allege that he engaged in protected conduct or any causal connection between his actions and defendants' purportedly retaliatory actions.

As for the due process claim, we agree with defendants that the claim is time barred under the applicable statute of limitations. (See Doc. 18 at 13). Running of the limitations period is an affirmative defense that defendants may raise in a motion to dismiss if the untimeliness is apparent from the face of the complaint. Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017). The limitations period applicable to Tucker's Section 1983 claims claim is two years. See id.; 42 Pa.C.S. § 5524. His claim against Pelosi is based on events that occurred on August 15, 2019, but he did not file his complaint until April 15, 2022, eight months after the

expiration of the two-year limitations period.  We will accordingly dismiss the due process claim against defendant Pelosi as untimely.[4]

Defendants do not advance any arguments for dismissal of Tucker's claim that defendants Wetzel and Little violated his First Amendment right to marry his fiancée.  Hence, we will allow this claim to proceed.

Finally, defendants argue that Tucker does not have standing to seek injunctive or declaratory relief because such relief is forward looking and Tucker only alleges past violations of his constitutional rights.  (Doc. 18 at 14-15).  We disagree.  In the claims we have allowed to proceed, Tucker alleges that as a result of his continued placement on RRL by defendants Wetzel and Little he remains in solitary confinement and cannot marry his fiancée.  We find that Tucker has standing to seek prospective relief to stop these alleged violations of his civil rights.

### C.   Leave to Amend

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile.  Phillips, 515 F.3d at 245.  With the exception of Tucker's due process claim against Pelosi, we find that leave

---

[4] Tucker argues this claim should not be dismissed as untimely pursuant to the continuing violations doctrine because "[t]he conduct resulting from Pelosi's actions [is] ongoing absent any available reprieve." (Doc. 20-1 at 4).  This argument is without merit.  The continuing violations doctrine focuses on "continual unlawful acts, not continual ill effects from an original violation."  Weis-Buy Servs., Inc. v. Paglia, 411 F.3d 415, 423 (3d Cir. 2005).  Tucker also argues that Pelosi's actions violate the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and are therefore subject to a four-year limitations period, (doc. 20-1 at 4), but Tucker has not asserted a RLUIPA claim in this case.  (See Doc. 1).

to amend is appropriate because the dismissed claims are factually, rather than legally, deficient.

## IV. Conclusion

We will grant in part and deny in part the motion (Doc. 17) to dismiss. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER  
Christopher C. Conner  
United States District Judge  
Middle District of Pennsylvania

Dated:     January 19, 2023