In The United States District Court
for The Middle District Of Pennsylvania

Hassan A. Tucker, plaintiff
v.
PA. D.O.C. Secretary John E. Wetzel, PA. D.O.C. Secretary
George Little, and Corrections Officer Kimberley; defendants.

Civil action No. 1:22-CV-0631
(Honorable Judge Christopher C. Conner)
Jury Trial Demanded
Supplemental Jurisdiction Evoked

## Plaintiff's Objection To Defendants' Motion For Summary Judgment

Plaintiff, Hassan A. Tucker, pro se, Hereby this **Motion Objecting To Defndants' Motion For Summary Judgment**, in accordance with Fed.Civ.R.P. 56(e), **Disputes The Factual Allegations** as presented by the defendants in their Motion For Summary Judgment.

1. Plaintiff Hassan A. Tucker did initiate the pleadings relevant to this Civil Action.
2. This Honorable Court did **dismiss** in part and **grant** in part defendants' Motion to dismiss. The plaintiff was granted leave to amend in order to remedy any deficiencies and elected to proceed with the surviving claims in order to simplify litigation, due to plaintiff's inexperience with litigation and lack of legal acumen.
3. The surviving claims (a.-e.) alleged in defendants' motion are veracious.
4. The plaintiff objects to defendants' "affirmative defenses" utterly.

### Objection To Material Undisputed Facts

5. Plaintiff has been incarcerated in the PA D.O.C. since April of the year 2006.
6. Plaintiff was transferred to Sci Phoenix on March 30, 2021, in further violation of his due process rights to the United States Constitution, as a test subject for the IMU (Intensive Management Unit), which is a Restricted Housing Unit (RHU)/Security Level 5 Housing Unit; at the time being autonomously operated without any policy to justify the unlawful punishment. see exhibit:

### Disputation Of Defendants' challenges to Facts Pertinacious to Plaintiff's First Amendment Right to Marry against PA. D.O.C. Secretaries John E. Wetzel and George Little

7. PA. D.O.C. policy DC-ADM 821, signed and authorized by defendant Wetzel, explicitly precludes the plaintif from marriage as for the duration of his time on the RRL. see exhibit: E
8. Plaintiff, Tucker has attached requests for marriage, designated to his corrections counselor (T. Moore) in which she responded, "you are not eligible to be processed for inmate marriage until you are removed from RRL". see exhibit: E

9. Plaintiff's request evinced by exhibit: lucidly substan-tiates the defendant's direct denial of the plaintiff's First amendment rights protected by the United States Constitution.

### Plaintiff's Objections To Defendants' Fact Pertinacious To Plaintiff's Fourteenth Amendment Due Process Claims Against Secretaries Wetzel and Little

10. Plaintiff asserts defendants Wetzel and Little knowingly violated his constitutional rights to the **Eighth** and **Fourteenth** amendments guaranteeing freedom from **Cruel** and **Unusual Punishment** as **well** as Due Process by assigning plaintiff to the RRL (indefinite solitary confinement) absent **notice** or the **opportunity to meaningfully challenge** said placement, because "no provisions to appeal RRL exist". see exhibit: D .
Administrative custody(AC) status and RRL are distinguished, as AC can **only** be appealed **to the chief hearing Examiner who has no involvement in the process to designate RRL or remove and individual**(the plaintiff) from the RRL. PA. D.O.C. Policy DC-ADM 802 is the Administrative Custody procedures, Which is juxtapositional to Disciplinary Custody (DC) status. These policies merely edify and elucidate how a prisoner is restricted while in solitary confinement. To appeal RRL to the Chief Hearing Examiner as the plaintiff is directed to do in accordance with DC-ADM 802, would be inutile because the chief hearing examiner is impuissant in determining whether the petitioner should be removed from the RRL.
11. Plaintiff was told by Deputy M. Houser that there are no appellate provisions for RRL.
a. Plaintiff has attached credible admissible evidence of RRL's lack of appellate provisions. Tucker filed an inmate grievance #936438, wherein Deputy Panasiewicz had the probity and temerity to put in his written response "the RRL process has no provisions for appeal." see exhibit D .
12. RRL is not AC status. AC status can only be appealed to the Chief Hearing Examiner while RRL could only be designated or removed by the Secretary of the Department of Corrections. see exhibit B , as well as DC-ADM 802
13. DC-ADM 802 provides no appellate provisions for RRL status(they are 2 separate statuses).
14. The plaintiff was never issued a misconduct on August 01, 2019.
15. Plaintiff was placed in solitary confinement on August 01,2019.
16. The plaintiff signed no waivers in August 19, 2019.
17. Plaintiff was sanctioned to 150 days of Disciplinary custody (DC status) effective August 01,2019 and ending on December 26,2019. No preponderance of evidence exists to support the sanction. Plaintiff was designated to the RRL on November 17,2019, while serving 150 days of DC status (DC-ADM 801) time (not AC status under DC-ADM 802).
18. No psychological assessment was conducted on August 27, 2019.
19. As is evinced by plaintiff's housing history in the Pa.D.O.C., there are nearly 20 State Correctional Institutions that the

plaintiff had never been housed at and could have been transferred to to "alleviate" any "security concern". If Wetzel or Little would have done a proper or thorough review they'd have realised that the plaintiff does not meet the criteria for RRL placement.
a. defendants citing D.O.C. policy DC-ADM 802 regarding process for RRL placement.
i. On December 26, 2019 when plaintiff was supposed to egress solitary confinement plaintiff received DC-141 part 1 #D 427051 stating, "On 12-26-19 inmate Tucker was placed on AC status pursuant to administrative directive 802 1.B.1.a, inmate is **in danger** by/from some person(s) in the facility and cannot be protected by alternate measures. **Specifically, verified threats have been made against inmate Tucker by inmates in general population**".This was the rationale for keeping the plaintiff in solitary confinement and the same rationale was given on May 20,2020(7 months beyond RRL designation). see exhibit A .
20. Defendants citing DC-ADM 802, which states on page 2. part VI. Rights Under This Policy, "this policy does not create rights nor should it be interpreted in such a manner as to abridge the rights of any individual." see exhibit C of Defendants Motion For Summary Judgment.
21. This issue is a matter of law reserved for trial. Facts are in dispute.
22. This is a matter of law reserved for trial. Facts are in dispute.
23. This issue is a matter of law reserved for trial. Facts are in dispute. Notice was required before placement.
24. This issue is a matter of law reserved for trial. Facts are in dispute.
25. This is a matter of law. Facts are in dispute.
26. This is a matter of law. Facts are in dispute.
27. This is a matter of law. Facts are in dispute. Also irrelevant to the pleadings.
28. Plaintiff is challenging RRL, not AC status.
29. The ultimate adjudicator for Appeals of AC status is, Chief Hearing Examiner Zachary Moslak who is on record stating, "In accordance with DC-ADM 802 AC status procedures, **Appeal of placement on the RRL is not permitted.**" see exhibit
30. Facility manager K. Sorber agreed with Deputy Panasiewicz's initial response to Grievance #936438(filed by plaintiff on 5/7/21), wherein the deputy said, "RRL has no provisions for appeals." see exhibit D .
31. Substantial evidence exists to evince, there is no directive in D.O.C. policy requiring notice and there is no provision to appeal restricted release list placement. The defendants can not produce evidence in refutation.
32. It has long been established that solitary confinement drives men mad. The worst of maladaptive consequences is self harm. The defendants were well aware of the plaintiff's suicidal vulnerability and continued to extend RRL designations for years after Tucker's near fatal suicide attempt on April 27, 2020 (in the RHU) despite the consequences Palakovic v. Wetzel. The plaintiff has permanent lines around the plaintiff's neck, burns from the R.A.C.C. vest being used, deteriorating visual acuity

due to constant lighting for years, increased need for psychotropic medication for depression, anxiety, and dissociative symptoms, permanently deformed posture due to confinement to a tight space for 23 hours a day on week days and 72 hours from Friday to Monday, irritable bowel syndrome, loss of consortium due to the inability to have contact with the outside world, constant hallucinations, chronic headaches, and medical records to substantiate every injury, as well as substantial evidence that this violation of Due process resulted in significant and atypical hardship as it relates to ordinary prison life.

### Objection To Defendants' Facts Pertaining To Plaintiff's Eighth Amendment Claim Against PA. D.O.C. Secretaries Wetzel And Little

33. Admitted in part. Length of confinement (over 4 **consecutive** years in total isolation) omitted. See Exhibit A

34. Courts have repeatedly held that deprivation of social interaction and environmental stimulation may be **unconstitutional** in three ways: 1) when isolation inflicts mental illness, psychiatric problems, or is imposed upon the psychologically vulnerable; Madrid v. Gomez, 889 F. Supp. 2.d 1146,1265 (N.D. 1995) (holding conditions in SHU unconstitutional when imposed on "the already mentally ill, as well as persons with borderline personality disorder, brain damage or mental retardation, impulse-ridden personalities, or a history of prior psychiatric problems or chronic depression"); Jones El v. Berge, 164 F.Supp.2.d 1096, 1125-26(W.D. Wis. 2001), holding that serious mentally ill prisoners should not be held at supermax); 2) When "extreme levels of psychological deprivation" causes "pain and suffering"; Ruiz v. Johnson, 37 F.Supp.2.d 855,914 (S.D. Tex. 1999); or 3) when psychological harm short of serious mental illness is imposed for an extraordinary length of time, Wilkerson, 639 F.Supp.2d at 679. See Exhibit C

The defendants' confinement of Tucker for nearly five consecutive years of solitary confinement, in utter isolation, violates his right to be free from cruel and unusual punishment on each of the three abovementioned grounds. The defendants continued to further emaciate Tucker's mind and body for over 4 years after pushing the plaintiff, who has a history of anxiety, depression, ptsd, and suicidal vulnerability, to a form of severe mental illness identified as Significant Functional Impairment, which include self harm. To continue to keep the plaintiff in such extreme isolation after knowledge of suicidal vulnerability, is contrary to this court's ruling in Palakovic v. Wetzel, 854 F.3d 209 (Jan. 12, 2017) holding, "if such officials know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth amendment imposes on them an obligation not to act with reckless indifference to that vulnerability". Substantial evidence exists to evince the defendants continued to subject Tucker to perilous protracted isolation under the guise of the unconstitutional RRL status without notice and absent any provisions to appeal the status keeping him in virtual isolation.

35. The plaintiff has a thorough record evincing the defendants held Tucker in solitary confinement from August 01, 2019 to December 07, 2023 (over 52 consecutive weeks) without any provisions to challenge RRL status. see exhibit D .In attempts to inveigle this Court to believe that recent precedent, deeming isolation of this magnitude an Eighth amendment violation, is not being ignored and obstinately transgressed against; the defendants are perfidiously propounding DC-ADM 802 policy as a remedy for RRL while DC-ADM 802 (or any other policy in the Pa. Dept. of Corrections) has no provisions for the key component of Due Process, specifically: Notice or A Right To Be Heard. Psychiatric reviews are a part of each RRL review process as is stated in DC-ADM 802. Therefore, the defendants (the DOC secretaries) were directly aware of Tucker's suicide attempts as well as diagnosis of anxiety, slough of despond, and dissociative symptoms, combined with ptsd. It is evident that the defendants were deliberately indifferent to the dangers that RRL continued to present and the harm that it has caused as well as the conditions which it has exacerbated. see exhibit A,C. In Williams v. Secretary of the Pa. Dept. of Corrections, 848 F.3d 549(3d Cir. 2017) the court observed a growing consensus with roots going back a century that conditions like those to which the plaintiff repeatedly was subjected can cause severe traumatic psychological damage, including anxiety, panic, paranoia, depression, ptsd,psychosis, and even a disintegration of basic sense of self-identity. Id. 556-67. And the damage does not stop at mental harm: "physical harm can also result. Studies have

documented high rates of suicide and self-mutilation amongst inmates who have been subjected to solitary confinement. These behaviors are believed to be maladaptive mechanisms for dealing with the psychological suffering that comes from isolation." Id. at 567-68 (citations omitted). Palakovic, 854 F.3d at 225-26. Keeping Tucker, a prisoner who has been on the mental health roster for the duration of his incarceration, in solitary confinement for over 52 consecutive months runs afoul of the "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285(1976). Given the potentially devastating psychological and physical effects of protracted solitary confinement which has been abundantly elucidated by the Court of Appeals since 2017, it is well established in the Third Circuit District Court that... prolonged solitary confinement satisfies the objective prong of the Eighth amendment test and may give rise to an Eighth Amendment claim, Particularly where, as here, Defendants have failed to provide any meaningful penological justification." Porter, 974 F.3d at 451.

Tucker received 150 days of disciplinary custody time and the defendants continued to keep Tucker in solitary confinement indefinitely under the guise that there was a threat to the plaintiff from other prisoners within SCI Rockview's General population. see exhibit A "DC-ADM 801 form # D427051. The defendants can not provide competent admissible evidence to dispute exhibit A and justify keeping Tucker in solitary confinement for over 45 months, while DC-ADM 802, page 1-4

(regarding Criteria for RRL placement) does not say RRL can be used to keep the plaintiff safe, especially, when taking the plaintiff's suicidal vulnerability to account(including the near fatal suicide attempt on April 27th, 2020(8 months into the RRL designation))for his own safety. see exhibit A.

36. Tucker has substantial documentation of medical and mental health records to evince injuries suffered as a result of the conditions he has been subjected to for protracted periods. Tucker has documentation to evince the defendant knew or should have known of his history of suicidal vulnerabilty, to which the defendants were indifferent.

Though the defendants have refused to comply with discovery request, Tucker has copies of Mental and physical health files explicitly attributing maladaptation to solitary confinement as the reason for psychotropic medications being prescribed, as well as physical maladies which may require surgeries. see exhibit C, and G

37. Johnston v. Wetzel, 1:16-cv-00268 evinces defendants knew of the rights violated by RRL as structured during all times relevant to this civil action. See Exhibit F

38. Johnston v. Wetzel, 1:16-cv-00268 evinces defendants knew of the rights violated by RRL as structured during all times relevant to this civil action.

39. Plaintiff has attached exhibit to evince defendant was deliberately indifferent to suicidal vulnerability by continuing Tucker's protracted solitary confinement for 44 months by first suicide attempt, despite having required mental health reports

attached to each RRL annual review.

40. Tucker cites several **published** cases in the United States District Court Of Pennsylvania which evince that the defendants are cognitive of the risks and while psychological/mental health evaluations are attached to each annual review(not any appellate provision)the defendants were indifferent to the perils related in the reports; particularly the onus of plaintiff's suicidal vulnerabilities, extreme deprivations, and excessive force endured. Nonetheless the defendant continued plaintiff's RRL status for a minimum of 12 months at a time. see exhibit A.

41. Wetzel never placed Wetzel on the RRL.

a. Plaintiff has competent and admissible evidence that the defendants' initial reason (rationale) for continuing confinement from 12-26-19 to 03-30-21 was "specifically, verified threats were made against Tucker by inmates in general population" and the defendants can not produce competent admissible evidence that Tucker has any history of assault following this rationale dated December 26, 2019. see exhibit A.

i. Tucker was never charged or tried in a court of law with any assault.The defendants only changed the rationale for confinement to justify using the plaintiff to justify operation and construction of the IMU program which was plaintiff was purtedly placed in on March 31,2021 despite no **policy** for an **IMU** existing until 13 months of solitary confinement later, on April 22, 2022, see exhibit B.

b. Plaintiff has evidence of rationale for continued solitary confinement contrary to that propounded by the defendants. see.

exhibit A.

42. Tucker never met the criteria for RRL placement to begin with. Furthermore, if the defendants did have penological purpose, which they did not; they do not have a legitimate right to deny the Tucker the right to Due Process (notice, the right to be heard, or any appellate provisions regarding RRL). The defendants are attempting to use DOC policy 802 to justify RRL which has no appellate provisions, nor does it provide any opportunity for Tucker to receive notice or hearing during the process for the proscription while confinement is continued in excess of 52 months. see exhibit F; page 5 of 12 wherein it's admitted by the defendants that "an inmate on the RRL had no process to challenge the Secretary's decision to continue his confinement" Johnston v. Wetzel, 431 F.Supp. 3d 666(2019.)

Plaintiff's Objections To Defendant's Facts Pertinent To Eighth Amendment Excessive Force and Assault and Battery Claims Against Correctional Officer Kimberley

43. Video footage exists of the RACC vest being placed on Tucker and hospital staff as well as treatment records from Mount Nittany hospital will evince that Kimberley activated the RACC vest as retaliation for a grievance (#742142) that Tucker filed against Kimberley on 6/15/18 when Kimberley denied Tucker the right to practice his religion.

44. Tucker has requested footage of plaintiff confined to the psychiatric observation cell from 04/30/20, where he was forced to remain nude (no smock, blanket, etcetera) and the apparent damage from the RACC vest to Tucker's torso is visible. Defendants agreed to produce video footage.

a. Defendants admit that Kimberley was assigned to Mount Nittany Hospital while Tucker was committed to the outside hospital for 3 days, convalescent following the April 27, 2020 suicide attempt in the Rhu at Sci Rockview.

45. Tucker was committed to the outside hospital from April 27, 2020 - April 30, 2020. Records evince that Kimberley was designated to supervise the plaintiff on 04/27/20. Tucker is only on record wearing the RACC vest once during 19 years of DOC custody and the distinctive scars, damage, etcetera caused by Kimberley's use of the RACC vest on the plaintiff could not have come from anything else.

Suicidal vulnerability is defined by **Disability Rights Network** as a severe mental illness of significant functional impairment. see exhibit C. Tucker was handcuffed to a hospital bed and impuissant when Kimberley discharged the RACC vest, which administered 50,000 volts of electricity for over 10 seconds. This surely meets the criteria for excessive force; as well as assault and battery, in accordance with the law.

47. In order to activate the RACC Kimberley had to press to buttons separately, so there is no way he could have accidentally activated the RACC. Furthermore, Kimberley's sanction as a result of Tucker's grievance filed against Kimberley establishes a clear motive for his animus and actions.

48. Kimberley had to press 2 buttons to activate the RACC vest. There is adequate evidence to show that Kimberley's action were intentional and injuries resulted therefrom.

### Plaintiff's Objection To Facts Pertaining To Exhaustion

Grievances

49. DC-ADM 804 pertains specifically to DOC policy for grievances and the appeal process for inmate grievances. Section 1, A. 7. explicitly states, "... the reasons for placement in Administrative custody status will not be addressed through the inmate grievance system and must be addressed through Department policy DC-ADM 801, "inmate discipline" and/or DC-ADM 802, "Administrative custody procedures."" see defense exhibit N attached to motion for summary judgment.

50. The plaintiff admits to filing inmate grievances during time relevant to this matter. Defendants' motion omits filings.

51. Plaintiff admits filing grievances during times relevant to this matter. Defendants' omit filings on record.

52. The plaintiff admit to filing grievance appeals for exhaustion purposes in accordance with DOC policy. However, defendants have omitted final results from their record. see exhibit E. (#960105)

53. In Johnston v. Wetzel, 431 F.3d 666 (2019), defendants (John E. Wetzel) admits that "an inmate on the RRL had no process to challenge the Secretary's decision to continue solitary confinement." The crux of the Civil Rights action initiated by Tucker is the unconstitutionality of **RRL** Status in the PA. DOC. Exhaustion is not required where, as here, there are no available remedies available to exhaust. see Ross v. Blake, US, 136 S.Ct. 1850, 1856 (2016) (quoting 42 U.S.C. § 1997e(a)) (holding) that "the exhaustion requirement hinges on the availability of administrative remedies: An inmate must exhaust available remedies, but need not exhaust unavailable ones."). see exhibit F.

## Administrative Custody

54. Adminstrative custody status and RRL are two distinctive statuses. While AC status can be appealed to the chief hearing examiner (who is impuissant regarding RRL matters), RRL can only be designated or removed by the DOC secretary. The plaintiff presents competent admissible evidence that he was on AC status (under DC-ADM 802) and Disciplinary custody status (DC Status under DC-ADM 801), while designated to the RRL for over 52 months.

55. No appeal of RRL exists under this procedure.

56. Zachary Moslak is on record many times, elucidating the fact that, "<u>In Accordance with DC-ADM 802 AC Custody Procedures, Appeal Of Placement On The RRL Is Not Permitted.</u>" see exhibit D. *Signed by Moslak*

## Disputation Of Facts Pertaining To Damages

The plaintiff vehemently rejects the assertion that he is undamaged by the defendant's First Amendment violations and deprivation of marriage rights protected therein. This is a matter of Law and the plaintiff has established genuine issues of material fact. This Circuit has recognised in its **precedential holding** that "There can hardly be a more substantial burden on a religious practice or its exercise than its outright prohibition." see Brian Davis v. George Wigen, No. 3-16-cv-00026 (2023) quoting Haight v. Thompson, 763 F.3d 554 565(6th Cir. 2014). While not every government-imposed hurdle to practice sincere faith-based conduct will be a substantial burden, the more proximate the government action is to an outright bar, the more likely it is a substantial burden.

58. The plaintiff has evidence of incurred irreparable physical,

psychological injury as a direct result of the conditions of RRL; which satisfy subjective and objective prongs established by Law. see exhibit C.

59. This is a matter of Law and the plaintiff has established through discovery, video evidence to substantiate claims of physical injury and evince injury as a direct result of Kimberley's deployment of the RACC vest on the plaintiff.

60. This is a matter of law. The plaintiff has attached echibits of mental health records as well as physical health injuries which directly resulted from the defendants' deliberate indifference, while continuing to torment Tucker with virtual solitary isolation for years beyond the first maladaptive mechanism manifested through the plaintiff's April 27, 2020, near fatal suicide attempt in the RHU at SCI Rockview, while on the RRL unjustifiably.

61. This is a matter of Law. The plaintiff has attached exhibit which elucidate the deprivation of marriage rights for him and his affianced for as long as he is on the RRL status. see exhibit E

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

–

HASSAN A. TUCKER, plaintiff

V.

JOHN E. WETZEL, et.al., defendants

–

## CERTIFICATE OF SERVICE

I HASSAN A. TUCKER, declare that on this 19th day of March, 2024, I have delivered via USPS a true and correct copy of the enclosed **Objection To The Defendants' Motion Motion For Summary Judgment** upon the following person(s):

Tyler Jefferies

Deputy Attorney General

Office Of Attorney General

15th floor, Strawberry Square

Harrisburg, Pa. 17120

Hassan A. Tucker

#gp6788 @ SCI Mahanoy, 301 Greyline Dr.,

Frackville, Pa. 17931

*/s/ Hassan A. Tucker*

Date: **March 27, 2024**

Mr. Hassan A. Tucker
#GP6788 @ Sci Mahanoy
301 Greyline Drive
Frackville, PA 17931

RECEIVED
HARRISBURG, PA
APR 23 2024
PER _____ DEPUTY CLERK

INMATE M
PA DEPT
CORREC

Office of The Clerk
United States District
United States Courthouse
228 Walnut Street
P.O. Box 983
Harrisburg, PA 17108



9114 9022 0085 2083 8021 14