## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HASSAN A. TUCKER,** | : | **CIVIL ACTION NO. 1:22-CV-631** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN E. WETZEL,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983.  Plaintiff, Hassan A. Tucker, alleges violations of his civil rights following his placement on the Pennsylvania Department of Corrections' Restricted Release List ("RRL"). Defendants have moved for summary judgment on all remaining claims.  The motion will be granted in part and denied in part.

## I.   Procedural History

Tucker filed his complaint on April 15, 2022, and the court received and docketed it on April 29, 2022.  (Doc. 1).  On January 19, 2023, the court dismissed all claims in the case with the exception of: (1) Tucker's claim that defendants Wetzel and Little violated the Eighth Amendment by placing him on the RRL; (2) Tucker's claim that Wetzel and Little violated his right to due process by not affording him sufficient process prior to his placement on the RRL and by not affording him the ability to appeal his continued placement on the RRL; (3) Tucker's claim that Wetzel and Little violated his constitutional right to marry by not allowing him to marry his fiancée while he was on the RRL; and (4) Tucker's claim that defendant

Kimberley used excessive force in violation of the Eighth Amendment and committed assault and battery when he assaulted Tucker while he was receiving medical treatment at an outside hospital.  (Docs. 22-23).  The court granted Tucker leave to file an amended complaint, but he did not do so.  (Doc. 28).  Hence, the court dismissed all defendants other than Wetzel, Little, and Kimberley without further leave to amend, and directed those three defendants to answer the complaint.  (Id.)  They did so on August 4, 2023.  (Doc. 31).

Defendants filed the instant motion for summary judgment on February 29, 2024.  (Doc. 37).  The motion is ripe for review.

## II.   <u>Material Facts</u>[1]

### A.   **Exhaustion of Administrative Remedies**

Exhaustion of administrative remedies in the DOC is governed by the three-step process outlined in the DOC's grievance policy, DC-ADM 804.  (<u>See</u> Doc. 38-

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  M.D. Pa. L.R. 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  <u>Id.</u>  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (<u>See</u> Docs. 38, 44).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.  We also note that Tucker's response to several factual assertions states that the asserted fact is a "matter of law" and that "facts are in dispute," but does not provide any evidence to rebut the assertion.  (<u>See, e.g.</u>, Doc. 44 ¶ 25).  Tucker's conclusory statements are not sufficient to create a genuine issue of material fact.  The court will deem any factual assertions to which Tucker has given this response undisputed.

14).[2]  Under DC-ADM 804, a prisoner must first submit a written grievance within fifteen days from the date of the incident.  Id. § 1(A)(8).  DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law."  Id. § 1(A)(11).  Next, the prisoner must submit a written appeal to an intermediate review level within fifteen working days.  Id. § 2(A)(1)(a).  Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days.  Id. § 2(B)(1)(b).

When an inmate wishes to grieve his administrative custody status, he must do so through a different DOC policy, DC-ADM 802.  DC-ADM 802 allows inmates to appeal their administrative custody to the facility manager "within two work days" after completion of a hearing conducted by the prison's Program Review Committee ("PRC").  (Doc. 38-3 § 2(C)(1)).[3]  After receiving a response from the facility manager, the inmate may file an appeal to the DOC's chief hearing examiner within seven calendar days of the facility manager's decision.  (Id. § 2(C)(2)).

---

[2] Doc. 38-14 is a copy of DC-ADM 804, which is attached as Exhibit N to defendants' motion for summary judgment.

[3] Doc. 38-3 is a copy of DC-ADM 802, which is attached as exhibit C to defendants' motion for summary judgment.  The current version of DC-ADM 802 became effective on April 18, 2022.  Defendants have attached the version of the policy that was in effect during the period relevant to this case, which had an effective date of November 14, 2016.  All facts incorporated from DC-ADM 802 are based on the November 14, 2016, version of the policy.

Tucker filed approximately 37 grievances during the relevant period between August 2019 and July 2021.  (Doc. 38 ¶ 50; Doc. 44 ¶ 50).[4]  He appealed five of these grievances through all stages of the DOC's grievance process.  (Doc. 38 ¶¶ 52-53; Doc. 44 ¶¶ 52-53).[5]

### B.    Restricted Release List and Administrative Custody

The Restricted Release List is a security designation assigned to certain inmates under DOC policy that prevents inmates from being released from a Security Level 5 housing unit or transferred to another institution without the written approval of the secretary of the DOC.  (See Doc. 38-3 § 4(B)(1)).  Placement of an inmate on the RRL is governed by DC-ADM 802.  (See id. § 1(C)).  DC-ADM 802 allows the facility manager of a prison to request that an inmate be placed on the RRL when the inmate poses a threat to the secure operation of the prison and a transfer to another prison would not alleviate the concern.  (Id. § 1(C)(1)).  The facility manager must provide a written rationale supporting the request and forward the rationale to the DOC's executive deputy secretary.  (Id. § (C)(3)).  The executive deputy secretary must approve or disapprove the request and forward it

---

[4] Tucker asserts that defendants' statement of material facts "omits filings," but he does not indicate which grievances defendants omitted.  (Doc. 44 ¶ 50).  The court therefore treats defendants' assertion that Tucker filed approximately 37 grievances during the relevant period as undisputed.

[5] The grievances that were fully appealed are grievance numbers 896290, 909172, 923966, 927915, and 936438.  (Doc. 38 ¶ 53).  Tucker additionally asserts that exhaustion is excused because the "crux" of his case is "the unconstitutionality of RRL status in the PA DOC," and prison officials have purportedly made statements indicating that there is no process for an inmate to appeal his placement on the RRL.  (Doc. 44 ¶ 53).

to the secretary of the DOC.  (Id. § 1(C)(4)).  The secretary must make the final

decision whether to place the inmate on the RRL.  (Id.)  The inmate's continued

RRL placement must be reviewed annually.  (Id. § 2(D)(10)).  The secretary of the

DOC must make the final decision whether to maintain the inmate's RRL

placement.  (Id.)  An inmate cannot be removed from the RRL without the written

approval of the secretary.  (Id. § 4(B)(1)).

Inmates on the RRL may be housed in administrative custody, which DOC

policy defines as "a status of confinement for non-disciplinary reasons that

provides closer supervision, control, and protection than is provided in general

population."  (Id. § 3(A)(1)).  Our court of appeals has recognized that administrative

custody is a form of solitary confinement.  See Shoats v. Horn, 213 F.3d 140, 141 (3d

Cir. 2000).  Inmates may be placed in administrative custody by order of a shift

commander, a psychiatrist, or a certified registered nurse practitioner.  (Doc. 38-3 §

1(B)(1)).  An inmate may be housed in administrative custody for several reasons,

including, *inter alia*: (1) other inmates posing a risk of harm to the inmate; (2) the

inmate posing a risk of harm to himself or other inmates; (3) the inmate being

suspected of involvement in, or instigation of, a "disturbance"; (4) the inmate posing

a risk of escape; (5) the inmate being charged with, or investigated for, a violation of

facility rules; or (6) the inmate requesting placement in administrative custody.

(Id.)  Inmates placed in administrative custody are afforded periodic reviews of

their custody status by the PRC for the duration of their administrative custody.

(Doc. 38-3 § 2(D)).

Defendant Wetzel, the secretary of the DOC at the time, approved Tucker's placement on the RRL on November 15, 2019.  (Doc. 38 ¶ 22; Doc. 44 ¶ 44).  Prison officials placed Tucker on the RRL on November 26, 2019.  (Doc. 38 ¶ 23; Doc. 44 ¶ 23).  The PRC reviewed Tucker's RRL placement on December 11, 2019, and decided to continue his RRL placement.  (Doc. 38 ¶ 24; Doc. 44 ¶ 24).  Officials then placed Tucker in administrative custody on December 26, 2019.  (Doc. 38 ¶ 25; Doc. 44 ¶ 25).  The DOC's central office approved the RRL placement on December 27, 2019.  (Doc. 38 ¶ 26; Doc. 44 ¶ 26).

Tucker challenged his RRL placement through an administrative hearing pursuant to DC-ADM 802 on January 2, 2020.  (Doc. 38 ¶ 27; Doc. 44 ¶ 27).  The officials presiding over the hearing gave Tucker the opportunity to respond to the rationale for his placement, but he chose not to do so.  (Doc. 38 ¶¶ 28-29; Doc. 44 ¶¶ 28-29).  Tucker has not produced any evidence that he was denied periodic reviews by the PRC during his administrative custody.  (Doc. 38 ¶ 31; Doc. 44 ¶ 31).[6]

Tucker filed a grievance challenging his continued placement on the RRL on May 7, 2021.  (Doc. 38-16 at 52).  The prison's initial review response stated that "the Restricted Release placement process has no provisions for appeals."  (Id. at 53).  Tucker appealed the grievance through all stages of review, but SOIGA dismissed

---

[6] Tucker's response states that "[s]ubstantial evidence exists to evince, there is no directive in D.O.C. policy requiring notice and there is no provision to appeal restricted release list placement.  The defendants cannot produce evidence in refutation."  (Doc. 44 ¶ 31).  This does not respond to the substance of defendants' assertion that plaintiff cannot produce evidence that he was denied PRC reviews.  (See Doc. 38 ¶ 31).  Hence, we deem defendants' assertion undisputed.

the appeal on October 12, 2021, because he did not provide legible copies of his original grievance or his appeal to the facility manager.  (Id. at 51).

### C.      Marriage Policy

The DOC's policy on marriage, DC-ADM 821, forbids inmates who are on the RRL from getting married "until they have been removed from the RRL for a minimum of 60 days."  (Doc. 38-2 § 1(A)(3)).[7]  DC-ADM 821 further requires inmates seeking to marry to submit an "initial marriage request" to their assigned prison counselor.  (Id. § 1(B)(1)).

Tucker filed a marriage request while he was on the RRL in accordance with DC-ADM 821.  (See Doc. 44-5 at 9).  When the request was denied, he sought review through grievance number 960105.  (Id. at 10).  He appealed the grievance through all stages of review, but the final appeal was ultimately dismissed for his failure to provide legible documentation.  (See Doc. 44-5 at 17).

### D.      Claims Against Kimberley

Tucker alleges that Kimberley used excessive force against him during an incident on April 27, 2020.  (Doc. 38 ¶ 43; Doc. 44 ¶ 43).  Defendants assert that Tucker has not produced any evidence to support this claim, but Tucker responds that video footage would establish the claim.  (Doc. 38 ¶¶ 43-44; Doc. 44 ¶¶ 43-44). None of the grievances that Tucker appealed through all stages of review named

---

[7] Doc. 38-2 is a copy of DC-ADM 821 that was attached as Exhibit B to defendants' motion for summary judgment.

defendant Kimberley or alleged that Kimberley used excessive force against Tucker.  (See Doc. 38-16 at 6-58).

## III.   Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  See Pappas, 331 F. Supp. 2d at 315.

## IV.   Discussion

Tucker brings his federal constitutional claims under 42 U.S.C. § 1983.  Section 1983 creates a cause of action to redress constitutional wrongs committed by state officials.  42 U.S.C. § 1983.  The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d

1199, 1204 (3d Cir. 1996).  To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Defendants advance six arguments for summary judgment: (1) that Tucker failed to exhaust administrative remedies; (2) that Tucker's due process claim is untimely; (3) that the due process claim fails on its merits; (4) that the Eighth Amendment claim against Wetzel and Little fails on its merit; (5) that Tucker's right to marry claim fails on its merits; and (6) that Tucker is barred from receiving compensatory or punitive damages.  (Doc. 40).  We consider these arguments *seriatim*.

### A.    Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court.  42 U.S.C. § 1997e(a).  The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated.  Downey v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)).  Failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs.  Jones v. Bock, 549 U.S. 199, 216 (2007).

A prisoner is only required to exhaust administrative remedies that are "available."  Rinaldi v. United States, 904 F.3d 257, 268 (2018) (citing Woodford, 548

U.S. at 93).  An administrative remedy is unavailable, and administrative exhaustion

is thus excused, in three situations: "(1) when 'it operates as a simple dead end—

with officers unable or consistently unwilling to provide any relief to aggrieved

inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of

use,' such as when no ordinary prisoner can discern or navigate it; or (3) when

'prison administrators thwart inmates from taking advantage of a grievance process

through machination, misrepresentation, or intimidation.'"  Id. at 266-67 (quoting

Ross v. Blake, 578 U.S. 632, 643-44 (2016)).  If defendants establish failure to exhaust

administrative remedies, the burden shifts to the plaintiff to show that the

administrative remedy process was unavailable.  Id. at 268.

        Record evidence establishes that Tucker failed to exhaust administrative

remedies with respect to his claims against defendant Kimberley.  Defendants have

produced evidence showing that Tucker did not file any grievances against

Kimberley during the relevant period that he successfully appealed through all

stages of review.  (Doc. 38 ¶¶ 50-53; Doc. 44 ¶ 50-53).  Tucker has not produced any

evidence to rebut this conclusion, nor has he produced any evidence showing that

the grievance process was unavailable to him.  (See Docs. 44, 46).

        We additionally find that Tucker has failed to exhaust administrative

remedies with respect to his right to marry claim.  The record shows that Tucker

filed a grievance challenging the denial of his right to marry, but that SOIGA

dismissed the final appeal of the grievance because he failed to provide legible

documentation.  (See Doc. 44-5 at 17).  Tucker has not challenged the authenticity of

this evidence; to the contrary, he included the evidence as an exhibit attached to his

summary judgment filings.  (See id.)  Tucker's failure to file an appeal to SOIGA

that complies with DOC rules constitutes a failure to exhaust administrative

remedies.  See, e.g., Sanders v. Sec'y Pa. Dep't of Corrs., 602 F. App'x 54, 57 (3d Cir.

2015) (nonprecedential); Jackson v. Taylor, 467 F. App'x 98, 99-100 (3d Cir. 2012)

(nonprecedential.[8]

Tucker's contrary argument that exhaustion is excused because his

placement on the RRL is the "crux" of his claims is without merit.  (See Doc. 44 ¶

53).  To exhaust administrative remedies under the PLRA, a prisoner's grievance

must "provide enough information about the conduct of which they complain to

allow prison officials to take appropriate responsive measures."  Mack v. Warden

Loretto FCI, 839 F.3d 286, 296 (3d Cir. 2016).  Grieving an RRL placement clearly

fails to provide sufficient information for officials to appropriately respond to a

subsequent assault or the purported denial of an inmate's right to marry.  We will

grant summary judgment on Tucker's remaining claims against Kimberley and his

right to marry claim based on Tucker's failure to exhaust administrative remedies.

We find, however, that there are genuine issues of material fact as to whether

Tucker exhausted administrative remedies with respect to his due process and

Eighth Amendment claims against Wetzel and Little.  Defendants assert that

Tucker failed to exhaust administrative remedies with respect to his placement on

the RRL because he did not file any appeals of his custody status in accordance

---

[8] The court acknowledges that nonprecedential decisions are not binding
upon federal district courts.  Citations to nonprecedential decisions reflect that the
court has carefully considered and is persuaded by the panel's *ratio decidendi*.

with DC-ADM 802.  (Doc. 40 at 11-12).  But record evidence shows that prison officials told Tucker there was no way to appeal his placement on the RRL.  (See Doc. 38-16 at 53).  Viewing the record in the light most favorable to Tucker, we find this evidence sufficient to create a genuine dispute of fact as to whether the grievance process was available to Tucker.

### B.    Statute of Limitations

Section 1983 civil rights claims arising from events that occurred in Pennsylvania are governed by Pennsylvania's two-year statute of limitations for personal injury actions.  Moore v. Walton, 96 F.4th 616, 622 (3d Cir. 2024). Defendants argue Tucker's due process claim is untimely because he was placed on the RRL on November 17, 2019, but his complaint was not filed until April 15, 2022.[9] (See Doc. 40 at 13).  Tucker argues that the claim should be considered timely under the continuing violations doctrine because he remained on the RRL into the limitations period.  (Doc. 46 at 6-9).

We agree with Tucker that the due process claim is timely under the continuing violations doctrine.  the continuing violations doctrine allows claims based on facts occurring before the limitations period to be deemed timely if they are part of a continuing practice that continued into the limitations period.  Randall v. City of Phila. Law Dep't, 919 F.3d 196, 198 (3d Cir. 2019).  If "the last act in the continuing practice falls within the limitations period[,] the court will grant relief

---

[9] The complaint is deemed filed on the date it was submitted to prison officials for mailing pursuant to the prisoner mailbox rule.  See Pabon v. Mahanoy, 654 F.3d 385, 391 n.8 (3d Cir. 2011).

for the earlier related acts that would otherwise be time barred." Id. (cleaned up) (citing Cowell v. Palmer Township, 263 F.3d 286, 292 (3d Cir. 2001)).

Tucker's due process claim alleges both that he was not afforded sufficient process prior to his placement on the RRL and that he was denied his right to appeal the placement while he was on the RRL.  (See Doc. 1 at 13-14; Doc. 22 at 12-13).  The record indicates that Tucker remained on the RRL into the limitations period.  Hence, the claim is timely under the continuing violations doctrine.

### C.    Due Process

An inmate's placement in solitary confinement triggers procedural due process protections when it represents "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Shoats, 213 F.3d at 143 (quoting Sandin v. Conner, 515 U.S. 472, 483 (1995)).  In such a situation, the due process clause generally requires prison officials to provide the inmate notice and opportunity to respond prior to, or shortly after, his placement in solitary confinement. Id. (citing Hewitt v. Helms, 459 U.S. 460, 476 (1983)).

Defendants argue they are entitled to summary judgment on the due process claim because Tucker's placement on the RRL resulted in him being placed in administrative custody for only two and a half years. (Doc. 40 at 16).  Defendants additionally assert that Tucker cannot produce evidence to support his claims that he was denied notice, an opportunity to respond, or the ability to appeal his RRL placement.  (Id.)  Tucker asserts that contrary to defendants' contention, he spent over four years in solitary confinement.  (Doc. 44 ¶ 32).

13

We will grant the motion for summary judgment with respect to the due process claim.  Assuming Tucker's confinement in administrative custody lasted long enough to be considered an atypical and significant hardship triggering due process protections, the record shows that Tucker was afforded all process he was due.  Tucker was given a hearing before the PRC shortly after his placement on the RRL, another hearing shortly after his placement in administrative custody, and periodic reviews of his administrative custody by the PRC.  (See Doc. 38 ¶¶ 24-31; Doc. 44 ¶¶ 24-31).  Our court of appeals has held that the DOC satisfies the due process clause by providing these regular PRC reviews of an inmate's administrative custody.[10]  See Shoats, 213 F.3d at 145.

### D.    Eighth Amendment

Defendants seek summary judgment on Tucker's Eighth Amendment claim against Wetzel and Little, which they characterize as a conditions of confinement claim based on the numerous adverse conditions Tucker allegedly experienced while in administrative custody.  (See Doc. 40 at 17-26).

Defendants misconstrue the Eighth Amendment claim.  They characterize it as a conditions of confinement claim, but we previously dismissed the conditions of confinement claim for Tucker's failure to allege personal involvement.  (See Doc. 22

---

[10] Tucker asserts that he "is challenging RRL, not AC status."  (Doc. 44 ¶ 28).  The court has analyzed the due process implications of his placement in administrative custody because that appears to be the only consequence of his RRL placement that may trigger due process protections.  Placement on the RRL does not by itself trigger due process protections.  See, e.g., Bowen v. Ryan, 248 F. App'x 302, 304 (3d Cir. 2007) (nonprecedential).

at 14).  The remaining Eighth Amendment claim—as we noted in our prior

opinion—is based on a theory that placing Tucker on the RRL violates the Eighth

Amendment because it results in prolonged solitary confinement.  (See id. (citing

Clark v. Coupe, 55 F.4th 167, 179-80 (3d Cir. 2022) and Palakovic v. Wetzel, 854 F.3d

209, 225-26 (3d Cir. 2017)).

      In Clark, our court of appeals held that a plaintiff states a claim for violation

of the Eighth Amendment by "alleging prison officials imposed solitary confinement

for months, knowing the isolation carried a substantial risk of exacerbating [the

plaintiff's] mental illnesses but keeping him there until he suffered serious harm."

Clark, 55 F.4th at 183.  Tucker has alleged a similar Eighth Amendment violation in

this case.  He asserts that he suffered from mental illness, including a history of

suicidal ideations and attempts, that defendants were aware of this mental illness

when they placed him in solitary confinement, and that the placement in solitary

confinement exacerbated the symptoms of his mental illness.  (See Doc. 1).

Defendants do not advance any arguments for summary judgment on the merits of

this Eighth Amendment claim.  We will deny this portion of the motion for

summary judgment and allow the Eighth Amendment claim against Wetzel and

Little to proceed.

      **E.**    **Damages**

      Finally, defendants seek to bar Tucker from recovering any compensatory or

punitive damages.  We will confine our damages analysis to the Eighth Amendment

claim against Wetzel and Little because that is the only claim that otherwise

survives defendants' motion for summary judgment.

The PLRA prohibits inmates from bringing claims "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). A prisoner plaintiff's claims for compensatory damages based on "mental and/or emotional injury" caused by a violation of the plaintiff's constitutional rights are barred by the PLRA unless the plaintiff can establish that he suffered a related physical injury. Allah v. Al-Hafeez, 226 F.3d 247, 250 (3d Cir. 2000). Defendants argue that Tucker is barred from recovering compensatory damages because he cannot establish that he suffered any physical injuries from his prolonged solitary confinement. (Doc. 40 at 31-32).

We disagree. Tucker alleges that he attempted suicide due to the mental harm he suffered from his solitary confinement and that he suffered physical injuries during this incident. (See Doc. 1 at 17). Defendants' statement of material facts acknowledges that Tucker attempted suicide. (See Doc. 38 ¶ 44). Whether Tucker can prove that he suffered physical injuries during the incident is a question of fact that cannot be resolved at this stage of litigation.

Defendants additionally seek to bar Tucker from recovering punitive damages. (Doc. 40 at 32). Punitive damages, however, may be awarded "based solely on a constitutional violation, provided the proper showing is made," Allah, 226 F.3d at 251, that is, "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). We will deny defendants' request to bar Tucker from recovering punitive damages. We

16

cannot say as a matter of law that defendants' actions were not recklessly or callously indifferent to Tucker's constitutional rights.

IV.   **Conclusion**

We will grant defendants' motion for summary judgment in part and deny it in part.  The case will proceed solely as to Tucker's Eighth Amendment claim against defendants Wetzel and Little.  The parties will be directed to file a joint status report indicating whether they wish to have this case referred to mediation. If the case is not resolved through mediation, the court will schedule an evidentiary hearing to determine whether defendants can establish the affirmative defense of failure to exhaust administrative remedies.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    July 15, 2024

17