**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HASSAN A. TUCKER,** | : | |
| **Plaintiff** | : | **CIV. ACTION NO. 1:22-CV-631** |
| **v.** | : | **(JUDGE MANNION)** |
| **JOHN E. WETZEL,** *et al.,* | : | |
| **Defendants** | : | |

## MEMORANDUM

This is a prisoner civil rights case that is before the court for resolution of the issue of whether plaintiff exhausted administrative remedies prior to filing suit. As explained below, based on the court's consideration of testimony and evidence produced during an April 2026 evidentiary hearing and the parties' supplemental briefs following the hearing, the court concludes that administrative remedies were unavailable to plaintiff. Plaintiff was therefore excused from the duty to exhaust administrative remedies, and this case will be scheduled for a trial on the merits of his claims.

## I.    BACKGROUND

Plaintiff, Hassan A. Tucker, filed this case in April 2022, alleging civil rights violations arising from his placement on the Pennsylvania Department of Corrections' Restricted Release List ("RRL"). (Doc. 1). The case was initially assigned to United States District Judge Christopher C. Conner.

On January 19, 2023, Judge Conner dismissed all claims in the case without prejudice with the exception of: (1) Tucker's claim that defendants Wetzel and Little violated the Eighth Amendment by placing him on the RRL; (2) Tucker's claim that Wetzel and Little violated his right to due process by not affording him sufficient process prior to his placement on the RRL and by not affording him the ability to appeal his continued placement on the RRL; (3) Tucker's claim that Wetzel and Little violated his constitutional right to marry by not allowing him to marry his fiancée while he was on the RRL; and (4) Tucker's claim that defendant Kimberley used excessive force in violation of the Eighth Amendment and committed assault and battery when he assaulted Tucker while he was receiving medical treatment at an outside hospital. (Docs. 22-23). After Tucker failed to file an amended complaint, Judge Conner dismissed all defendants other than Wetzel, Little, and Kimberley with prejudice on May 22, 2023. (Doc. 28).

After the close of pleadings and discovery, defendants moved for summary judgment on February 29, 2024. (Doc. 37). Judge Conner granted the motion in part and denied it in part on July 15, 2024, allowing the case to proceed solely with respect to Tucker's Eighth Amendment claim against defendants Wetzel and Little. (Docs. 49-50). Judge Conner concluded that there were genuine issues of material fact on both whether Tucker exhausted

2

administrative remedies for the claim and the merits of the claim. (*Id.*). Judge Conner referred the case to mediation, which proved unsuccessful. (Docs. 53, 58). The case was reassigned to the undersigned on January 21, 2025, following Judge Conner's retirement from the court.

Shortly before the case was reassigned, Tucker moved to reopen discovery, noting that counsel had recently entered an appearance on his behalf and that he had conducted all discovery in the case *pro se*. (Doc. 60). The court granted the motion to reopen discovery on April 25, 2025, and reopened discovery until July 31, 2025. (Doc. 64). The court subsequently extended the deadline to August 15, 2025. (Doc. 69).

Following the close of the reopened discovery period, defendants filed a motion for leave to file a second motion for summary judgment. (Doc. 70). The court denied the motion on December 22, 2025, and scheduled the case for an evidentiary hearing to decide whether plaintiff exhausted administrative remedies. (Doc. 76). After one rescheduling, the court conducted the hearing on April 9, 2026. (Doc. 86).

The court ordered supplemental briefs from the parties after the hearing, which were submitted on May 8, 2026. (Docs. 90-91). Both sides then filed supplemental response briefs on May 22, 2026. (Docs. 92-93). The exhaustion issue is now ripe for the court's consideration.

## II.   STANDARD OF REVIEW

Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court. 42 U.S.C. §1997e(a). The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

A prisoner is only required to exhaust administrative remedies that are "available." *Rinaldi v. United States*, 904 F.3d 257, 268 (2018) (citing *Woodford*, 548 U.S. at 93). An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination,

4

misrepresentation, or intimidation.'" *Id.* at 266-67 (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)). If defendants establish failure to exhaust administrative remedies, the burden shifts to the plaintiff to show that the administrative remedy process was unavailable. *Id.* at 268.

District courts "may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Paladino v. Newsome*, 885 F.3d 203, 210 (3d Cir. 2018) (citing *Small v. Camden County*, 728 F.3d 265, 271 (3d Cir. 2013)). Exhaustion is a "preliminary issue for which no right to a jury trial exists." *Small*, 728 F.3d at 271.

## III.    EVIDENTIARY HEARING

During the evidentiary hearing conducted on April 9, 2026, the court heard testimony from three witnesses: Jeffrey Eyer, a deputy superintendent at SCI-Mahanoy; Montana Bell, an inmate at SCI-Phoenix; and Tucker.

Eyer began his testimony with general information on his job duties as a deputy superintendent before explaining how inmates are placed on administrative custody and the RRL under the relevant policy, DC-ADM 802.[1] (Doc. 88 at 7-9). Eyer testified that the process for placing an inmate on RRL begins with the inmate's unit team starting a vote sheet for the

---

[1] DC-ADM 802 was revised after the facts of this case. All references to DC-ADM 802 in this opinion are to the version of the policy that was in effect at the relevant time, the November 14, 2016, version of the policy.

placement. (*Id.* at 9). The vote sheet goes "through the facility level" and "the superintendent" before going to the DOC's regional deputy secretary for approval. (*Id.*) Counsel asked Eyer whether an inmate placed on the RRL would have an opportunity to provide information to the prison's program review committee ("PRC") before the placement. (*Id.*) Eyer said that an inmate would have an opportunity, but could not identify any provision under DC-ADM 802 that specifically allowed such an opportunity. (*Id.* at 9-10). Eyer testified that the final decision "comes down from the secretary" of the DOC, and the PRC then explains to the inmate that he is being placed on the RRL. (*Id.* at 10). Eyer testified that the inmate would have an opportunity to respond to the RRL placement during this conversation with the PRC. (*Id.*)

Eyer testified that after the inmate meets with the PRC, documentation of the meeting is uploaded to an electronic server and forwarded to the central office. (*Id.* at 11). Counsel asked him whether an inmate would have an opportunity to appeal the secretary's final decision placing him on the RRL, and Eyer testified that he was "not sure" if the policy allowed such an appeal. (*Id.*) Eyer testified that he believed there was a right to appeal, but that the right was not clearly provided by the language of DC-ADM 802. (*Id.*)

During his testimony, Eyer reviewed documentation from Tucker's meeting with the PRC following his placement on the RRL. (*Id.* at 12-13).

6

Counsel asked Eyer whether Tucker raised any objections to his RRL placement during the PRC meeting, and Eyer said that he had not. (*Id.* at 13). On cross-examination, Eyer confirmed that the PRC does not have final say about whether an inmate is placed on the RRL and that such a decision is left to the secretary. (*Id.* at 14).

The court then asked Eyer several follow-up questions. The court asked Eyer whether DC-ADM 802 provided a clear statement of an inmate's right to appeal his placement on the RRL, and Eyer said that it did not. (*Id.* at 14-15). Eyer noted that another form, DC 141, provided an opportunity to appeal to the PRC, but confirmed that the PRC cannot remove an inmate from the RRL and that the removal must be done by the secretary. (*Id.* at 15). Eyer then stated that the appeal would go to the facility manager rather than the PRC, but confirmed that the facility manager also would not have the ability to reverse the RRL placement. (*Id.*) The court then asked Eyer whether any policy stated where an inmate would have to file a final appeal of his RRL placement, and Eyer stated that he was not aware of any such policy. (*Id.* at 15-16). The court asked Eyer what the PRC could do if an inmate stated that he should not be on the RRL, and Eyer testified, "Nothing other than document that information." (*Id.* at 16).

7

On redirect examination, Eyer testified that it was his understanding that DC-ADM 802 allowed for appeals from RRL placements, but that the policy "does not clearly articulate that." (*Id.* at 17). Eyer then testified that under his understanding of the policy, an appeal of the secretary's decision would ultimately come back to the secretary. (*Id.* at 18-20).

The court next heard from Bell, who testified that he knew Tucker from when they were both incarcerated at SCI-Phoenix. (*Id.* at 25). Bell testified to the contents of a letter he received, which was admitted into the record as exhibit P15, in which the DOC's chief hearing examiner, Zach Moslak, told him that "appeal on placement on the RRL is not permitted." (*Id.* at 27). Bell understood this to mean that he could not appeal his RRL placement in any manner. (*Id.*)

Tucker testified as the final witness in the hearing. He testified that while he was on the RRL he did not have any means of appealing his RRL status. (*Id.* at 30-31). Tucker testified that his understanding was that the only person who could take him off the RRL was the secretary of the DOC, which at the relevant time was either defendant Wetzel or defendant Little. (*Id.* at 31). He testified that he wrote letters to both defendants seeking his removal from the RRL. (*Id.* at 31-32). He received responses to the letters from administrative assistants in the secretary's office denying the requests

8

to be removed from the RRL. (*Id.* at 32-37). Tucker further testified that the deputy secretary at SCI-Rockview told him that there was no way to appeal his placement on the RRL. (*Id.* at 38-39). The deputy superintendent at SCI-Phoenix subsequently told him the same thing. (*Id.* at 39). He testified that the deputy secretary at SCI-Rockview again told him there was no way to appeal RRL placement when he denied a grievance on the matter. (*Id.*) Tucker reiterated his understanding that he had no way to appeal his RRL placement. (*Id.* at 41).

## IV.    SUPPLEMENTAL BRIEFING

Following the evidentiary hearing, the parties submitted supplemental briefs on May 8, 2026, and supplemental response briefs on May 22, 2026. Defendants argue that an administrative remedy process was available to Tucker because although the language of DC-ADM 802 did not specifically provide a means to appeal RRL placement, DOC practice made an appeal available through an inmate's meeting with the PRC and subsequent letters directly to the secretary. (Doc. 91 at 3-5). Defendants concede that Tucker followed the available process by sending letters directly to Wetzel and Little, but argue that Tucker only asserted claims relating to his mental health in his letters to defendant Little. (*Id.* at 6-7). Defendants accordingly argue that the

case should proceed to trial only with respect to the Eighth Amendment claim against Little and that the claim against Wetzel should be dismissed. (*Id.*)

Plaintiff argues in response that he properly asserted the relevant claim in his communications to both defendants Wetzel and Little by seeking removal from the RRL. (Doc. 92 at 2). Plaintiff additionally argues that regardless of how well he communicated his claims to the defendants in his letters, the administrative process was unavailable to him because the requirements were not clearly spelled out in the relevant policy. (*Id.* at 2-3).

For his part, plaintiff argues in his supplemental brief that the policies under DC-ADM 802 did not specifically state what is required to exhaust administrative remedies and that, even if writing directly to the secretary is required, Tucker satisfied that process. (Doc. 90). In response, defendants reiterate their argument that the available process was a direct appeal to the secretary and that Tucker did not exhaust his administrative remedies with respect to his claims against Wetzel because he did not mention his mental health concerns in his letters to Wetzel. (Doc. 93).

## V.   FINDINGS OF FACT

Based on the testimony and evidence adduced during the evidentiary hearing, the court makes the following findings of fact:

1. Placement of inmates on the RRL is governed by DC-ADM 802. (*See* DC-ADM 802, Ex. D57, §1.C).

2. The version of DC-ADM 802 that was in effect at all relevant times became effective on November 14, 2016. (*See id.* §I).

3. Under DC-ADM 802, the secretary of the DOC makes the final decision whether to place an inmate on the RRL. (*Id.* §1.C.4).

4. The DOC must review an inmate's RRL placement annually and determine whether the inmate should be removed from the RRL. (*Id.* §2.D.10).

5. Removal of an inmate from the RRL is governed by Section 4.B. of DC-ADM 802. (*Id.* §4.B).

6. An inmate may not be released from the RRL without the written approval of the secretary or the secretary's designee. (*Id.* §4.B.1).

7. No provision of DC-ADM 802 allows an inmate to appeal his placement on the RRL. (*See generally* DC-ADM 802, Ex. D57; *see also* Hearing Transcript, Doc. 88 at 9-11, 14-15, 17 (testimony of Jeffrey Eyer)).

8. Jeffrey Eyer was the only DOC employee to testify during the evidentiary hearing. (*See generally* Hearing Transcript, Doc. 88).

11

9.  Eyer testified that a policy for inmates to appeal their placement on the RRL existed by DOC custom and practice despite the absence of a written policy, but he could not clearly explain how the unwritten process worked, variously stating that an inmate is supposed to appeal his RRL placement by speaking with the PRC, writing a grievance to the facility manager, appealing to the DOC's executive deputy secretary, or writing directly to the DOC's secretary. (*See id.* at 10, 14, 19-20).

10. Tucker was placed on the RRL in 2019. (*Id.* at 31 (testimony of Hassan Tucker)).

11. Tucker's understanding while he was on the RRL was that there was no written process to appeal his RRL placement. (*Id.* at 30-31).

12. Defendant Wetzel was the secretary of the DOC during the earlier portion of the period relevant to this time, while defendant Little was the secretary during the later portion.

13. Tucker sent several letters to Wetzel and Little complaining about his placement on the RRL. (Exs. P6, P7, P8, P9, P10).

14.   Crystal Loy, a staff assistant in Wetzel's office, responded to one such letter and referred to it as an "appeal" and noted that the "appeal is denied." (Ex. P7 at 001643).

15.   On May 7, 2021, Tucker filed a prison grievance about his placement on the RRL pursuant to the DOC's general grievance policy, DC-ADM 804. (*See* Ex. P14,[2] Doc. 44-4 at 3).

16.   B. Panasiewicz, SCI-Phoenix's deputy superintendent,[3] denied the grievance and stated that "the Restricted Release placement process has no provisions for appeals." (Doc. 44-4 at 5).

17.   The deputy superintendent at SCI-Rockview similarly told Tucker that there was no process available for an inmate to appeal his

---

[2] Exhibit P14 was included in plaintiff's exhibit packet, but neither party sought admission of the exhibit during the evidentiary hearing. The court considers the exhibit because it was previously cited in the summary judgment record at Doc. 44-4 and the court's order scheduling the evidentiary hearing indicated that any documents that had already been submitted during summary judgment proceedings would be considered part of the record in the court's exhaustion decision. (*See* Doc. 78 at 1 (allowing parties to "submit any additional materials that are not presently before the court" for purpose of the exhaustion hearing). Defendants' counsel also noted their understanding during the administrative hearing that exhibits previously submitted during summary judgment proceedings were already part of the record. (*See* Hearing Transcript, Doc. 88 at 3-4).

[3] Exhibit P14 does not identify Panasiewicz's position, but Tucker testified during the hearing that Panasiewicz was the deputy superintendent. (*See* Doc. 88 at 50).

13

RRL placement. (Hearing Transcript, Doc. 88 at 38-39 (testimony of Hassan Tucker)).

18.    Zachary Moslak, the DOC's chief hearing examiner, similarly told inmate Montana Bell that "appeal of placement on the RRL is not permitted" in denying Bell's grievance appeal challenging his RRL placement. (Ex. P15).

## VI.   CONCLUSIONS OF LAW

Based on the above factual findings and the relevant legal standard, the court makes the following conclusions of law:

1.    The grievance process was rendered unavailable to Tucker because the process to appeal his placement on the RRL was "so opaque" that it was "practically speaking, incapable of use." *Ross*, 578 U.S. at 643. DC-ADM 802 ostensibly governed placement on the RRL, but did not specifically provide any means of appealing an RRL placement. Eyer testified that there was an informal process to appeal RRL placement, but could not clearly explain that process. Additionally, at least three high-ranking DOC officials made statements to Tucker or Bell indicating that no appeals were available to challenge RRL

14

placement. In such a situation, it was impossible for an inmate to know what he had to do to exhaust administrative remedies.

2.    The grievance process was additionally rendered unavailable by the statements made by the deputy superintendents at SCI-Phoenix and SCI-Rockview that there was no way to appeal Tucker's RRL placement. *See Ross*, 578 U.S. at 644 (noting that grievance process may be rendered unavailable by "machination, misrepresentation or intimidation" by prison officials). Although the officials' statements were likely caused by their own confusion of the relevant process rather than an intent to mislead Tucker, the practical effect was that Tucker was led to believe that there was no way to appeal his RRL placement.

3.    The grievance process was rendered still more unavailable by the fact that several of the processes held out to Tucker as potential means of appealing his RRL placement were "simple dead end[s]." *See Ross*, 578 U.S. at 643. Eyer represented that speaking with the PRC may be a means of appeal RRL placement, but acknowledged that the PRC has no power to change an inmate's RRL placement. Similarly, Tucker sought to file grievances to challenge his RRL placement pursuant to the

15

standard grievance process under DC-ADM 804, but was told that no relief was available through that avenue.

4. Because there was no administrative grievance process available to Tucker, he was not required to exhaust administrative remedies. *Rinaldi*, 904 F.3d at 267-68.

5. As an alternative holding, even assuming that writing directly to the secretary was an available means of appealing an inmate's RRL placement, Tucker satisfied this process by writing repeatedly to both Wetzel and Little complaining about his placement on the RRL.

6. Although defendants argued that Tucker did not sufficiently raise his mental health concerns in his letters to Wetzel, (*see* Docs. 91, 93), there is no policy or any other written document stating what facts or specific statements need to be included in a letter complaining about RRL placement to exhaust administrative remedies. Defendants appear to be extrapolating from the specificity requirements of the DOC's standard grievance policy, DC-ADM 804, but because the process of writing directly to the secretary to complain about RRL placement is an informal process that is not clearly explained in—or required by—DC-

ADM 804 or any other written policy, inmates cannot be held to a specificity standard in their letters.

## VII.    CONCLUSION

For the foregoing reasons, the court concludes that the affirmative defense of failure to exhaust administrative remedies fails. The court will schedule this case for a trial on the merits of plaintiff's claims. An appropriate order follows.

*s/ Malachy E. Mannion*
**Malachy E. Mannion**
**United States District Judge**

**Dated: June 4, 2026**
22-631-01

17