**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HASSAN A. TUCKER,** | : | **CIV. ACTION NO. 1:22-CV-631** |
| **Plaintiff** | : | **(JUDGE MANNION)** |
| **v.** | : | **ELECTRONICALLY FILED** |
| **JOHN E. WETZEL, *et al.*,** | : | |
| **Defendants** | : | |

**<u>PLAINTIFF'S PRETRIAL MEMORANDUM</u>**

Date conference was held by counsel: August 21, 2026 and September 8, 2026

**A. Jurisdiction**

This is a civil rights action arising under the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983. Federal question jurisdiction is proper under 28 U.S.C. § 1331. Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. § 1391(b)(2) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

**B. Facts and Contentions as to Liability**

Plaintiff Mr. Hassan Tucker initiated this case to vindicate his right to be free from cruel and unusual punishment. After litigation of a motion to dismiss and summary judgment, he is proceeding to trial on a claim that Defendants John Wetzel and George Little, former Secretaries of the Department of Corrections, violated the Eighth Amendment by maintaining him in solitary confinement for an extended

period of time despite their knowledge of his preexisting serious mental illness; the exacerbation of his mental illness, up to and including a suicide attempt; and the lasting harm caused by solitary confinement before and after his suicide attempt. Mr. Tucker was kept in solitary confinement on a status called "Restricted Release List," or RRL, for four years. Under Department of Corrections policy, an individual identified on the RRL may not be released from a Security Level 5 (SL5) Housing Unit.

On RRL status in SL5 housing, Mr. Tucker was confined to a cell of no greater than 8 by 10 feet. He remained locked in this cell, alone, for up to twenty-four hours a day. Artificial lighting was on in the cell twenty-four hours a day, disrupting his sleep. At SCI Phoenix, where Mr. Tucker was housed from March of 2021 through December of 2023, his cells contained a thin, opaque window, allowing light in but not permitting him to see outside; at SCI Rockview, where Mr. Tucker was housed from 2019 through March of 2021, the cells contained no windows to the outside at all. Mr. Tucker could not leave or return to his cell without being strip-searched by correctional staff. He received his meals through a slim aperture in a solid steel door. He could not have any contact visitation with his family or his legal counsel, and could not visit at all with extended loved ones.

Mr. Tucker had mental health issues noted in his DOC medical records long before his solitary confinement. Reports of depression, frontal lobe damage, and

childhood suicide attempts were noted on his arrival in DOC custody in 2006. In 2017, Mr. Tucker fell from a second-tier story on a prison block directly onto his head, resulting in hospitalization for hematoma and several stitches. Shortly after this traumatic brain injury, Mr. Tucker was found guilty of his first assault misconduct while in DOC custody. He was found guilty of two additional assault misconducts over the course of the next year and a half. Facility staff subsequently recommended him for RRL status and long-term solitary confinement. He was approved for RRL confinement in November of 2019, and remained in SL5 solitary confinement housing until his transfer to general population in December of 2023.

Mr. Tucker's mental health deteriorated significantly in solitary confinement. Mr. Tucker experienced intense sleep deprivation, anxiety, depression, suicidal thoughts, migraines, panic, and memory loss. He began to experience visual hallucinations, frequently reporting a "worm" in his line of sight to mental health staff. He developed chronic headaches, digestive issues, body aches, and other physiological symptoms as well, many of which have persisted long after his release from solitary confinement.

Mr. Tucker attempted suicide by hanging on April 27, 2020. He was hospitalized for physical injuries arising out of this suicide attempt, with medical records showing indications of oxygen deprivation and muscle breakdown from physical trauma, requiring a three-day hospital stay. On his return to DOC custody,

Mr. Tucker was kept in a Psychiatric Observation Cell, then returned to solitary confinement, where he remained for over two and half years.

Mr. Tucker is proceeding on a theory that both Defendant Wetzel and Defendant Little are directly liable for Eighth Amendment violation of his prolonged solitary confinement. At all times relevant to Defendant Wetzel, the Secretary of the Department of Corrections was the sole individual with the power to place, continue, or remove somebody from the RRL. Mr. Tucker wrote directly to Defendant Wetzel before his placement on the RRL, informing him about a constellation of serious mental health conditions and symptoms, as well as a recent traumatic brain injury, that increased the risk of serious harm from long-term solitary confinement. A psychological evaluation included in the packet evaluating him for RRL placement noted his history of suicide attempts, his traumatic childhood, and his recent fall and head injury from the second-story tier. Defendant Wetzel nonetheless placed him on the RRL. Mr. Tucker wrote to Defendant Wetzel several more times while confined in solitary, requesting release or the opportunity for greater social interaction or programming. Defendant Wetzel nevertheless approved Mr. Tucker’s continuation on RRL status, though he noted the potential for transfer to a Diversionary Treatment Unit (DTU).

In October of 2021, when Mr. Tucker had already been in solitary confinement on the RRL for almost two years, Defendant Wetzel stepped down as Secretary and

Defendant Little took his place. Mr. Tucker wrote directly to Defendant Little twice while he still retained unilateral authority under DOC policy to remove an individual from the RRL. He informed Defendant Little explicitly of the detrimental impact his solitary confinement was having on his mental and physical health. Defendant Little authorized designees to respond to Mr. Tucker's letters, but took no steps to remove him from solitary while he had the power to do so. After receiving these letters, Defendant Little authorized rewriting the DOC policy governing RRL status, abdicating his authority to intervene directly in RRL placements and vesting the power to monitor and approve RRL continuation or release in Executive Deputy Secretaries for Institutional Operations.

Mr. Tucker is also proceeding on a theory that Defendants are liable in a supervisory capacity for his continued confinement on the Restricted Release List. Defendants describe themselves as Supervisory Defendants throughout their summary judgment briefing; Judge Conner analyzed Mr. Tucker's Eighth Amendment claims on the motion to dismiss under a direct-liability and supervisory-liability frameworks. Defendant Little, in particular, initiated a policy change less than a week before Mr. Tucker filed his *pro se* complaint expressly delegating authority to maintain RRL designations to lower-level employees. He did not institute substantive changes mandating more frequent reviews for individuals with suicide attempts or documented mental health treatment needs; he did not consult

with mental health professionals or with people incarcerated on the RRL prior to instituting this change. Despite significant knowledge of the general risks solitary confinement posed to individuals with mental illness, and actual notice of the significant harm Mr. Tucker was experiencing, he instituted a policy continuing annual reviews and permitting the essentially indefinite confinement of individuals with mental illness.

As discussed further below under Legal Issues, Mr. Tucker is requesting jury instructions that would have them apply the above facts to a general conditions-of-confinement framework, as well as a specific vulnerability to suicide framework.

**C. Plaintiff's Undisputed Facts[1]**

1. Mr. Hassan Tucker is a 42-year-old man who was born and raised in Philadelphia. He has been incarcerated in the Pennsylvania Department of Corrections since April 11, 2006.

2. John Wetzel is a former Secretary of the Pennsylvania Department of Corrections. He served as Secretary from 2011 until October 1, 2021.

3. George Little is a former Secretary of the Pennsylvania Department of Corrections. He served as Secretary from October 1, 2021 until January of 2023.

[1] The parties met and conferred regarding the Plaintiff's statements of undisputed facts and attempted in good faith insofar as possible to agree upon a comprehensive joint statement. The parties intend to meet and confer again upon resolution of pending motions *in limine*, and hope to reach a comprehensive joint statement of undisputed facts at that time.

4. The Pennsylvania Department of Corrections is the state prison system in the Commonwealth of Pennsylvania. It is commonly abbreviated as PA DOC, or DOC.

5. "General population" refers to the default housing status within DOC custody.

6. "Administrative Custody" (AC) is a restrictive confinement status within the Pennsylvania Departments of Corrections imposed either as a form of Involuntary Protective Custody (PC), General Placement, or Restricted Release List (RRL) Placement, and resulting in Security Level 5 (SL5) housing unit placement.

7. "Disciplinary Custody" (DC) is a restrictive confinement status within the Pennsylvania Departments of Corrections imposed as a sanction for misconduct, and resulting in Security Level 5 (SL5) placement in a Restricted Housing Unit (RHU).

8. Pennsylvania DOC policy DC-ADM 802 governs Administrative Custody, including the process for placing, continuing, or removing an individual from Restricted Release List (RRL) status.

9. "Restricted Release List" (RRL) is a designation under Pennsylvania DOC policy. An individual identified on the RRL may not be released from a Security Level 5 (SL5) housing unit without written approval of an authorized decisionmaker.

10. From 2016 through April 17, 2022, the Secretary of the Department of Corrections was the authorized decisionmaker for purposes of RRL placement, continuation, and removal. As of April 18, 2022, the Executive Deputy Secretary for Institutional Operations is the authorized decisionmaker for purposes of RRL placement, continuation and removal. The Secretary remains the head policymaker for the DOC generally.

11. At all times relevant to this action, DC-ADM 802 provided for review of an individual's RRL status on an annual basis.

12. "Security Level 5" (SL5) housing is a housing status under Pennsylvania DOC policy.

13. Cells in SL5 housing at SCI Rockview and SCI Phoenix range from 6 by 10 feet to 8 by 10 feet.

14. Under DOC policy, incarcerated individuals must be strip-searched every time they leave an SL5 housing cell.

15. Under DOC policy, artificial lighting remains on in SL5 housing cells at all times.

16. Under DOC policy, meals in an SL5 housing are received in the cell, through a feeding aperture in the cell door.

17. Then-Secretary John Wetzel received a letter from the United States Department of Justice on or around February 24, 2014, which summarized a

systemwide investigation concluding that throughout the Pennsylvania DOC system, hundreds of prisoners with serious mental illness and/or intellectual disabilities remained in solitary confinement for months and sometimes years, with devastating consequences to their mental health.

18. In or around 2017-2018, then-Secretary John Wetzel facilitated a research project on traumatic brain injuries (TBI) within the Pennsylvania DOC's incarcerated population, resulting in the publication of Nagele et al., *Brain injury in an offender population: Implications for reentry and community transition*, J. Offender Rehabilitation 57(8) (2018).

19. In or around 2017, then-Secretary John Wetzel invited Dr. Bruce Western and a team of researchers to perform a study of restrictive housing, resulting in the publication of Western et al., *Solitary confinement and institutional harm*, Incarceration 3(1) (2021).

20. Mr. Tucker was not found guilty or charged with any violent misconducts prior to 2017.

21. Mr. Tucker fell from a second-story tier on April 20, 2017, hitting his head.

22. He sustained a hematoma and jagged laceration to the left scalp, which was treated with staples at Geisinger hospital.

23. Mr. Tucker was found guilty of an assault misconduct for an incident that allegedly occurred on or around August 20, 2017.

24. Mr. Tucker was found guilty of an assault misconduct for an incident that allegedly occurred on or around January 22, 2018.

25. Mr. Tucker was found guilty of an assault misconduct for an incident that allegedly occurred on or around August 19, 2019.

26. Mr. Tucker was diagnosed with adjustment disorder with anxiety on November 10, 2017.

27. Mr. Tucker was diagnosed with Post-Traumatic Stress Disorder on October 10, 2019.

28. Defendant Wetzel received a packet of information attached to the recommendation to place Mr. Tucker on the RRL. This packet included a memorandum on Mr. Tucker's three assault misconducts. It also included a psychological evaluation that noted Mr. Tucker's childhood history of head injury, psychiatric involuntary commitment, and suicide attempt, his 2017 head injury and hospitalization, and his diagnosis of adjustment disorder with anxiety.

29. Mr. Tucker sent Defendant Wetzel a letter requesting to not be placed on RRL, received by the Secretary's office on October 22, 2019. In this letter, he wrote that "I cry inexplicably, experience Rapid Eye Movements while awake, I see things such as shadows in my peripheral and what resembles micro-organisms under

a microscope in my direct vision; I have a hard time sleeping without meds (prescribed in 2017), and headaches that are traumatizing by themselves. I did not experience these things that I constantly endure, now, prior to falling on my head in 2017."

30. Mr. Tucker sent Defendant Wetzel a letter stating he was referred for RRL and did not understand why the SMU was not considered, received by the Secretary's office on November 14, 2019.

31. Defendant Wetzel approved Mr. Tucker's placement on the RRL on November 15, 2019.

32. While in SL5 housing at SCI Rockview, Mr. Tucker was locked in his cell alone between 22 and 24 hours per day.

33. Mr. Tucker attempted suicide by hanging on April 27, 2020.

34. Mr. Tucker was hospitalized until April 29, 2020.

35. Mr. Tucker sent Defendant Wetzel a letter requesting transfer to a facility with rehabilitative programming, received by the Secretary's office on October 7, 2020.

36. Mr. Tucker sent Defendant Wetzel a letter requesting the ability to participate in meaningful rehabilitative disciplinary programs, received by the Secretary's office on March 19, 2021.

37. Defendant Wetzel reauthorized Mr. Tucker's continuation on the RRL on June 16, 2021.

38. Mr. Tucker was transferred to SCI Phoenix on March 30, 2021.

39. While in SL5 housing at SCI Phoenix, Mr. Tucker was locked in his cell alone between 21 and 24 hours per day.

40. From October 1, 2021 through April 17, 2022, Defendant Little held ultimate authority to continue or remove individuals on RRL status under DC-ADM 802.

41. Mr. Tucker sent Defendant Little a request for information regarding the IMU, received by the Secretary's office on December 15, 2021.

42. Mr. Tucker sent Defendant Little a letter about being on AC (RRL) status since 2019 and the effects it was having on his health and mental health, received by the Secretary's office on February 8, 2022. In this letter, he described "sleep loss/deprivation, anxiety, deep depression, slough of despond, suicidal thoughts/attempts, migraines, memory loss, asthsma [sic] attacks, skin, tooth, and gum damage … heart damage, severe traumatization, active visions, and extreme fear of perdition."

43. Defendant Little authorized a change to policy DC-ADM 802 effective April 18, 2022, delegating ultimate responsibility for RRL placement, continuation, and removal to Executive Deputy Secretaries for Institutional Operations.

44. Mr. Tucker remained in SL5 housing on RRL status until his removal from RRL was approved on November 20, 2023.

45. Mr. Tucker remained in SL5 housing until his transfer to general population at SCI Mahanoy on December 27, 2023.

46. Mr. Tucker was diagnosed with mild neurocognitive disorder due to known physiological condition on August 14, 2024.

47. Mr. Tucker was diagnosed with psychotic disorder with hallucinations due to known physiological condition on August 14, 2024.

48. Mr. Tucker was diagnosed with persistent depressive disorder on August 14, 2024.

**D. Damages**

Mr. Tucker is seeking compensatory damages for his physical, mental, and emotional injury in prolonged solitary confinement, as well as punitive damages against both Defendants. Mr. Tucker is not seeking any special monetary damages, loss of past or future earnings, or medical expenses.

Mr. Tucker proposes the use of standard Third Circuit § 1983 compensatory damages instructions, claiming the follow model items of damages from Third Circuit Model Jury Instruction 4.8.1:

1. Physical harm to Mr. Tucker during and after the events at issue, including ill health, physical pain, disability, disfigurement, or discomfort, and any such physical harm that Mr. Tucker is reasonably certain to experience in the future. In assessing such

harm, you should consider the nature and extent of the injury and whether the injury is temporary or permanent.

2. Emotional and mental harm to Mr. Tucker during and after the events at issue, including fear, humiliation, and mental anguish, and any such emotional and mental harm that Mr. Tucker is reasonably certain to experience in the future.

Mr. Tucker proposes the use of standard Third Circuit § 1983 punitive damages instructions, drawn from Model Jury Instruction 4.8.3.

**E. Names and Addresses of Witnesses, and Specialties and Qualifications of Experts To Be Called**

Hassan Tucker
SCI Mahanoy
301 Grey Line Drive
Frackville, PA 17931

John Wetzel
Address C/O Defendants' counsel

George Little
Address C/O Defendants' counsel

Tamika Montgomery
Address and contact information C/O Plaintiffs' counsel

Dr. Lauren Kois
P.O. Box 800660
Charlottesville, VA 22908-0660
lek8m@virginia.edu
(434) 249-6584

Dr. Kois is a clinical psychologist. She obtained her Doctorate in Psychology from The Graduate Center at the City University of New York (John Jay College's Clinical Psychology-Law program) in New York City. Her academic and applied

clinical training emphasized assessing and treating individuals with severe mental illness; culturally diverse, high-risk, and under-resourced populations; and those involved in or otherwise impacted by the criminal legal system. Dr. Kois also completed formal coursework, research, and practicum in cognition and brain-behavior with a focus on neuropsychology. In addition to extensive clinical psychology-law training, Dr. Kois gained neuropsychology experience via New York University's Epilepsy Center, Mount Sinai's Dementia Clinic, and North Carolina's Central Regional Hospital.

Dr. Kois maintains a private forensic evaluation practice and is retained as a forensic mental health expert by both plaintiffs and defendants in civil litigation throughout the country. She previously served as an Assistant Professor of Psychiatry and Neurobehavioral Sciences at the University of Virginia School of Medicine's Institute of Law, Psychiatry, and Public Policy. Prior to joining the University of Virginia, Dr. Kois served as core faculty of the University of Alabama's Clinical Psychology-Law doctoral program. She has taught Psychology and Law and Criminal Forensic Assessment courses and seminars to doctoral, postdoctoral, and professional trainees and trained thousands of mental health and legal professionals in matters of competence evaluation and restoration standards and practices throughout the country. In addition, Dr. Kois has published 39 scholarly works and presented at regional, national, and international conferences.

Dr. Kois has published peer-reviewed research on head injury and neuropsychological functioning among forensic and carceral populations.

Dr. Kois' full curriculum vitae, a list of all publication authored in the previous ten years, and a list of all other cases in which the witness testified as an expert at trial or by deposition in the previous four years was provided to Defendants' counsel as required by Fed. R. Civ. P. 26(a)(2).

**F. Summary of Expert Testimony**

Dr. Kois will testify regarding two primary areas: (1) academic literature regarding the links between solitary confinement and severe psychological harm, as well as successful alternatives to solitary confinement and other current best practices; and (2) her clinical psychological assessment of Mr. Tucker.

Based on a thorough review of the current research, it is her opinion that solitary confinement can inflict severe psychological harm on incarcerated people, primarily by exacerbating existing psychiatric symptoms, causing the development of new symptoms, contributing to a greatly-increased risk of suicide and self-harm, and preventing access to basic needs or adequate rehabilitative activities. She is of the opinion that those with existing psychiatric conditions, such as traumatic brain injury (TBI) or Posttraumatic Stress Disorder (PTSD), face increased vulnerability to harms resulting from solitary confinement.

Through her clinical assessment of Mr. Tucker, Dr. Kois concludes that Mr. Tucker suffered from pre-existing mental health vulnerabilities when he was first incarcerated; suffered from further TBI after falling and being hospitalized in 2017, leading to further serious impairments; these vulnerabilities made him especially susceptible to grave harm from RRL placement; and his RRL placement led to a clear clinical deterioration—both exacerbating his existing psychiatric symptoms and introducing new ones—that has persisted after he was transferred out of RRL.

Dr. Kois is of the opinion that Defendants had significant knowledge of Mr. Tucker's condition and his particular vulnerability to psychological deterioration, including a heightened risk of suicide. Defendants' decision to approve and maintain Mr. Tucker's RRL status in spite of this knowledge violates best practices as implemented by several other correctional facilities housing incarcerated people with mental health vulnerabilities.

**G. Pleadings and Discovery**

This litigation was initiated *pro se* by Mr. Tucker, an "action brought without an attorney by a person in the custody of the United States, a state, or a state subdivision." As a proceeding officially exempted from Fed. R. Civ. P. 26(a)(1)(A) requirements by Fed. R. Civ. P. 26(a)(1)(B)(iv), the parties did not exchange initial discovery disclosures.

Mr. Tucker obtained present counsel after the resolution of Defendants' first motion for summary judgment and engaged in limited reopened discovery. Mr. Tucker's counsel deposed Defendants Wetzel and Little; counsel for Defendants deposed Mr. Tucker. Mr. Tucker disclosed his expert witness and turned her curriculum vitae, declaration, and final clinical evaluation report over to opposing counsel within the stipulated period for reopened discovery. Defendants' counsel has not produced an expert.

Counsel for Defendants maintained that many of the requested documents were not in their possession or control; Mr. Tucker served third-party subpoenas on the Department of Corrections to obtain these documents, which were contemporaneously served on Plaintiffs' counsel and Defendants' counsel.

**H. Legal Issues**

Plaintiff anticipates that the applicable jury instruction for Mr. Tucker's prolonged solitary confinement claim may be disputed. Mr. Tucker proposes the use of the Ninth Circuit's general conditions of confinement jury instruction, Ninth Circuit Model Jury Instruction 9.31,[2] in the absence of a general conditions-of-confinement general instruction or specific prolonged-solitary instruction in the Third Circuit's model civil jury instructions. The Third Circuit recognizes the application of a general conditions-of-confinement framework to mental health

---

[2] Available here: https://www3.ce9.uscourts.gov/jury-instructions/node/165

deterioration in solitary confinement, as well as specific-vulnerability-to-suicide framework (discussed further below). *See Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (describing prolonged solitary claim as a "claim of inhumane prison conditions" and allegations as "more than sufficient to state a plausible claim that Brandon experienced inhumane conditions of confinement to which the prison officials … were deliberately indifferent"); *Clark v. Coupe*, 55 F.4th 167, 176-77 (3d. Cir. 2022) (describing "'per se' solitary confinement claim" as a "conditions of confinement" claim). The Ninth Circuit's civil model jury instruction 9.31 maps neatly onto core Eighth Amendment standards governing conditions of confinement claims.

Plaintiff also intends to request a jury instruction applying the specific-vulnerability-to-suicide framework. The Third Circuit's Model Civil Jury Instruction 4.11.2, failure to protect from suicidal action, provides a standard model for this particular type of Eighth Amendment claim. The Third Circuit in *Palakovic* recognized the viability of a vulnerability-to-suicide framework in the context of prolonged solitary confinement of individuals with serious mental illness, requiring a showing of a "strong likelihood, rather than a mere possibility, that a suicide would be *attempted*." *Palakovic v. Wetzel*, 854 F.3d 209, 223–24 (3d Cir. 2017) (emphasis added). This framework is regularly applied to attempted suicides as well as wrongful death suits. *See McClain v. Pennsylvania Dep't of Corr.*, No. 1:19-CV-

1951, 2020 WL 5372243, at *1 (M.D. Pa. July 9, 2020) (Carlson, M.J.), *report and recommendation adopted*, No. 1:19-CV-1951, 2020 WL 5369966 (M.D. Pa. Sept. 8, 2020) (Rambo, J.); *Talley v. Griesmer*, No. 19-3796, 2023 WL 3002742, at *2 (3d Cir. Apr. 19, 2023).

Plaintiff intends to request a jury instruction on supervisory liability. Judge Conner granted in part and denied in part their motion to dismiss, applying both direct-liability and supervisory-liability analytical frameworks (Doc. 22). Defendants Wetzel and Little refer to themselves as the "Supervisory Defendants" *passim* throughout their briefing in support of summary judgment (Doc. 40). Plaintiff proposes standard supervisory liability instruction modeled after Third Circuit model civil instruction 4.6.1, as modified in the final jury instructions for retrial in *Clark v. Coupe*, Case No. 1:17-cv-00066-RGA, ECF No. 336 (June 27, 2024), on remand from the Third Circuit in *Clark v. Coupe*, 54 F.4th 167 (3d Cir. 2022).

Plaintiff anticipates a dispute over the applicability of *Williams v. Dep't of Corrs.*, 117 F.4th 503 (3d Cir. Sept. 20, 2024) (*Williams II*). Counsel for defendants has suggested that *Williams II* provides an applicable four-prong test for an Eighth Amendment claim on the merits. Plaintiffs contest this characterization, as *Williams II* was a non-merits qualified immunity opinion that merely extended prior holdings to the inapposite factual context of death row. Even considering the narrow, fact-

bound context of qualified immunity-based articulations of clearly established rights, the more apposite precedent for Mr. Tucker's case is *Clark v. Coupe*, 55 F.4th 167 (3d Cir. 2022). The core Eighth Amendment framework applicable to Mr. Tucker's prolonged solitary confinement claim on the merits are not, however, limited to the rights determined to be clearly established by appellate courts considering qualified immunity arguments: it is the standard, two-prong objective seriousness and deliberate indifference to a serious risk of harm applied to Eighth Amendment motions to dismiss, summary judgment opinions, and jury trials

Mr. Tucker filed six Motions *in Limine* and counsel for the Defendants filed two. Neither side has concurred in any motion. Mr. Tucker filed Motions *in Limine* (1) to exclude evidence of his specific criminal conviction and sentence history (Doc. 105); (2) to prohibit Defendants from introducing impermissible opinion testimony from lay and expert witnesses at trial (Doc. 107); (3) to prohibit improper bolstering (Doc. 109); (4) to exclude crime-first terms (Doc. 111); (5) to permit street clothing for Mr. Tucker and to permit Mr. Tucker to appear before the jury without restraints (Doc. 113); and (6) to propose limitations on the permissible scope and usage of Mr. Tucker's misconduct history to prevent prejudice (Doc. 115). Defendants opposed each of Plaintiff's motions. (Docs. 121, 122, 123).

Defendants filed two Motions *in Limine* to (1) exclude testimony regarding the conditions Mr. Tucker experienced while in solitary and the expert report of Ms.

Lauren Kois, the plaintiff's expert (Doc. 101) and (2) to limit the ability of Mr. Tucker to seek punitive and compensatory damages. (Doc. 103). Plaintiff opposed both of Defendants' motions. (Docs. 119, 120).

All motions have been fully briefed and are ripe for decision.

In opposing Mr. Tucker's motion to appear before the jury without restraints, Defendants noted that they would be requesting a TACT belt/vest placed under his clothing. Plaintiff opposes this alternative. The parties request that this issue be addressed at the final pretrial conference. If unresolved at that time, Defendants' counsel may request an evidentiary hearing on the necessity of restraints under *Sides v. Cherry*, 609 F.3d 576, 586 (3d. Cir. 2010).

**I. Stipulations Desired.**

Plaintiffs wish to stipulate to the authenticity of the medical records obtained from the Department of Corrections through third-party subpoenas as requested by Defendants' counsel, and as turned over to Defendants' counsel in the form the Plaintiffs received the records from the Department of Corrections. Opposing counsel's independent access to many of these same records is evidenced by their attachment to Defendants' summary judgment motion. The authenticity of the records ought not to be disputed, and calling an additional custodian of records witness for the sole purpose of authentication would result in inefficiency and undue delay. Defendants do not oppose a stipulation to the authenticity of DOC records,

nor do they expect to object to the exhibits of records supplied to Ms. Kois that informed her review, although they reserve the right to object on other grounds. Mr. Tucker intends to seek an amended stipulation applying the foregoing to all records supplied by the DOC.

**J. Estimated Number of Trial Days**

Plaintiff anticipates that trial will last two or three days.

**K. Any Other Matter Pertinent to the Case.**

Plaintiff intends to construct a mock solitary confinement cell in the courtroom as an illustrative aid under Fed. R. Evid. 107. *See* Plaintiff's Trial Brief, *Slevin v. Board of Comm.*, Case No. 1:08-cv-01185-MV-SMV, Doc. 77, (D.N.M. Jan. 10, 2012).

**L. Exhibit List**

Pursuant to Local Rule 16.3, a prenumbered schedule of exhibits, with brief identification of each, on the clerk's Exhibit Form, is attached herein as an exhibit.

**M. Special Verdict Questions**

Plaintiff will not request any special verdict questions or written findings from the jury within the meaning of Fed. R. Civ. P. 49. However, Plaintiff's proposed verdict form is attached for convenience.

DATED: September 8, 2026

Respectfully submitted,

*/s/ Nia Holston*
Nia Holston (PA 327384)

*/s/ Bret Grote*
Bret Grote (PA 317273)
*/s/ Lolo Salsbury Serrano**
Lolo Salsbury Serrano (PA 338184)
*/s/ Bassel El-Rewini**
Bassel El-Rewini (NY 6307334)

* *pro hace vice*

Abolitionist Law Center
990 Spring Garden Street, Suite 306
Philadelphia, PA 19123
(267) 357-0948
nia@alcenter.org
bretgrote@alcenter.org
lolo@alcenter.org
bassel@alcenter.org

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HASSAN A. TUCKER,** | : | **CIV. ACTION NO. 1:22-CV-631** |
| | : | |
| **Plaintiff** | : | **(JUDGE MANNION)** |
| | : | |
| **v.** | : | **ELECTRONICALLY FILED** |
| | : | |
| **JOHN E. WETZEL, *et al.*,** | : | |
| | : | |
| **Defendants**. | : | |

**CERTIFICATE PURSUANT TO LR 30.10**

I hereby certify that counsel have met and discussed depositions in an effort to eliminate irrelevancies, side comments, resolved objections, and other matters not necessary for consideration by the trier of fact. No videotaped depositions will be introduced for any purpose at trial.

/s/ Nia Holston
Nia Holston (PA 327384)

DATE: September 8, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HASSAN A. TUCKER,** | : | **CIV. ACTION NO. 1:22-CV-631** |
| | : | |
| **Plaintiff** | : | **(JUDGE MANNION)** |
| | : | |
| **v.** | : | **ELECTRONICALLY FILED** |
| | : | |
| **JOHN E. WETZEL, *et al.*,** | : | |
| | : | |
| **Defendants**. | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that the within pretrial memorandum has been filed electronically and is available for viewing and downloading from the ECF system.

/s/ Nia Holston
Nia Holston (PA 327384)

DATE: September 8, 2026