2023 WL 3002742
Only the Westlaw citation is currently available.
United States Court of Appeals, Third Circuit.

Quintez TALLEY, Appellant
v.
C/O GRIESMER; Sgt. Alimon; C/O Woodward; Lt. Kull; M. Nash; John E. Wetzel; C/O Dale Schoeneberger; PA. Department of Corrections

No. 19-3796
|
Submitted Pursuant to Third Circuit LAR 34.1(a) April 18, 2023
|
(Opinion filed: April 19, 2023)

On Appeal from the United States District Court for the Eastern District of Pennsylvania (D.C. Civil Action No. 2:19-cv-01587), District Judge: Honorable Timothy J. Savage

**Attorneys and Law Firms**

Quintez Talley, LaBelle, PA, Pro Se.

Kevin R. Bradford, Esq., Claudia M. Tesoro, Esq., Office of Attorney General of Pennsylvania, Philadelphia, PA, for C/O Griesmer; Sgt. Alimon; C/O Woodward; Lt. Kull; M. Nash; John E. Wetzel; C/O Dale Schoeneberger; Pa. Department of Corrections.

Before: JORDAN, GREENAWAY, JR., and NYGAARD, Circuit Judges

OPINION [*]

PER CURIAM

***1** Quintez Talley, a Pennsylvania prisoner, appeals pro se from orders of the United States District Court for the Eastern District of Pennsylvania denying his motion for a default judgment and rejecting claims that he brought in an action under the Americans with Disabilities Act (ADA), 42 U.S.C. § 1983, and state law. For the following reasons, we will affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

While Talley was housed in the Diversionary Treatment Unit at SCI Graterford, he was provided a razor for shaving but refused to return it to prison staff. He then asserted that he was suicidal and used the razor to cut himself. Talley claimed that the defendants, who were aware of his threats and wounds, left him in his cell unsupervised for over an hour. Ultimately, Talley relinquished the razor and was treated for his injuries at the medical triage area. Later, Talley was issued a misconduct, but the hearing examiner dismissed the charges based on a policy prohibiting punishment for engaging in self-injurious behavior.

Talley filed a complaint in the District Court, naming as defendants the Pennsylvania Department of Corrections (DOC), DOC Secretary Wetzel, and several corrections officers and medical staff. (ECF 2.) The District Court sua sponte dismissed the claims that were brought against the DOC and the individual defendants in their official capacities, holding that they were not "persons" subject to suit under § 1983. (ECF 5.) The defendants then filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (ECF 10.) Talley responded by filing a motion for entry of default judgment, arguing that the defendants' response to the complaint was late. (ECF 14.) The District Court denied the motion for entry of default judgment without explanation. (ECF 15.) Thereafter, the District Court granted the defendants' motion to dismiss, holding that, although it was unclear whether Talley exhausted administrative remedies, his claims lacked merit. (ECF 16 & 17.) Talley timely appealed. [1] (ECF 18.)

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we review the order denying Talley's motion for default judgment for abuse of discretion. See Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000). We apply the same de novo standard of review to the grant of a motion to dismiss and to a sua sponte dismissal under 28 U.S.C. § 1915(e)(2)(B). See Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012); Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). In reviewing a dismissal under Rule 12(b)(6), we must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. See Fleisher, 679 F.3d at 120.

***2** Talley challenges the District Court's denial of his motion for entry of a default judgment. (Doc. 31, at 7-9

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

of 16; Doc. 54, at 3-9 of 15.) In particular, he claims that a default judgment was warranted because the defendants "filed their Rule 12(b)(6) motion to dismiss ... three days beyond their deadline to file such a motion." (Doc. 54, at 6 of 15.) Although the District Court provided no explanation for the denial of Talley's motion for default judgment, we may affirm on any basis supported by the record. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam). "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain, 210 F.3d at 164 (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)). We do not favor entry of default or default judgments and prefer that cases are decided on their merits. See $55,518.05 in U.S. Currency, 728 F.2d at 194-95. Here, Talley did not show any prejudice from the defendants' short delay in responding to his complaint or any culpable conduct by the defendants. In addition, as explained below, the defendants had a meritorious defense to at least some of Talley's claims. Thus, the District Court did not abuse its discretion in denying the motion for a default judgment. See Chamberlain, 210 F.3d at 164.

The District Court also properly dismissed Talley's § 1983 claims for monetary damages against the DOC and the individual defendants in their official capacities. See Lavia v. Pa., Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000); A.W. v. Jersey City Pub. Schs., 341 F.3d 234, 238 (3d Cir. 2003) (noting that "[a] state is generally entitled to immunity in federal court from suits by private parties," and this protection extends to "state officials sued in their official capacities for monetary damages"). Talley correctly notes that official capacity claims requesting prospective injunctive relief are not barred by sovereign immunity. See Ex parte Young, 209 U.S. 123 (1908). But Talley did not ask for injunctive relief in his complaint's "Prayer for Relief."

We also discern no error in the District Court's denial of Talley's claims under the Fourteenth Amendment's Privileges and Immunities and Due Process Clauses. The Privileges and Immunities Clause is inapplicable to Talley's assertion that he was treated differently than inmates without mental illnesses. See Mich. Corr. Org. v. Mich. Dep't of Corr., 774 F.3d 895, 902 (6th Cir. 2014) (stating that "[i]n its current incarnation, the [Fourteenth Amendment's Privileges and Immunities] Clause protects only 'fundamental' rights of national citizenship"). In addition, Talley failed to state a due process claim based on the misconduct charges. The filing of false disciplinary charges does not violate the Constitution as long as the inmate was granted a hearing and an opportunity to rebut the charges. Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002). Here, Talley had a disciplinary hearing, he pleaded not guilty based on his self-injurious behavior, the charges were dismissed, and he received no punishment. Thus, his due process rights were not violated. See Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974) (due process requires inmate receive advance written notice of disciplinary charges, an opportunity to present a defense, and an explanation for the decision).

We conclude, however, that the District Court erred in dismissing Talley's claim that the defendants violated the Eighth Amendment by leaving him unsupervised for over an hour with a razor after he had cut himself and threatened suicide. To state an Eighth Amendment claim based on deliberate indifference to the risk of suicide or self-harm, the plaintiff must allege facts supporting plausible inferences "(1) that the individual had a particular vulnerability to suicide, meaning that there was a 'strong likelihood, rather than a mere possibility,' that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability." Palakovic v. Wetzel, 854 F.3d 209, 223-24 (3d Cir. 2017). Talley alleged that he told various prison officials that he was suicidal. (ECF 2, at ¶ 12, 15-16.) He also claimed that prison officials knew that he was using a razor to cut himself. (ECF 2, at ¶ 13, 18, 21.) Nevertheless, according to Talley, the prison officials "left him in his cell unsupervised for over an hour...." (ECF 2, at ¶ 14, 32.)

***3** Drawing all reasonable inferences in Talley's favor, we conclude that these allegations are sufficient to state a claim for deliberate indifference to serious medical needs. See Estate of Novack ex rel. Turbin v. County of Wood, 226 F.3d 525, 529 (7th Cir. 2000) (stating that "a prison official must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life and must fail to take reasonable steps to prevent the inmate from performing this act" (citations omitted)); cf. Lemire v. Cal. Dep't of Corrs.

& Rehab., 726 F.3d 1062, 1078-79 (9th Cir. 2013) (holding that there was a triable issue on deliberate indifference where defendants had a duty to prevent suicides but left plaintiff unmonitored for three-and-a-half hours). The District Court concluded that Talley's claim of being left unsupervised after cutting himself was contradicted by his allegations that prison personnel attempted to coax the razor from him. (ECF 16, at 10.) To the extent that any such contradiction exists, the District Court improperly resolved it in the defendants' favor at the motion to dismiss stage without providing Talley with leave to amend. See In re Stone & Webster, Inc., Sec. Litig., 414 F.3d 187, 200 (1st Cir. 2005) ("We recognize that in assessing a motion to dismiss for insufficient pleading, we must read the Complaint in the manner most favorable to the plaintiff, drawing reasonable inferences in the plaintiff's favor, ... and that inconsistent pleading does not deprive the pleader of the right to have the complaint read, as between the inconsistencies, in the manner that supports the adequacy of the pleading."); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir. 2002).

For the foregoing reasons, we will affirm in part, vacate in part, and remand for further proceedings consistent with this opinion. [2]

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 3002742

## Footnotes

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

1 We note that Talley has forfeited several claims by failing to meaningfully raise them in his "Brief in Support of Appeal" (Doc. 31), in his additional "Brief in Support of Appeal" (Doc. 44), or in his "Supplemental Brief" (Doc. 54). See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 124 n.2 (3d Cir. 2020) (holding that arguments not raised in an opening brief on appeal are forfeited); United States v. Gonzalez, 905 F.3d 165, 206 n.18 (3d Cir. 2018) (declining to consider argument that party sought to incorporate by reference to submissions in District Court). In particular, Talley does not challenge the dismissal of his ADA claims, the dismissal of his challenge to the defendants' alleged failure to "contact psychological/psychiatric personnel capable of evaluating [him]," and the dismissal of his state law breach of contract claim.

2 Talley's Motion for Remand (Doc. 27) and Motion for Oral Argument (Doc. 59) are denied. Talley has also filed a "Motion to Enforce Waiver," which we will treat as his reply brief, as he requests. (Doc. 62, at 1 n.1.) Any other relief requested in the Motion to Enforce Waiver is denied.

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 5372243
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Ralph MCCLAIN, Plaintiff,
v.
PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., Defendants.

Civil No. 1:19-CV-1951
|
Signed 07/09/2020

**Attorneys and Law Firms**

Ralph McClain, Waynesburg, PA, pro se.

Joseph G. Fulginiti, Chief Counsel's Office Pennsylvania Department of Corrections, Mechanicsburg, PA, for Defendants.

**REPORT AND RECOMMENDATION**

Martin C. Carlson, United States Magistrate Judge

**I. Statement of Facts and of the Case**

***1** This *pro se* prisoner lawsuit comes before us for consideration of a motion to dismiss the plaintiff's amended complaint. (Doc. 29). That amended complaint names three individual defendants: two mental health professionals who were allegedly treating McClain, Defendants Stacey Imler and Lori Jenkins, as well as a non-medical correctional official, Unit Manager Rodney Carberry. (Doc. 24). According to Inmate McClain's amended complaint, he underwent psychological testing at the State Correctional Institution (SCI) Camp Hill in November of 2018 and was determined to be at high risk for suicide. (Id. ¶¶ 13-17). As a result, McClain was placed in the Residential Treatment Unit (RTU) at the prison, a special facility designed to address inmates with mental health needs. In particular, the RTU had special safety features that prevented inmates from attempting suicide through hanging. (Id., ¶¶ 18-19). While in this unit, McClain alleges he was seen by Defendants Imler and Jenkins on numerous occasions. During these clinical encounters, McClain alleges that he reported his increased depression, suicidal ideation, and the fact that he was experiencing auditory hallucinations to Imler and Jenkins. (Id., ¶¶ 20-21).

Notwithstanding these reports, McClain states that after he explained this need for psychiatric intervention to Imler, Defendant Carberry, acting in consultation with Imler and Jenkins, transferred him from the RTU to another housing unit. (Id., ¶ 22). This housing did not have the same institutional safeguards as the RTU, safeguards designed to prevent inmates from harming themselves. Specifically, according to McClain, the housing unit cells had bars and hooks which an inmate could use to hang himself, features that were not present in the RTU. (Id., ¶ 23). Having been transferred to this unit, McClain alleges that he then attempted to commit suicide on December 13, 2018 by hanging himself from the bars in his cell and had to be revived and transferred to an outside hospital. McClain asserts that Defendant Carberry then later admitted to him that he was aware of McClain's prior suicide threats, stating that: "We didn't think you was really gonna try and kill yourself." (Id., ¶¶ 25).

On the basis of these allegations, McClain avers that the individual defendants violated his right to due process and his right to be free from cruel and unusual punishment by denying him mental health care and transferring him from the Residential Treatment Unit. (Id., ¶¶ 26-28). McClain seeks both compensatory and punitive damages as recompense for these alleged constitutional infractions. (Id.)

The individual defendants have moved to dismiss this complaint, arguing that McClain has failed to state a claim against the individual defendants upon which relief may be granted. (Doc. 29). This motion has been briefed by the parties and is, therefore, ripe for resolution. For the reasons set forth below, it is recommended that the motion to dismiss be denied without prejudice to consideration of these issues on a more fully developed factual record through a motion for summary judgment.

**II. Discussion**

**A. Standard of Review – Motion to Dismiss**

***2** The defendants have moved to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "failure to state a claim upon which relief can be granted." With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555, 127 S.Ct. 1955. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679, 129 S. Ct. 1937. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678, 129 S. Ct. 1937. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

***3** Id. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to

> state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

Two years after Fowler, the Third Circuit further observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127, 127 S.Ct. 1955 S. Ct. (1955)). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

***4** Fed. R. Civ. P. 8(a).

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B. Guiding Constitutional Principles

In its current form, McClain's amended complaint brings constitutional claims arising under the Eighth Amendment against individual correctional and medical defendants. McClain must meet exacting legal standards to sustain such claims. While prison officials may violate an inmate's

rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to this inmate's medical needs, in order to sustain such a claim an inmate must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, an inmate is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104, 97 S.Ct. 285. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106, 97 S.Ct. 285. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997) (citing Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990)) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights").

***5** Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw, 967 F.Supp. 833, particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts, since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

There is a necessary corollary to this principle, limiting the reach of the Eighth Amendment in a prison medical setting. In a case where the inmate-plaintiff was receiving some level of on-going medical care, it is also well-established that non-medical correctional staff may not be "considered deliberately

indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts ..., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004).

Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Spruill v. Gillis, 372 F.3d 218; Durmer v. O'Connor, 991 F.2d 64.

In cases involving allegations of deliberate indifference to an inmate's potential for self-harm, courts have prescribed specifically what must be alleged to state a claim upon which relief may be granted. In this particular factual context, it has been held that an Eighth Amendment claim entails pleadings and proof that satisfy the following three essential elements:

> (1) that the individual had a particular vulnerability to suicide, meaning that there was a "strong likelihood, rather than a mere possibility," that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability.

***6** Palakovic v. Wetzel, 854 F.3d 209, 223–24 (3d Cir. 2017). When an inmate-plaintiff plausibly alleges facts that meet these three elements, that prisoner has sufficiently pleaded an Eighth Amendment claim to defeat a motion to dismiss. Id., at 230.

It is against these legal benchmarks that we now evaluate the defendants' motion to dismiss.

### C. The Defendants' Motion to Dismiss Should Be Denied.

Judged against these legal guideposts, the defendants' motion to dismiss should be denied without prejudice to further consideration of these legal defenses through a properly documented motion for summary judgment. With respect to McClain's Eighth Amendment medical deliberate indifference claims, the medical defendants, Imler and Jenkins, argue that these claims fail as a matter of law. Specifically, they contend that the fact that McClain's complaint alleges that they provided some degree of care to the plaintiff defeats these claims, since the fact that they extended some care to McClain rebuts the plaintiff's assertion that medical staff were deliberately indifferent to the plaintiff's needs. Further, the non-medical correctional defendant, Unit Manager Carberry, argues that he cannot be faulted for deferring to the judgment of prison medical staff when making these cell assignment decisions.

While we do not dispute the general legal propositions cited by the defendants in support of their motion to dismiss, in our view application of these precepts to the instant case

requires that we foray beyond the pleadings themselves to assess factual matters relating to the extent of medical care provided to McClain by the medical defendants and the degree to which the cell placement decision was a medical or correctional judgment. Moreover, with our judgment cabined and confined to the well-pleaded facts set forth in McClain's amended complaint, that amended complaint alleges more than a dispute over treatment options. Instead, McClain affirmatively alleges that Imler, Jenkins, and Carbury, acting together, moved the plaintiff from a place of safety, the RTU, to a less safe environment, even though they knew of his potential for self-harm and McClain had openly warned them of his suicidal ideation.

Further, when we liberally construe McClain's *pro se* amended complaint, we conclude that the amended complaint plausibly states a claim that meets the elements of a failure to prevent self-harm claim, as described by the Court of Appeals in Palakovic v. Wetzel, 854 F.3d 209, 223–24 (3d Cir. 2017). First, it is apparent that McClain has alleged that he "had a particular vulnerability to suicide, meaning that there was a 'strong likelihood, rather than a mere possibility,' that a suicide would be attempted." Id. Indeed, according to McClain, prison officials informed him that he was at high risk for suicide after they tested the plaintiff. Therefore, the first element of a failure to prevent self-harm claim is pleaded here.

Likewise, McClain's amended complaint alleges well-pleaded facts that meet the second element of this claim by asserting that "the prison official[s] knew or should have known of the individual's particular vulnerability." Id. On this score, McClain asserts that he directly discussed his heightened vulnerability to self-harm with Defendants Imler and Jenkins. Specifically, McClain alleges that he reported his heightened depression, suicidal ideation, and the fact that he was experiencing auditory hallucinations to Imler and Jenkins. (Doc. 24, ¶¶ 20-21). As for Defendant Carbury, McClain asserts that Carbury later admitted to him that "We didn't think you was really gonna try and kill yourself." (Id., ¶ 25). These averments sufficiently plead facts from which it can be inferred that all of the defendants were subjectively aware of McClain's increased potential for self-harm.

***7** Finally, by alleging that Imler, Jenkins, and Carbury, acting together, moved the plaintiff from a place of safety, the RTU, to a less safe environment, even though McClain had openly warned them of his suicidal ideation, we believe that McClain has pleaded sufficient facts to establish the third and final element of an Eighth Amendment claim in this setting. He has alleged well-pleaded facts that permit an inference that the defendants "acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability." Palakovic, 854 F.3d at 223–24.

In sum, with the scope of our review limited to the well-pleaded facts set forth in McClain's amended complaint, we find that he has sufficiently alleged a failure to protect from self-harm claim under the Eighth Amendment. While we recognize that the defendants vehemently contest and dispute that claim, we believe these matters cannot be definitively addressed on the pleadings alone. Rather, they require some factual development beyond the pleadings, a task which must await another day and another motion in the nature of a summary judgment motion. In short, "resolution of the constitutionality of care decisions ... is often a fact-bound determination which is not subject to resolution on a motion to dismiss, where we are limited to a consideration of the pleadings alone." Murray v. Wetzel, No. 3:17-CV-491, 2019 WL 1303217, at *11 (M.D. Pa. Mar. 1, 2019), report and recommendation adopted, No. 3:17-CV-00491, 2019 WL 1298826 (M.D. Pa. Mar. 21, 2019). Therefore, it is recommended that the motion to dismiss these individual liability claims be denied without prejudice to renewal through a properly documented motion for summary judgment.

## III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED THAT the defendants' motion to dismiss the plaintiff's amended complaint (Doc. 29) be DENIED without prejudice to renewal through a properly documented motion for summary judgment.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 9 th day of July 2020.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5372243

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 5369966
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Ralph MCCLAIN, Plaintiff,
v.
PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., Defendants.

Civil No. 1:19-cv-1951
|
Signed 09/08/2020

**Attorneys and Law Firms**

Ralph McClain, Waynesburg, PA, pro se.

Joseph G. Fulginiti, Chief Counsel's Office Pennsylvania Department of Corrections, Mechanicsburg, PA, for Defendants.

**ORDER**

SYLVIA H. RAMBO, United States District Judge

***1** Before the court is a report and recommendation of Magistrate Judge Carlson (Doc. 35) in which he recommends that the motion to dismiss be denied without prejudice to the consideration of the issues raised therein on a more fully developed factual record through a motion for summary judgment. Objections to the report and recommendation were due on July 23, 2020, and to date, no objections have been filed.

In considering whether to adopt a report and recommendation when no objections have been filed, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; *see also Univac Dental Co. v. Dentsply Intern., Inc.*, 702 F. Supp. 2d 465, 469 (M.D. Pa. 2010) (explaining that judges should review dispositive legal issues raised by the report for clear error). Following an independent review of the record and upon a careful review of the report and recommendation, the court is satisfied that the report and recommendation contains no clear error and will therefore adopt the recommendation. Accordingly, **IT IS HEREBY ORDERED AS FOLLOWS**:

1) The report and recommendation (Doc. 35) is **ADOPTED**;

2) Defendants' motion to dismiss (Doc. 29) is **DENIED** without prejudice to renewal through a properly documented motion for summary judgment; and

3) This matter is remanded to Magistrate Judge Carlson for further proceedings.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5369966

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ANTOINE CLARK, as personal representative for ANGELO LEE CLARK, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 17-66-RGA |
| ROBERT M. COUPE and DAVID PIERCE, | ) | |
| Defendants. | ) | |

**FINAL JURY INSTRUCTIONS**

TABLE OF CONTENTS

BURDEN OF PROOF .......... 4
THE LAW .......... 5
LIABILITY FOR ACTIONS OF SUBORDINATES .......... 7
A NOTE OF CAUTION .......... 8
DAMAGES IN GENERAL .......... 9
COMPENSATORY AND NOMINAL DAMAGES .......... 10
PUNITIVE DAMAGES .......... 11
DELIBERATIONS .......... 14

Members of the jury, now is the time for me to talk to you about the law that you must follow in deciding this case.

You can read along with me as I deliver these instructions. Each of you will have a copy of the instructions with you during your deliberations. Each of you has also been provided a copy of the verdict form.

You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. That includes these instructions, any instructions I gave you during the trial, and the instructions I gave you before we started the trial, which you have a copy of.

In my preliminary instructions, I told you the evidence in this case would be testimony, documents, and any facts agreed to by the parties. The parties have agreed to certain facts, and they agreed I would read them to you during these instructions, which I will now do.

BURDEN OF PROOF

As I explained in the preliminary jury instructions, Mr. Clark has the burden of proving his claim by a preponderance of the evidence against each Defendant. Preponderance of the evidence does not depend on the number of witnesses. If the evidence as to a particular element or issue is evenly balanced, the party has not proved the evidence by a preponderance of the evidence, and you must find against that party. In determining whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who called them, and all exhibits received into evidence, regardless of who produced them.

Case 1:22-cv-00063-RGA-MEM Document 125-2 Filed 09/08/26 Page 16 of 34

THE LAW

As I told you at the outset of the case, Mr. Clark is suing under Section 1983, a federal civil rights law that provides a remedy to persons who have been deprived of their federal constitutional or statutory rights under color of state law.

Mr. Clark must prove both of the following elements of his claim by a preponderance of the evidence with respect to each Defendant:

First: that the Defendant acted under color of state law; and

Second: that, while acting under color of state law, the Defendant deprived Mr. Clark of a federal constitutional right.

Because Mr. Coupe and Mr. Pierce were officials of the State of Delaware at the relevant time, clothed with the authority of the State, I instruct you that they were acting under color of state law. In other words, the first element of Mr. Clark's claim is not in dispute, and you must find this element has been established.

The second element of Mr. Clark's claim is that Mr. Coupe and Mr. Pierce deprived Mr. Clark of a federal constitutional right. Mr. Clark alleges that Mr. Coupe and Mr. Pierce deprived him of his federal constitutional right under the Eighth Amendment, which prohibits cruel and unusual punishment, by housing him in the Secure Housing Unit (SHU) of the James T. Vaughn Correctional Center from January 22, 2016, to August 18, 2016, which is a period of approximately seven months. I will refer to this as Mr. Clark's "conditions of confinement" claim.

In order to establish a violation of the Eighth Amendment based on conditions of confinement, Mr. Clark must prove each of the following two elements by a preponderance of the evidence:

First, that the conditions of Mr. Clark's confinement subjected him to a substantial risk of serious harm.

Second, that either or both of the Defendants acted with deliberate indifference, that is, that they knew of, but disregarded, that the conditions of confinement posed a substantial risk to Mr. Clark's mental health.

As to the first element, "a substantial risk" of serious harm is a less demanding standard than one of posing a probable risk of serious harm, but more than a mere possibility of harm. As to whether any harm was "serious," you should consider the severity of the conditions and the length of time Mr. Clark was exposed to them. With regard to conditions, you may consider conditions that have an effect on human needs, such as food, warmth, the physical nature of Mr. Clark's confinement, his ability to socialize with other persons, exercise, or any of the benefits that were available to the prison's population.

LIABILITY FOR ACTIONS OF SUBORDINATES

If you find that people working for Mr. Coupe and Mr. Pierce, that is, their subordinates, violated Mr. Clark's constitutional rights, then you must consider whether Mr. Coupe and Mr. Pierce are liable for this conduct. To show that Mr. Coupe and Mr. Pierce are liable for their subordinates' conduct, Mr. Clark must show that the Defendant, with deliberate indifference to the consequences, established and maintained a practice, policy, or custom that directly caused the violation.

To prove that Mr. Coupe and Mr. Pierce are liable for their subordinates' conduct based on their establishment of a practice, policy, or custom that directly caused the conduct, Mr. Clark must prove all of the following four things by a preponderance of the evidence with respect to each Defendant.

First, that the Defendant established a practice, policy, or custom of housing inmates with serious mental illness in the Secure Housing Unit (SHU) that created a substantial risk of serious harm.

Second, that the Defendant was aware that this substantial risk existed.

Third, that the Defendant was deliberately indifferent to that risk. "Deliberately indifferent" means that an official knew of, but disregarded, a substantial risk to inmate health and safety.

And fourth, that the housing of Mr. Clark in solitary confinement for seven months resulted from the Defendant's establishment of the practice, policy, or custom that created a substantial risk that mentally ill inmates would suffer serious harm.

A NOTE OF CAUTION

I want to note three things that are not at issue in this case. One, whether the disciplinary process that led to Mr. Clark being placed in the SHU in the first place was unconstitutional is not at issue. Two, whether the mental health treatment Mr. Clark received while he was in the SHU was itself unconstitutional is not at issue. Three, Mr. Clark's death and its cause are not at issue.

DAMAGES IN GENERAL

If you find that Mr. Clark has proved the elements of his conditions of confinement claim, and that Defendants are liable for that conduct, by a preponderance of the evidence, then you must decide for Mr. Clark, and go on to consider the question of damages. If, on the other hand, you find that Mr. Clark has failed to prove any one of these requirements by a preponderance of the evidence, then you must decide for Defendants, and you will not consider the question of damages.

I'm now going to instruct you on damages. Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not I think Mr. Coupe or Mr. Pierce should be held liable.

COMPENSATORY AND NOMINAL DAMAGES

If you find one or both of the Defendants liable, then you must consider the issue of compensatory damages. You must award Mr. Clark an amount that will fairly compensate him for any injury he actually sustained as a result of Defendants' conduct. Mr. Clark must show that his injury would not have occurred without Mr. Coupe and Mr. Pierce's acts or omissions.

Mr. Clark must also show that Mr. Coupe and Mr. Pierce's acts or omissions played a substantial part in bringing about the injury and that the injury was either a direct result or a reasonably probable consequence of Mr. Coupe and Mr. Pierce's acts or omissions.

Compensatory damages must not be based on speculation or sympathy. They must be based on evidence presented at trial and only on that evidence. Plaintiff has a burden of proving compensatory damages by a preponderance of the evidence.

Mr. Clark claims the following items of damages:

Physical harm to Mr. Clark during and after the events at issue, including ill health, physical pain, disability, or discomfort. In assessing such harm, you should consider the nature and extent of the injury and whether the injury is temporary or permanent.

Emotional and mental harm to Mr. Clark during and after the events at issue, including fear, humiliation, and mental anguish.

If you return a verdict for Mr. Clark, but Mr. Clark has failed to prove compensatory damages, then you must award nominal damages of a dollar. A person whose federal rights were violated is entitled to a recognition of that violation, even if he suffered no actual injury. Nominal damages of a dollar are designed to acknowledge the deprivation of a federal right even where no actual injury occurred. However, if you find actual injury, you must award compensatory damages (as I've just instructed you) rather than nominal damages.

PUNITIVE DAMAGES

In addition to compensatory or nominal damages, you may consider awarding Mr. Clark punitive damages. A jury may award punitive damages to punish a defendant or to deter a defendant and others like the defendant from committing such conduct in the future. Where appropriate, the jury may award punitive damages even if the plaintiff suffered no actual injury and so receives nominal rather than compensatory damages.

You may award punitive damages only if you find Mr. Coupe or Mr. Pierce acted maliciously or wantonly in violating Mr. Clark's federally protected rights. In this case, there are two Defendants. You must make a separate determination as to whether each Defendant acted maliciously or wantonly.

A violation is malicious if it was prompted by ill will or spite toward the plaintiff. A defendant is malicious when he consciously desires to violate federal rights of which he is aware or when he consciously desires to injure the plaintiff in a manner that he knows to be unlawful. A conscious desire to perform the physical acts that caused the plaintiff's injury or to fail to undertake certain acts does not by itself establish the defendant had a conscious desire to violate rights or to injure a plaintiff unlawfully.

A violation is wanton if the person committing the violation recklessly or callously disregarded the plaintiff's rights.

If you find it is more likely than not that either Mr. Coupe or Mr. Pierce, or both of them, acted maliciously or wantonly in violating Mr. Clark's federal rights, then you may award punitive damages against either or both of them. However, an award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them.

I will now discuss some of the considerations that should guide your exercise of this discretion. But remember that you cannot award punitive damages unless you've found that Mr. Coupe or Mr. Pierce acted maliciously or wantonly in violating Mr. Clark's federal rights.

If you have found that the Defendant in question acted maliciously or wantonly in violating Mr. Clark's federal rights, then you should consider the purposes of punitive damages. The purposes of punitive damages are to punish a defendant for a malicious or wanton violation of the plaintiff's federal rights, or to deter the defendant and others like the defendant from doing similar things in the future, or both. Thus, you may consider whether to award punitive damages to punish Mr. Coupe and Mr. Pierce. You should also consider whether actual damages standing alone are sufficient to deter or prevent Mr. Coupe and Mr. Pierce from again performing any wrongful acts they may have performed. Finally, you should consider whether an award of punitive damages in this case is likely to deter other persons from performing wrongful acts similar to those Mr. Coupe and Mr. Pierce may have committed.

If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award. That is, in deciding an amount of punitive damages, you should consider the degree to which Mr. Coupe and Mr. Pierce should be punished for their wrongful conduct toward Mr. Clark, and the degree to which an award of one sum or another will deter Mr. Coupe and Mr. Pierce or others from committing similar wrongful acts in the future.

In considering the purposes of punishment and deterrence, you should consider the nature of the actions of the Defendant in question. For example, you are entitled to consider whether the Defendant's actions posed a risk to health or safety; whether the Defendant acted in a deliberately deceptive manner; and whether the Defendant engaged in repeated misconduct of a single act. You

should also consider the amount of harm actually caused by the Defendant's actions, as well as the harm the Defendant's actions could have caused and the harm that could result if such acts are not deterred in the future. Bear in mind that when considering whether to use punitive damages to punish the Defendant, you should only punish the Defendant for harm to Mr. Clark and not for harm to people other than Mr. Clark.

As I've mentioned, in considering whether to punish the Defendant in question, you should consider the nature of the Defendant's conduct. In other words, how blameworthy that conduct was. In some cases, evidence that a defendant's conduct harmed other people in addition to the plaintiff can help to show that the defendant's conduct posed a substantial risk of harm to the general public, and so was particularly blameworthy. But if you consider evidence of harm either Defendant caused to people other than Mr. Clark, you must make sure to use that evidence only to help you decide how blameworthy the Defendant's conduct toward Mr. Clark was. Do not punish the Defendant for harming people other than Mr. Clark.

## DELIBERATIONS

Let me finish up by explaining some things about your deliberations in the jury room and your possible verdicts. Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to my staff, and I will respond as soon as I can. I may have to talk to the lawyers about what you've asked. I usually do. So it may take me some time to get back to you. Any questions or messages are only sent to me through your foreperson, who by custom of the Court is Juror Number 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down and tell anyone that you're split 4 to 4 or 6 to 2 or whatever your vote happens to be. That should stay secret until you're finished. Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous. It is your duty as jurors to consult with one another and to deliberate with a view toward reaching an agreement if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced that it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form verdict has been prepared for you and each of you has a copy. You will take this form to the jury room and when you've reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom, and your foreperson will give your verdict in response to questions from me.

So now that all the evidence is in and the arguments are completed and my instructions are almost completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences.

Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience. No one will be allowed to hear your discussions in the jury room and no record will be made of what you say, so you should all feel free to speak your minds. Listen carefully to what the other jurors have to say and then decide for yourself.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**STEPHEN SLEVIN,**

**Plaintiff,**

**v.** **No. CIV 08-01185 MV/SMV**

**BOARD OF COMMISSIONERS FOR THE COUNTY OF DOÑA ANA, et al.,**

**Defendants.**

## TRIAL BRIEF

Pursuant to the Trial Court's pre trial deadlines for civil cases, Plaintiff hereby presents the following trial brief describing each claim along with some of the anticipated evidence supporting it.

**Conditions of Confinement**

Plaintiff, a pre trial detainee whose charges were eventually dismissed, claims his due process rights were violated based on inhumane conditions of confinement which failed to meet contemporary standards of decency. Plaintiff will prove Defendants were deliberately indifferent to his health and safety and such indifference caused him serious harm. The evidence will demonstrate Mr. Slevin entered the Dona Ana County Detention Center in August 2005 a physically healthy man suffering from depression. A booking photograph will demonstrate his physical appearance at this time. (*See* Exhibit 1 attached hereto). Plaintiff was placed into solitary confinement in October of 2005 and remained in his cell until May 2007. During this time Plaintiff's mental and physical health deteriorated to such an extent he lost approximately one third of his body weight and became legally incompetent to stand trial. The evidence will demonstrate he went

enormous periods of time without leaving his cell. Photographic evidence of his condition, taken on May 8, 2007 at the New Mexico Behavioral Health facility in Las Vegas, confirms his truly shocking condition. (*See* Exhibit 2 attached hereto). Witness testimony will describe how badly he smelled, how his toenails had grown so long they curled under his feet, how he was suffering from a fungal infection on his skin and how he had bed sores. Expert testimony will describe how the effects of prolonged solitary confinement coupled with a lack of medical care caused Plaintiff to enter a dissociative delirium and resulted in his current PTSD diagnosis. Witness testimony will describe how Defendant Barela used the solitary cells of Fox 2 pod, as a place to house the mentally ill. Witnesses will describe how the mentally ill inmates in Fox 2 were confined to their cells for long periods of time, how they did not get adequate medical care and how deplorable the conditions were in that pod. Witness testimony will describe how there were more cells in Fox 2 than hours in the day and as such it was impossible to give each inmate his one hour of "recreation" per day. The Defendants' own expert witness will testify to the inhumane conditions of Plaintiff's confinement.

Evidence of deliberate indifference will come from the photographs themselves, but also from the fact the Defendants were placed on written notice of the problems in Fox 2. At the time Plaintiff was in his solitary cell, rocking back and forth beneath a blanket, the facility was threatened with a lawsuit based on deliberate indifference to the mental health needs of inmates in Fox 2. After Defendants failed to make significant changes a lawsuit was eventually filed. Documentary evidence exists of Defendant Barela and Defendant Zemek justifying the care they were providing inmates in Fox 2 and

denying deliberate indifference. Despite this notice, Plaintiff continued to decay in his solitary cell even while litigation was pending.

Additional evidence of deliberate indifference exists in Plaintiff's treatment after he returned from Las Vegas. Instead of addressing his housing situation, or providing him with the necessary medical care, Defendants placed Plaintiff back into his solitary cell. Plaintiff's mental health immediately began to decompensate. It was during this time frame he was forced to pull out his own tooth.

In summary, both experts, (Plaintiff's and Defendants'), will testify to the inhumane conditions of confinement. Numerous witnesses and documents will point to the deliberate indifference standard and Plaintiff's expert will testify to Plaintiff's lifelong mental illness caused by his conditions of confinement.

**Inadequate Medical Care**

Plaintiff claims he was denied adequate medical care for sufficiently serious mental, physical and dental problems that were so obvious even a lay person would have recognized the need for a doctor's attention. The absence of, and delay in obtaining, this medical attention resulted in a lifelong PTSD diagnosis, considerable pain and emotional suffering. This failure to provide medical care was a result of deliberate indifference.

Evidence of the failure to provide adequate medical care will come from both Plaintiff's and Defendants' expert witnesses. Additionally, Defendant Zemek will admit of his failure to provide adequate medical care and will admit to failing to meet his ethical obligations to do so. Defendant Zemek, a nurse practitioner, will admit to prescribing complicated psychotropic medications to Plaintiff without ever seeing him. Plaintiff's medical file demonstrates Mr. Zemek renewing prescriptions for his patient for

at least ten months without ever going to see him. Defendant Zemek will admit to taking on too much responsibility as the jail medical director and this, in combination with another part time job, inevitably led to substandard care. Evidence of his deliberate indifference comes from his attempts to justify the lack of medical care in the face of a pending lawsuit, and to take on the role as a mental health provider without training to do so. He will testify he took on the role of medical director after the Doctor who held that position left, took on the role of two nurse practitioners and the role as head of nursing. During this same time frame despite being on call 24 hours per day, 7 days a week, he took on additional employment with another medical facility every other weekend. When Mr. Zemek left the facility, Defendant Barela failed to provide an adequate replacement and indeed allowed Plaintiff to receive medication prescribed by Mr. Zemek months after Mr. Zemek had left the facility and more than a year after Mr. Zemek had last seen his patient.

The deliberate indifference standard is starkly demonstrated by Plaintiff's attempts to receive medical treatment through very descriptive sick calls. These letters went mostly unheeded until December 2005 when Plaintiff lost the ability to ask for help anymore. From the beginning of 2006, through to May of 2007, Plaintiff was unable to meaningfully seek medical care, and it was during this time frame he disappeared into a delirium.

Plaintiff expects Defendants to attempt to introduce evidence that the community standard for mental health care was substandard and attempts were made to hire qualified staff but these attempts were unsuccessful. Plaintiff will object to this testimony and will seek to avoid a mini trial on how available mental health care is in the Las Cruces area.

Despite the factual dispute, the evidence is irrelevant to the constitutional standard which requires a jail to provide adequate medical care and if none is available in the jail to refer the inmate to a facility which is capable of attending to the patient's needs. Defendants expect to introduce this evidence to mitigate the possibility of punitive damages.

**Procedural Due Process**

Plaintiff clams his incarceration in a solitary cell without any form of periodic review violates a liberty interest without due process of law. Plaintiff will prove his conditions of confinement were atypical and imposed a significant hardship on him as compared with the ordinary incidents of life in a jail.

Defendant Barela will describe how life in solitary differs from the general population. This includes no access to natural light or outdoor recreation, restrictions on movement, isolation from other inmates, no access to rehabilitative programs including AA meetings or substance abuse lessons, no access to religious services, and reduced access to commissary items. Evidence also exists that Fox 2 houses people accused of disciplinary infractions and is therefore used to punish inmates. This evidence demonstrates a significant hardship as compared to ordinary life in a jail, and therefore carries with it a liberty interest requiring some form of due process. The type of process is included in the jail's policy and procedure manuals which dictate a daily classification review of Plaintiff's housing under one policy, and a weekly review under another.

Plaintiff will prove he received no such classification review. In fact when Plaintiff's initial classification was to general population. Defendant Barela will testify it took an override of his classification to send him to segregation. This override required Defendant Barela's approval and signature, however it was almost one year into

Plaintiff's stay that Mr. Barela eventually signed this override. Barela will testify he signed the override authorizing Plaintiff's continued confinement in solitary without ever going to see Plaintiff or check on his well being.

Plaintiff will therefore prove he received no due process regarding his liberty interest and even after he returned to the facility from Las Vegas was placed back into his solitary cell without a classification review. Defendants will introduce a classification sheet dated October 12, 2005 which indicates Plaintiff had "refused population" and was therefore in solitary of his own free will.

**Americans With Disabilities Act**

Plaintiff will use much of the same evidence listed above to prove this claim. Most particularly Plaintiff will prove the mentally ill were placed in Fox 2 as a matter of routine, and that being in Fox 2 deprived them of participation in many of the above mentioned rehabilitative services.

**Municipal Liability**

Plaintiff will prove the failure to provide adequate mental health care, the failure to provide humane conditions of confinement, and the failure to provide meaningful classification reviews to the mentally ill in Fox 2 was part of a policy and practice of the facility. Plaintiff will further prove this practice and policy inevitably led to the constitutional violations described above.

Defendant Barela will testify he was in charge and responsible for all policies and procedures in the jail. Additionally he will testify it was his responsibility to ask for the necessary funding to run the jail and it was the Board of County Commissioners responsibility to see the funds were procured. He will also testify he was asked, and

complied with requests to cut the jail's budget. He will testify he was aware some inmates were not receiving adequate medical care in the jail in the time period in question. Barela will further testify he was aware the jail did not meet the national standards for running a detention center and he will also state he did not have enough funding to meet those standards. Despite this knowledge Defendant Barela continued to operate his facility without adequate medical care and chose to house the mentally ill in solitary confinement where they could be more easily managed on the resources he had. He will testify to signing classification overrides of the people in Fox 2 without ever investigating the reason for them. This led to a practice and policy of housing the mentally ill in segregation which ultimately led to the constitutional violations described above.

**State Tort/False Imprisonment**

The same evidence will be produced for the false imprisonment claim as the constitutional procedural due process claim. Plaintiff was placed in a highly restrictive form of housing without a reasonable justification to do so. It is important to note, Plaintiff is not seeking to prove he was not legally in the custody of the jail on this claim, but rather his confinement in segregation amounted to false imprisonment. Plaintiff will object to all testimony from Defendants blaming the public defender, the district attorney, or the state district judge for his failure to be released from the jail in a reasonable time frame as such evidence is irrelevant to his conditions of confinement claims and to his false imprisonment claim.

**State Tort/Negligent Maintenance of a Building**

Plaintiff expects to prove this claim with the above mentioned evidence that the jail was negligent in its operations to the point the jail became dangerous beyond what is normally expected in detention facilities. The act of housing the mentally ill in solitary without any medical oversight and without any periodic classification review is so obviously dangerous it amounts to negligence. Plaintiff expects to prove this negligence proximately caused his damages.

**Other Evidence**

The Court should be aware there will be video taped evidence of the jail cell and the padded cell where Plaintiff was housed. Also, there will be numerous exhibits documenting Plaintiff's stay in the facility including his medical file, movement sheets, recreation and commissary logs. A demonstrative aid of a life size mock up of the jail cell will also be used subject to court approval.

Respectfully submitted,

/s/ Matthew E. Coyte
Matthew E. Coyte
Attorney for Plaintiff
1000 Second Street
Albuquerque, NM 87102
(505) 244-3030

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 10th day of January, 2012, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means:

John W. Caldwell
john@johncaldwell.com

/s/Matthew E. Coyte
Matthew E. Coyte