**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HASSAN A. TUCKER,** | : | **CIV. ACTION NO. 1:22-CV-631** |
| | : | |
| **Plaintiff** | : | **(JUDGE MANNION)** |
| | : | |
| **v.** | : | **ELECTRONICALLY FILED** |
| | : | |
| **JOHN E. WETZEL, *et al.*,** | : | |
| | : | |
| **Defendants**. | : | |

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

Plaintiff Hassan Tucker, through his undersigned counsel, submits the following proposed jury instructions in accordance with Local Rule 51.1. Instructions are requested as modelled unless requested changes are described. Grammatical and minor changes to model instructions are not specifically designated; substantive edits to model instructions are underlined, and footnoted when drawn from particular sources. Routine procedural instructions found in Chapters 1 and 3 of the Third Circuit Model Instructions, except as noted below, were not included.

1. **Third Circuit Model Jury Instruction 1.7 – Credibility of Witnesses**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says or only part of it or none of it. In

deciding what to believe, you may consider a number of factors, including the following:

(1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2) the quality of the witness's understanding and memory;

(3) the witness's manner while testifying;

(4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

(7) any other factors that bear on believability.

**2. Third Circuit Model Jury Instruction 3.1; Ninth Circuit Model Jury Instruction 1.1 – Subsections on Duty of Jury / Bias and Prejudice**

Perform your duties as jurors fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.[1]

[1] Third Circuit Model Civil Jury Instruction 3.1.

"You should not be influenced by any person's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances. Also, do not allow yourself to be influenced by personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases. Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention. Like conscious bias, unconscious bias can affect how we evaluate information and make decisions."[2]

The fact that the plaintiff is a prisoner and that the defendant is a state official must not enter into or affect your verdict. "This case should be considered and decided by you as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. All persons, including prisoners and state officials, stand equal before the law and are to be treated as equals."[3]

**3. Third Circuit Model 1.2 – Description of Case**

Y_____ N_____

In this case, Plaintiff, Hassan Tucker claims that the Defendants, John Wetzel and George Little, acted with deliberate indifference when placing Mr.

---

[2] Ninth Circuit Model Criminal Jury Instruction 1.1.

[3] Final Jury Instructions, *Binkovich v. Officer Barthelemy, et al.,* Case No. 5:11-cv-03774 (N.D. Cal. Apr. 28, 2014).

Tucker on the Restricted Release List in 2019 and continuing to place Mr. Tucker on the Restricted Release List through 2023 because it resulted in prolonged solitary confinement in violation of the Eighth Amendment; Defendants deny those claims and also contend that all final decisions to place Mr. Tucker on the Restricted Release List were penologically justified. I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision. But in order to help you follow the evidence, I will now give you a brief summary of the elements that Mr. Tucker must prove to make his case:

**4. Third Circuit Model 4.1 – Section 1983 Introduction**

No modifications requested.

**5. Third Circuit Model 1.10 – Preponderance of the Evidence**

No modifications requested.

**6. Third Circuit Model 4.3 & 4.4.1 – Section 1983 Elements**

Tucker must prove both of the following elements by a preponderance of the evidence:

First: Defendants acted under color of state law.

Second: While acting under color of state law, Defendants deprived Tucker of a federal constitutional right.

Because Defendants Wetzel and Little were Secretaries of the Department of Corrections at the relevant time, I instruct you that they were acting under the color of state law. In other words, this element is not in dispute. I will now tell you the elements Tucker must prove to establish the violation of his federal constitutional rights.

**7. Third Circuit Model Rule 4.5 and Ninth Circuit Model 9.31 – Conditions of Confinement**[4]

Y_____ N_____

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. The touchstone of an Eighth Amendment analysis is the health of the incarcerated person.[5]

In this case, Tucker claims that John Wetzel and George Little violated the Eighth Amendment by showing deliberate indifference to a substantial risk of serious harm when placing Mr. Tucker on the Restricted Release List in 2019 and

---

[4] Defendants' proposed instructions include language from Model Instruction 4.11.1, on denial of adequate medical care. Plaintiff objects to the inclusion of this language, which imposes a requirement that correctional defendants know of mistreatment or non-treatment from medical staff. He is not raising a medical-care claim. The prolonged-solitary confinement claim does not rest on inadequacy of mental health care while in solitary confinement: it rests on the fact of his solitary confinement as itself exacerbating his mental health symptoms, irrespective of the treatment available.

[5] *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992)

continuing to place Mr. Tucker on the Restricted Release List through 2023 because it resulted in prolonged solitary confinement.

In order to establish his claim for a violation of the Eighth Amendment, Tucker must prove each of the following by a preponderance of the evidence:[6]

First, Mr. Tucker faced a substantial risk of serious harm;

Second, Defendants Wetzel and Little were deliberately indifferent to that risk, that is, Defendant Wetzel or Defendant Little knew of it and disregarded it by failing to take reasonable measures to address it; and,

Third, the act of placing, or continuing to place Mr. Tucker on the Restricted Release List caused harm to Mr. Tucker.

I will now proceed to give you more details on the first and second of these three requirements.

**First**, Mr. Tucker must show that he faced a substantial risk of serious harm.

**Second**, Mr. Tucker must show that Defendants were deliberately indifferent to that substantial risk of serious harm. "Deliberate indifference" is the conscious choice to disregard the consequences of one's acts or omissions.[7] Mr. Tucker must show that Wetzel and Little separately knew of an excessive risk to Mr. Tucker's

---

[6] The elements of the claim and following material are drawn from Ninth Circuit Model Civil Jury Instruction 9.31.
[7] Ninth Circuit Model 9.31.

mental health, and that either Wetzel or Little disregarded that risk by failing to take reasonable measures to address it.

In evaluating whether Wetzel or Little's failure to take measures to address a known substantial risk was reasonable, you may also consider whether they had a legitimate penological purpose behind their conduct.[8] The existence of such a

---

[8] The parties agree upon inclusion of this sentence in light of *Porter v. Dep't of Corrs.*, 974 F.3d 431 (3d Cir. 2020), and on having the jury provided some instruction regarding penological justification. The remainder of the above paragraph, starting with "The existence of such a penological justification," is Plaintiff's proposed language. Defendants propose an alternative paragraph on penological justification. Their suggested language is the following: "However, Defendants claim that even if there was an obvious risk, they had a legitimate penological justification when placing Mr. Tucker on the Restricted Release List in 2019 and continuing to place Mr. Tucker on the Restricted Release List through 2023. "[A] legitimate penological justification can support prolonged detention of an inmate in segregated or solitary confinement . . . even though such conditions create an objective risk of serious emotional and psychological harm. Put simply, prison officials tasked with the difficult task of operating a [correctional facility] may reasonably determine that prolonged solitary detention of the inmate is necessary to protect the well-being of prison employees, inmates, and the public or to service some other legitimate penological objective." Porter v. Clarke, 923 F.3d 348, 362-63 (4th Cir. 2019); Porter v. Dep't of Corrs., 974 F.3d 431 (3d Cir. 2020) ("In evaluating the subjective prong of the Eighth Amendment test, we may also consider whether officials had a legitimate penological purpose behind their conduct.")

Plaintiff objects to Defendant's proposed language, which quotes from out-of-circuit caselaw and overstates the role of penological justification, suggesting that the existence of any penological justification, however weak, at any time, is dispositive of deliberate indifference. As the touchstone of an Eighth Amendment claim remains the health of the incarcerated person, *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992), Plaintiff believes the above proposed language properly frames penological justification as a relevant factor with potential bearing on Defendant's subjective state of mind and deliberate indifference.

penological purpose, however, does not, by itself, decide this case, and it is not a complete defense. You must not find in favor of Defendants solely because a penological justification existed at some point in time. Even if you find Mr. Tucker was initially placed in solitary confinement for a justified penological purpose, you may still consider whether the length of time in isolation was unjustified,[9] or that there were alternatives to his placement in solitary confinement that could have addressed legitimate penological ends.[10]

Further, in order to assess liability against either Defendant Wetzel or Defendant Little, Mr. Tucker must show that they had personal involvement in the alleged wrongs.[11] Personal involvement may be shown either through direct participation in the decision to place or continue Mr. Tucker on the Restricted Release List, or through supervisory liability.[12]

**8. Third Circuit Model Jury Instruction 4.6.1 – Liability in Connection with the Actions of Another – Supervisory Officials[13]**

---

[9] *Clark v. Coupe*, 55 F.4th 167, 183 (3d Cir. 2022) ("Even assuming Clark was initially placed in the SHU for a justified penological purpose, the 'pronounced worsening' of his mental illness symptoms resulting from months in isolation was wholly pointless and unjustified.")

[10] West v. Keve, 571 F.2d 158, 162 (3d Cir. 1978) ("If 'deliberate indifference caused an easier and less efficacious treatment' to be provided, the defendants have violated the plaintiff's Eighth Amendment rights by failing to provide adequate medical care.")

[11] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[12] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[13] Defendants object to any inclusion of supervisory liability instructions, contending that they were not on notice of supervisory theories of liability from the

I will now instruct you on the standards required to find a supervisor liable for their subordinate's conduct. If you find that people working for Wetzel or Little, that is, their subordinates, violated Mr. Tucker's federal rights, then you must consider whether Defendant Wetzel or Defendant Little caused the subordinate's conduct. A supervisor is not liable for such a violation simply because they are a supervisor. To show that Defendant Wetzel or Defendant Little caused their subordinate's conduct, Mr. Tucker must show one of two things:

First: Defendant Wetzel or Defendant Little had actual knowledge of the subordinate's violation of Mr. Tucker's rights and acquiesced in that violation; or

Second: Defendant Wetzel or Defendant Little, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation.

As I mentioned, the first way for Mr. Tucker to show that Defendant Wetzel or Defendant Little is liable for a subordinate's conduct is to show that Defendant

complaint. As in his pretrial memorandum, Plaintiff notes that Defendants referred to themselves as supervisory defendants throughout their summary judgment briefing (Doc. 40), and that Judge Conner liberally construed Mr. Tucker's *pro se* complaint on the motion to dismiss, analyzing his Eighth Amendment claim through both direct and supervisory liability standards (Doc. 22 (*citing Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Supervisory liability is not a stand-alone cause of action: the requested instructions merely give detail as to the requisite personal involvement for individual-capacity liability of defendants who, as has long been acknowledged in this case, were supervisors of others who implemented their policies and directives.

Wetzel or Defendant Little had actual knowledge of the subordinate's violation of Mr. Tucker's rights and that he acquiesced in that violation. To "acquiesce" in a violation means to give assent to the violation. Acquiescence does not require a statement of assent, out loud: acquiescence can occur through silent acceptance. If you find that Defendant Wetzel or Defendant Little had authority over their subordinate and that Defendant Wetzel or Defendant Little actually knew that the subordinate was violating Mr. Tucker's rights but failed to stop them from doing so, you may infer that Defendant Wetzel or Defendant Little acquiesced in their subordinate's conduct.

Finally, the second way for Mr. Tucker to show that Defendant Wetzel or Defendant Little is liable for his subordinate's conduct is to show that Defendant Wetzel or Defendant Little, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the conduct.

To prove that Defendant Wetzel or Defendant Little is liable for his subordinate's conduct, Mr. Tucker must prove all of the following four things by a preponderance of the evidence:

First: that Defendant Wetzel or Defendant Little adopted a policy, practice, or custom of housing individuals with serious mental illness in solitary confinement on the Restricted Release List, creating a substantial risk of serious

harm; or that Defendant Wetzel or Defendant Little knew of and acquiesced in Mr. Tucker's his placement or continuation on the Restricted Release List, creating a substantial risk of serious harm.

Second: Defendant Wetzel or Defendant Little was aware that this substantial risk existed.

Third: Defendant Wetzel or Defendant Little was deliberately indifferent to that risk.

Fourth: The harm to Mr. Tucker from solitary confinement on the Restricted Release List resulted from Defendant Wetzel or Defendant Little's adoption of the policy, practice, or custom; or that the harm to Mr. Tucker from solitary confinement on the Restricted Release List resulted from Defendant Wetzel or Defendant Little's knowledge of and acquiescence in his placement or continuation on the Restricted Release List.

**9. Third Circuit Model 4.8.1, 4.8.2, 4.8.3 – Damages**

Y_____ N_____

I am now going to instruct you on damages. Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not Defendant Wetzel or Defendant Little should be held liable.

If you find either defendant liable, then you must consider the issue of compensatory damages. You must award Tucker an amount that will fairly

compensate him for any injury he actually sustained as a result of defendants' conduct.

Mr. Tucker is seeking to recover compensatory damages for mental or emotional damages; however, in order to award these damages Mr. Tucker must have demonstrated a physical injury that was greater than *de minimis*, or in other words, not insignificant or trivial.[14]

Mr. Tucker must show that the injury would not have occurred without defendants' act. Mr. Tucker must also show that defendants act played a substantial part in bringing about the injury, and that the injury was either a direct result of or a reasonably probable consequence of defendants' act.

Compensatory damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial, and only on that evidence. Plaintiff has the burden of proving compensatory damages by a preponderance of the evidence.

Mr. Tucker claims the following items of damages:

- Physical harm to Mr. Tucker during and after the events at issue, including ill health, physical pain, disability, disfigurement, or discomfort, and any such physical harm that Mr. Tucker is reasonably certain to experience in the

[14] 28 U.S.C. § 1997e(e); *see Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003).

future. In assessing such harm, you should consider the nature and extent of the injury and whether the injury is temporary or permanent.

- Emotional and mental harm to Mr. Tucker during and after the events at issue, including fear, humiliation, and mental anguish, and any such emotional and mental harm that Mr. Tucker is reasonably certain to experience in the future.

In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

If you return a verdict for Mr. Tucker, but he has failed to prove compensatory damages, then you must award nominal damages of $ 1.00. A person whose federal rights were violated is entitled to a recognition of that violation, even if he suffered no actual injury. Nominal damages (of $1.00) are designed to acknowledge the deprivation of a federal right, even where no actual injury occurred. However, if you find an actual physical injury, you must award compensatory damages (as I instructed you), rather than nominal damages.

In addition to compensatory or nominal damages, you may consider awarding Mr. Tucker punitive damages. A jury may award punitive damages to

punish a defendant, or to deter the defendant from committing such conduct in the future.

You may only award punitive damages if you find that a particular defendant acted maliciously or wantonly in violating Mr. Tucker's federally protected rights. In this case there are multiple defendants. You must make a separate determination whether each defendant acted maliciously or wantonly.

- A violation is malicious if it was prompted by ill will or spite towards the plaintiff. A defendant is malicious when he consciously desires to violate federal rights of which he is aware, or when he consciously desires to injure the plaintiff in a manner he knows to be unlawful.

- A violation is wanton if the person committing the violation recklessly or callously disregarded the plaintiff's rights.

If you find that it is more likely than not that a particular defendant acted maliciously or wantonly in violating Mr. Tucker's federal rights, then you may award punitive damages against that defendant. However, an award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them. Remember that you cannot award punitive damages unless you have found that the defendant in question acted maliciously or wantonly in violating Mr. Tucker's federal rights.

Bear in mind that when considering whether to use punitive damages to punish a defendant, you should only punish a defendant for harming Mr. Tucker, and not for harming people other than Mr. Tucker.

DATED: September 22, 2026

Respectfully submitted,

*/s/ Nia Holston*
Nia Holston (PA 327384)
*/s/ Bret Grote*
Bret Grote (PA 317273)
*/s/ Lolo Salsbury Serrano**
Lolo Salsbury Serrano (PA 338184)
*/s/ Bassel El-Rewini**
Bassel El-Rewini (NY 6307334)

* *pro hace vice*

Abolitionist Law Center
990 Spring Garden Street, Suite 306
Philadelphia, PA 19123
(267) 357-0948
nia@alcenter.org
bretgrote@alcenter.org
lolo@alcenter.org
bassel@alcenter.org

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HASSAN A. TUCKER,** | : | **CIV. ACTION NO. 1:22-CV-631** |
| | : | |
| **Plaintiff** | : | **(JUDGE MANNION)** |
| | : | |
| **v.** | : | **ELECTRONICALLY FILED** |
| | : | |
| **JOHN E. WETZEL, *et al.*,** | : | |
| | : | |
| **Defendants.** | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that the within motion has been filed electronically and is available for viewing and downloading from the ECF system.

/s/ Nia Holston
Nia Holston (PA 327384)

DATE: September 22, 2026