IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HASSAN A. TUCKER, Plaintiff | : | No. 1:22-cv-0631 |
| | : | |
| v. | : | (Honorable Malachy E. Mannion) |
| | : | |
| JOHN WETZEL and GEORGE LITTLE Defendants | : | Electronically Filed Document |

DEFENDANTS' EMERGENCY MOTION IN LIMINE TO PRECLUDE ANY INSTRUCTION ON A NON-EXISTENT POLICY MAKER LIABILITY CLAIM

As requested by this Court, the parties have attempted to produce an agreed upon proposal for jury instructions and a verdict form. As part of this process, Mr. Tucker's counsel indicated a desire to include a jury instruction, specifically Third Circuit Model Instruction 4.6.1, on the standards required to find a supervisor liable for a subordinate's conduct or to find liability by being deliberately indifferent to the consequences of a policy, practice or custom.

Throughout this litigation—indeed, through two dispositive motions—Mr. Tucker's claim against Defendants has been predicated upon Defendants' ***personal decision to place*** Mr. Tucker on the RRL. At no time has Mr. Tucker's claim been predicated upon Defendants' ***supervision*** of others responsible for his placement on the RRL, or upon Defendants' ***supervisory*** decision to maintain policies, practices, and customs relevant to the RRL. Therefore, Defendants Wetzel and Little, through undersigned counsel, move to limit or preclude any argument,

evidence, or jury instruction that references these supervisory theories of liability. In support of this motion, Defendants aver as follows.

1. Hassan Tucker filed his complaint on April 29, 2022, asserting various claims against multiple defendants. (Doc. 1).

2. The Complaint expressly states that claims against Wetzel and Little are brought against them in their ***individual*** capacities. (*Id.* ¶¶ 6-7).

3. In reviewing the Defendants' Motion to Partially Dismiss the Complaint, Judge Conner construed the complaint to raise seven claims for relief, including, as relevant here, a claim:

> that Tucker's prolonged solitary confinement as a result of his RRL placement by defendants Wetzel and Little constitutes cruel and unusual punishment under the Eighth Amendment;

(Doc. 22 at 6-7 *citing* Doc. 1, Compl. at 23-25).

4. Judge Conner indicated that "Tucker alleges that his ***RRL placement*** has led to continued solitary confinement since November 17, 2019, a period of over three years. We find this sufficient to allege a violation of the Eighth Amendment." (Doc. 22 at 11).

5. Nothing in the Memorandum indicated that Defendants Wetzel or Little were being sued for anything other than their own alleged conduct of ***placing or continuing to place*** Tucker on the RRL from 2019 through 2022. (*See gen. id.*).

6. The same followed at summary judgment. Judge Conner reminded the parties of the procedural history of the case indicating that all claims were dismissed with the exception of, among others, Tucker's claim that Wetzel and Little violated the Eighth Amendment ***by placing him*** on the RRL. (Doc. 49 at 1).

7. At no point was there any discussion, mention, or indication that a subordinate's conduct was at issue, nor was there discussion or indication that a particular policy, practice, or custom was at issue in this litigation. (*See gen. id.*).

8. In citing to *Clark* and *Palakovic*, Judge Conner indicated that the theory of liability that remains for trial is one that prolonged solitary confinement, particularly for those with serious mental illness, can constitute cruel and unusual punishment when prison officials act with deliberate indifference to the substantial risk of serious harm that such confinement poses. (*Id.*)

9. *Palakovic*, *Clark*, *Williams,* and *Rosario* have created a framework for the claim at issue in this litigation.

10. In *Palakovic v. Wetzel*, 854 F.3d 209 (3d Cir. 2017), the Third Circuit confronted an Eighth Amendment conditions-of-confinement claim brought by the parents of a deceased prisoner who suffered from mental illness and committed suicide while held in solitary confinement.

11. The court applied the standard two-prong Eighth Amendment analysis: (1) an objective prong requiring a showing of a sufficiently serious

deprivation, and (2) a subjective prong requiring that prison officials acted with deliberate indifference to a substantial risk of serious harm.

12. In *Clark v. Coupe*, 55 F.4th 167 (3d Cir. 2022), the Third Circuit held that a prisoner with a history of schizophrenia and bipolar disorder stated a viable Eighth Amendment conditions-of-confinement claim based on his seven-month stay in solitary confinement.

13. The *Clark* court held that by alleging his prolonged stay in solitary confinement was the result of prison officials knowingly disregarding a substantial risk of serious harm to his mental health condition, and that the foreseeable harm inflicted was in no way penologically justified, the prisoner alleged a violation of a clearly established right that would preclude qualified immunity.

14. *Clark*, thus, confirmed that the right of a mentally ill prisoner to be free from prolonged solitary confinement imposed without penological justification was clearly established as of the time of the alleged conduct at issue in the case.

15. The framework for this theory of liability has expanded since this court resolved Defendants' Motion for Summary Judgment.

16. In *Williams v. Secretary of Pennsylvania Department of Corrections*, 117 F.4th 503 (3d Cir. 2024), the Third Circuit applied the *Palakovic*/*Clark* framework to a death-row prisoner with a known history of serious mental illness

who was held in solitary confinement on the Capital Case Unit for twenty-six years.

17. In *Williams*, the Court of Appeals clarified their holding in *Clark* "that individuals with a *known* history of *serious* mental illness have a clearly established right not to be subjected to prolonged, *indefinite* solitary confinement—*without penological justification—by an official who was aware of that history and the risks that solitary confinement pose to someone with those serious health conditions*." 117 F.4th at 524-25 (italicized font in original).

18. *Williams* presented claims, similar to this case, in which direct, individual liability, not a supervisory theory of liability, was at issue.

19. Recently, in *Rosario v. Wetzel*, 2025 WL 2452464 (3d Cir. Aug. 26, 2025), the Third Circuit continued to apply this body of law, further reinforcing that mentally ill prisoners possess a clearly established Eighth Amendment right to be free from prolonged solitary confinement when officials act with deliberate indifference to the recognized mental and physical health risks of long-term isolation.

20. Taken together, these four decisions establish that an Eighth Amendment deliberate indifference claim arising from solitary confinement in the Third Circuit requires: (1) objectively, that the conditions of confinement — particularly prolonged isolation, especially of a mentally ill prisoner — pose a

substantial risk of serious harm; and (2) subjectively, that prison officials knew of and disregarded that risk without penological justification.

21. The instant case before this Court has always been one concerning the direct, individual, and personal liability of Defendants Wetzel and Little for ***placing or continuing to place*** Tucker on the RRL.

22. Defendants recognize that "supervisory liability" is a description for the different ways a supervisor can be personally involved in a constitutional violation; and to proceed in such manner, as described by *Santiago v. Warminster Township*, 629 F.3d 121 (3d Cir. 2010), one must establish policies or customs that cause a constitutional harm, or allege the direct participation or knowledge and acquiescence in a subordinate's violative conduct.

23. Facts to support the basis for either supervisory liability theory have never been present in this litigation.

24. Counsel for Plaintiff suggests that is sufficient to essentially amend the pleadings in that Defendants referred to themselves as supervisors throughout their summary judgment briefing and that Mr. Tucker's Complaint should be liberally construed to permit such arguments at trial. (Doc. 136 n. 13).

25. Tucker was given an opportunity to amend his pleadings (Doc. 23) and he failed to do so.

26. Trial is now scheduled to resolve whether former Correction Secretaries, Wetzel and Little, in their individual capacities, violated the rights of Mr. Tucker by continuing to place him on the Restricted Release List without penological justification.

27. All of Mr. Tucker's Counsel's attempts to improperly amend the long-understood operative claims on the eve of trial by arguing novel and additional ways in which Defendants Wetzel or Little allegedly can be liable for a violation should be deemed impermissible attempts at amending the complaint.

28. Defendants would be highly prejudiced[1] to have to defend against either a policy-making theory or a subordinate's conduct theory when this case has always been a straightforward individual liability case based upon Wetzel or

---

[1] For example, to recover under a policy-making theory of liability, Plaintiff will have to demonstrate that the policies, practices, and customs surrounding the RRL "created and unreasonable risk" of the constitutional violation at issue, and that Defendants were "aware that this unreasonable risk existed," by showing either "an awareness of a pattern of [similar] injuries" or that "the risk of constitutionally cognizable harm [was] . . . great and obvious." *Powell v. Wetzel*, 2014 WL 2472048, at **7–8 (M.D. Pa. Feb. 25, 2014).

And to recover under a subordinate-conduct theory of liability, Plaintiff will have to show that Defendants "personal[ly] direct[ed]" a subordinate's conduct or had "actual knowledge' and "acquiesce[d]" in that conduct. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Because Plaintiff has always proceeded under the theory that Defendants were liable for their ***own decision*** to ***place and keep*** Plaintiff on the RRL, no discovery into the facts necessary to support or defend against these claims has occurred.

Little's actions of placing Tucker on the RRL in 2019 and continuing that placement through 2023.

**29.** This is especially true in light of the fact that no court has yet to hold that any Department of Corrections policy pertaining to RRL placement or retention violates the U.S. Constitution. Nor has the Plaintiff identified a subordinate whose conduct is alleged to have violated Mr. Tucker's rights.

**WHEREFORE,** Defendants respectfully request that Plaintiff is prohibited from improperly amending his sole-surviving claim and arguing to the jury additional ways in which Defendants allegedly may be liable in this action as a supervisory liability claim was never viable in this action.

Respectfully submitted,

DAVID W. SUNDAY, JR.
Attorney General

Date: September 23, 2026

By: *s/ Nicole R. DiTomo*

NICOLE R. DITOMO
Chief Deputy Attorney General
Civil Litigation Section
Attorney ID: 315325

*Counsel for Defendants*

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
Phone: (717) 317-0112
Email: nditomo@attorneygeneral.gov

CERTIFICATE CONCURRENCE WAS SOUGHT

I, Nicole R. DiTomo, Chief Deputy Attorney General, Office of Attorney General, hereby certify that I sought concurrence in this motion from each party and concurrence has been denied.

*s/ Nicole R. DiTomo*
NICOLE R. DITOMO
Chief Deputy Attorney General

CERTIFICATE OF SERVICE

I, Nicole R. DiTomo, Chief Deputy Attorney General, Office of Attorney General, hereby certify that on September 23, 2026, I caused to be served a true and correct copy of the foregoing document titled *Motion in Limine* to the following:

**VIA ECF**

Nia Holston, Esq.
Bret D. Grote, Esq.
Lolo Salsbury Serrano, Esq.
Abolitionist Law Center
990 Spring Garden Street
Philadelphia, PA 19123
nia@alcenter.org
bretgrote@abolitionistlawcenter.org
lolo@alcenter.org
*Counsel for Plaintiff*

*s/ Nicole R. DiTomo*
NICOLE R. DITOMO
Chief Deputy Attorney General