KeyCite Yellow Flag
Declined to Extend by Falco v. Zimmer, 3rd Cir.(N.J.), April 11, 2019

318 F.3d 523
United States Court of Appeals,
Third Circuit.

Mark MITCHELL, Appellant
v.
Martin F. HORN, et al.

No. 98–1932.
|
Argued Aug. 1, 2002.
|
Filed Jan. 29, 2003.

**Synopsis**

State prisoner brought pro se § 1983 action against corrections officer and other prison officials, alleging that officer planted contraband near his locker in retaliation for complaints he filed against that officer, that he was denied fair hearing on the contraband charge, and that he was placed in disciplinary confinement in cell unfit for human habitation as a result, in violation of his First, Fifth, Eighth, and Fourteenth Amendment rights. The United States District Court for the Eastern District of Pennsylvania, 1998 WL 695058, Edmund V. Ludwig, J., dismissed action sua sponte. Prisoner appealed. The Court of Appeals, Ambro, Circuit Judge, held that: (1) dismissal without prejudice of prisoner's Eighth Amendment claim was final appealable order; (2) prisoner lacked available remedies for Eighth Amendment claim for purpose of meeting administrative exhaustion requirement; (3) allegations stated claim for retaliation in violation of the First Amendment; (4) remand to district court was required to determine whether prisoner had protected liberty interest in not being transferred to disciplinary confinement; and (5) prisoner asserting a mental or emotional injury was required to show a prior physical injury that was more than de minimis, but less than significant.

Reversed and remanded.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

West Headnotes (24)

[1] **Federal Courts** Pleadings; Dismissal

On appeal from the dismissal of a complaint, the Court of Appeals assumes the allegations in the complaint to be true.

10 Cases that cite this headnote

[2] **Federal Courts** Dismissal or nonsuit in general

**Federal Courts** Pleading

When a claim is dismissed without prejudice, the Court of Appeals treats it as a final appealable decision, when a plaintiff declares his intention to stand on his complaint or when he cannot cure the defect in his complaint. 28 U.S.C.A. § 1291.

1 Case that cites this headnote

[3] **Federal Courts** Conditions precedent

Dismissal without prejudice of state prisoner's Eighth Amendment conditions of confinement claim against prison officials based upon prisoner's alleged failure to exhaust his available administrative remedies was final appealable decision, where time for filing administrative grievances for claim expired pursuant to prison regulations, so that prisoner's alleged failure to exhaust was not curable. U.S.C.A. Const.Amend. 8; 28 U.S.C.A. § 1291; 42 U.S.C.A. § 1983.

286 Cases that cite this headnote

[4] **Federal Courts** Imprisonment and incidents thereof

The availability of administrative remedies to a prisoner, for purposes of determining whether prisoner exhausted his administrative remedies prior to filing suit, as required under Prison Litigation Reform Act (PLRA), is a question of law, which the Court of Appeals reviews de

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

novo. Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

113 Cases that cite this headnote

[5] **Civil Rights** Criminal law enforcement; prisons

Prisoner lacked available administrative remedies for his Eighth Amendment conditions of confinement claims, for purposes of meeting exhaustion requirement, under the Prison Litigation Reform Act (PLRA), where prisoner was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

568 Cases that cite this headnote

[6] **Federal Civil Procedure** Affirmative Defense or Avoidance

Prisoner's failure to exhaust administrative remedies is an affirmative defense for the defendant to plead, under Prison Litigation Reform Act (PLRA). Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

145 Cases that cite this headnote

[7] **Civil Rights** Criminal law enforcement; prisons

Prisoner's failure to exhaust administrative remedies in connection with his Eighth Amendment conditions of confinement claim was not a permissible basis for district court's sua sponte dismissal, under Prison Litigation Reform Act (PLRA). Civil Rights of Institutionalized Persons Act, § 7(a, c), 42 U.S.C.A. § 1997e(a, c).

12 Cases that cite this headnote

[8] **Prisons** Frivolous claims; screening

To be "frivolous," in the context of the Prison Litigation Reform Act (PLRA), a claim must rely on an indisputably meritless legal theory or a clearly baseless, or fantastic or delusional factual scenario. Civil Rights of Institutionalized Persons Act, § 7(c), 42 U.S.C.A. § 1997e(c).

206 Cases that cite this headnote

[9] **Costs, Fees, and Sanctions** Prisoner litigation

The Court of Appeals is especially careful when assessing frivolousness in the case of in forma pauperis complaints filed under the Prison Litigation Reform Act (PLRA), for prisoners often must rely on the courts as the only available forum to redress their grievances, even when those grievances seem insignificant to one who is not so confined. Civil Rights of Institutionalized Persons Act, § 7(c), 42 U.S.C.A. § 1997e(c).

36 Cases that cite this headnote

[10] **Civil Rights** Acts or Conduct Causing Deprivation

Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.

248 Cases that cite this headnote

[11] **Civil Rights** Prisons

A prisoner alleging retaliation in violation of his civil rights must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him.

1310 Cases that cite this headnote

[12] **Civil Rights** Prisons and jails; probation and parole

Pro se prisoner's allegations that he was falsely charged with misconduct in retaliation for prisoner's filing of complaints against corrections officer, and that as a result, he was placed in disciplinary confinement for several months, stated claim for retaliation in violation of the First Amendment; though claim was not assured of success on the merits and could have been more detailed, it was not indisputably meritless, fantastic or delusional, of little or no weight, or trivial. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

252 Cases that cite this headnote

[13] **Constitutional Law** Imprisonment and Incidents Thereof

State prisoners have a protected liberty interest in avoiding restraints that exceed the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force. U.S.C.A. Const.Amend. 14.

31 Cases that cite this headnote

[14] **Constitutional Law** Liberties and liberty interests

Procedural due process rights are triggered by deprivation of a legally cognizable liberty interest. U.S.C.A. Const.Amend. 14.

64 Cases that cite this headnote

[15] **Constitutional Law** Conditions of confinement in general

For a prisoner, a deprivation of a legally cognizable liberty interest, for purpose of procedural due process violation, occurs when the prison imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. U.S.C.A. Const.Amend. 14.

165 Cases that cite this headnote

[16] **Constitutional Law** Discipline and classification

In deciding whether a protected liberty interest exists for prisoner not to be transferred to disciplinary confinement, the Court of Appeals considers the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. U.S.C.A. Const.Amend. 14.

185 Cases that cite this headnote

[17] **Federal Courts** Need for further evidence, findings, or conclusions

Remand to district court was required for purpose of developing factual record as to conditions of prisoner's disciplinary confinement, in order to determine whether prisoner had protected liberty interest in not being transferred to disciplinary confinement from general prison population, where prisoner's due process claim was dismissed by district court sua sponte before any discovery, and prisoner's complaint was pro se. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

119 Cases that cite this headnote

[18] **Declaratory Judgment** Criminal laws

Provision of Prison Litigation Reform Act (PLRA), precluding prisoner from bringing federal civil action for mental or emotional injury suffered in custody without prior showing of physical injury, does not prevent prisoner from obtaining injunctive and declaratory relief from mental or emotional injury in the absence of physical injury. Civil Rights of Institutionalized Persons Act, § 7(e), 42 U.S.C.A. § 1997e(e).

320 Cases that cite this headnote

[19] **Federal Civil Procedure** Complaint

Leave to amend prisoner's mental and emotional injury complaint to include statement of physical injuries he suffered as result of deprivation of food, drink, and sleep for four days he was placed in filthy cell was warranted, for purpose of meeting physical injury requirement of Prison Litigation Reform Act (PLRA), as physical

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

injuries could have resulted from deprivations alleged. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(e), 42 U.S.C.A. § 1997e(e).

127 Cases that cite this headnote

[20] **Federal Courts** Statutes, regulations, and ordinances, questions concerning in general

Questions of statutory interpretation are subject to plenary review.

5 Cases that cite this headnote

[21] **Damages** Physical illness, impact, or injury; zone of danger

Prison Litigation Reform Act (PLRA) requirement that prisoner asserting a mental or emotional injury as result of conditions of confinement was required to show a prior physical injury mandated that prisoner establish more than a de minimis, but less than a significant injury. Civil Rights of Institutionalized Persons Act, § 7(e), 42 U.S.C.A. § 1997e(e).

283 Cases that cite this headnote

[22] **Statutes** Language

The starting point for interpreting a statute is the language of the statute itself.

5 Cases that cite this headnote

[23] **Statutes** Plain Language; Plain, Ordinary, or Common Meaning

**Statutes** Relation to plain, literal, or clear meaning; ambiguity

In interpreting a statute, the Court of Appeals does not look past the statute's plain language unless it produces a result demonstrably at odds with the intentions of its drafters, or an outcome so bizarre that Congress could not have intended it.

17 Cases that cite this headnote

[24] **Statutes** Superfluousness

In interpreting a statute, the Court of Appeals attempts to ascribe meaning to each statutory provision.

**Attorneys and Law Firms**

***526** Gregg H. Levy, Kevin C. Newsom (Argued), Covington & Burling, Washington, DC, for Appellant.

D. Michael Fisher, J. Bart DeLone (Argued), Calvin R. Koons, John G. Knorr, III, Office of Attorney General, Appellate Litigation Section, Harrisburg, PA, for Amicus, The Commonwealth of Pennsylvania.

Before ROTH, RENDELL * and AMBRO, Circuit Judges.

**OPINION OF THE COURT**

AMBRO, Circuit Judge.

Mark Mitchell, a Pennsylvania inmate acting *pro se*, filed this suit under 42 U.S.C. 1983, claiming violations of his First, Fifth, Eighth, and Fourteenth Amendment rights. He alleges that a correctional officer planted contraband near his locker because he filed complaints against that officer, that he was denied a fair hearing on the contraband charges, and that, as a result, he was placed in disciplinary confinement for several months, including four days in a cell that was smeared with feces and infested with flies and in which he could not eat, drink, or sleep. The District Court dismissed Mitchell's complaint *sua sponte* the day it was filed without requiring service on the defendants. For the reasons below, we reverse the District Court's judgment and remand for further proceedings.

**I. Factual Background and Procedural History**

**[1]** On appeal from the dismissal of a complaint, we assume the allegations in the complaint to be true. *See* *Ray v. Kertes,* 285 F.3d 287, 291 (3d Cir.2002); *Micklus v. Carlson,* 632 F.2d 227, 230 (3d Cir.1980).

***527** On October 5, 1996, while Mitchell was an inmate in the Drug and Alcohol Unit at the Graterford Correctional Institution in Pennsylvania ("Graterford"), prison officials entered his living area to conduct a search. During the search, they found a folded brown paper napkin containing drugs and U.S. currency taped under Mitchell's locker. Mitchell denied owning or knowing about the contraband, and his urinalysis tested negative for drugs. At the security office, Mitchell asked a correctional officer to preserve the tape that had affixed the contraband under his locker so that it could be fingerprinted. Although Mitchell offered to pay for the fingerprint analysis, the prison denied his request. Pending a hearing on the contraband charges, prison officials placed him in the Restricted Housing Unit ("RHU").

The next day, prison officials brought Mitchell to the institution's security unit for questioning. Lieutenant Kowalski told Mitchell that he had information suggesting that Officer Ronald Wilson, the officer regularly assigned to the Drug and Alcohol Unit, framed Mitchell. Mitchell concurred that he had been set up and again requested fingerprint testing to prove his innocence. Kowalski offered to look into the matter, and Mitchell was returned to the RHU.

Two days after the officers discovered the contraband, Mitchell was called to a disciplinary hearing, in preparation for which he was permitted five minutes to confer with an inmate assistant. During the hearing, Mitchell argued that someone had set him up. He noted that the area in which the officers found the contraband was easily accessible to others, requested that the hearing examiner inquire when that area had last been searched, and asked again for a fingerprint test. His requests were denied. Finding Mitchell guilty of contraband charges and of lying to a prison employee, the hearing examiner sentenced him to ninety days in disciplinary custody.

Following proper procedure, Mitchell appealed the hearing examiner's verdict first to the Program Review Committee, then to the prison superintendent, and finally to the chief counsel. Each appeal was denied. During the pendency of these appeals, Mitchell was relocated to a cell normally used to house mentally ill inmates. The cell had "human waste smeared on the walls" and was "infested with flies." At night, "kicking and banging on the doors by the other inmates" kept Mitchell awake.

Mitchell complained to prison officials about his conditions to no avail. He sought to file an administrative grievance protesting the conditions of his confinement, but prison officials denied him an inmate grievance form. Prison regulations provide that a grievance form is "the proper form to be used for submission of a grievance and it should be completed according to the directions provided." Commonwealth of Pa., Dep't of Corr., *Consolidated Inmate Grievance Review System*, Policy Statement DC–ADM 804 V(B) (Oct. 20, 1994). Additionally, inmate grievances must be "in writing and in the format provided on the forms supplied by the institution." *Id.* 804(VI)(A)(1) (internal citation omitted). After four days, during which Mitchell alleges he did not eat, drink, or sleep, the Program Review Committee, in the course of fulfilling its mandate to "interview all disciplinary custody cases every thirty (30) days," Commonwealth of Pa., Dep't of Corr., *Inmate Disciplinary and Restricted Housing Procedures*, Policy Statement DC–ADM 801 VI(D)(9) (Sept. 20, 1994), confirmed that his cell was unfit for human habitation. ***528** He was transferred to Huntingdon Correctional Institution on December 4, 1996. [1]

In January 1998, Mitchell returned to Graterford to face criminal drug-possession charges stemming from the October 5, 1996 contraband incident and was again placed in the RHU. At a preliminary hearing held after Mitchell's return to Graterford, all criminal charges against Mitchell were dismissed. Nonetheless, Graterford officials kept him segregated in the RHU for another two months, explaining that his return to the general Graterford population was "not an option." After numerous complaints, Mitchell was transferred back to Huntingdon on April 1, 1998.

On September 29, 1998, Mitchell filed the current complaint in the United States District Court for the Eastern District of Pennsylvania, alleging that: (1) Officer Wilson planted contraband in retaliation for Mitchell's complaints against him, in violation of his First, Fifth, and Eighth Amendment rights; (2) prison officials denied Mitchell adequate time to confer with his inmate assistant, denied him the opportunity to present a meaningful defense, and failed adequately to investigate his allegations that the charges against him were fabricated, all in violation of his Fifth, Eighth, and Fourteenth Amendment rights; (3) prison officials placed Mitchell in a cell unfit for human habitation, in violation of his Eighth Amendment rights; and (4) as a result of these violations, Mitchell suffered, *inter alia*, emotional trauma, fear, and shock, and lost his status and any chance of commutation. As noted, the District Court dismissed his complaint the day it was filed. The Court dismissed as frivolous Mitchell's

retaliation charge, which it held did not state a violation of his constitutional rights, and his due process claim, on the ground that Mitchell's confinement did not implicate a liberty interest. The District Court also held that Mitchell failed to exhaust his administrative remedies with respect to his Eighth Amendment conditions-of-confinement claim and dismissed that claim without prejudice. Finally, the District Court held that Mitchell could not bring a claim for emotional trauma without a prior showing of physical injury.

This timely appeal followed. Because the District Court dismissed this case before the defendant was served, the defendant—Commissioner of the Pennsylvania Department of Corrections—was not technically a party to this suit. Therefore, we requested that the Commonwealth of Pennsylvania file a brief as *amicus curiae*.[2]

## II. Jurisdiction

**[2]** **[3]** The District Court's dismissal of Mitchell's retaliation and due process claims as frivolous is appealable under 28 U.S.C. 1291. *See* *Wilson v. Rackmill,* 878 F.2d 772, 773 (3d Cir.1989). Under the circumstances, his Eighth Amendment conditions-of-confinement claim is appealable as well. When a claim is dismissed without prejudice, we treat it as a final decision, appealable under 1291, "when a plaintiff 'declares his intention to stand on his complaint or when he cannot cure the defect in his complaint.' " *Ray,* 285 F.3d at 291 (quoting *Booth v. Churner,* 206 F.3d 289, 293 n. 3 (3d Cir.2000), *aff'd*, ***529** 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). While Mitchell has not clearly declared his intention to stand on his complaint, the defect for which the District Court dismissed Eighth Amendment conditions-of-confinement claim—failure to exhaust available administrative remedies—is no longer curable. *See* *Booth,* 206 F.3d at 293 n. 3. It has been six years since the events resulting in this appeal, and prison regulations allowed Mitchell only fifteen days "after the events upon which the claims are based" to file a grievance. DC–ADM 804 VI(B)(2).

## III. Discussion

This case raises four questions, which we address in the following order: (1) whether Mitchell exhausted the available administrative remedies on his Eighth Amendment conditions-of-confinement claim; (2) is his retaliation claim frivolous; (3) whether his due process claim is frivolous; and (4) has Mitchell alleged a physical injury sufficient to support his emotional injury claims. Throughout we bear in mind that, "however inartfully pleaded," the "allegations of [a] pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

### A. Exhaustion

**[4]** Before filing suit, prisoners must exhaust their available administrative remedies. 42 U.S.C. § 1997e(a).[3] The "availability of administrative remedies to a prisoner is a question of law," which we review *de novo*. *Ray,* 285 F.3d at 291.

**[5]** The District Court dismissed Mitchell's conditions-of-confinement claim, which asserts that he spent four days in a filthy cell in which he could not eat, drink, or sleep, because he "does not allege that he filed any grievances regarding the conditions of his cell." Mitchell argues that he did not file a grievance because prison officials denied him the necessary grievance forms and, as a result, he lacked "available" administrative remedies. *See* *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir.2001) ("[A] remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a) ....") (alterations in original). The Commonwealth acknowledges that the District Court incorrectly dismissed this claim because it did not consider Mitchell's allegations that he was denied grievance forms.

**[6]** **[7]** Even absent the prison's precluding Mitchell's grievance, the District Court erred procedurally. Failure to exhaust administrative remedies is an affirmative defense for the defendant to plead. *Ray,* 285 F.3d at 295. Under 1997e(c) failure to exhaust is not a permissible basis for *sua sponte* dismissal. *Id.* at 295–96. The defendants in this case were not served and therefore have not pled failure to exhaust or any other defense. Thus, even if Mitchell failed to exhaust his available remedies (excused if there were a failure to provide grievance forms), the District Court was premature in dismissing his complaint.

**B. Retaliation claim**

The District Court dismissed as frivolous Mitchell's retaliation claim—that Officer Wilson planted illegal drugs under Mitchell's locker in retaliation for Mitchell's complaints against him—reasoning that "[t]he filing of a false or unfounded ***530** misconduct charge against an inmate does not constitute a deprivation of a constitutional right."

**[8]** **[9]** To be frivolous, a claim must rely on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke v. Williams,* 490 U.S. 319, 327–28, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Wilson,* 878 F.2d at 774; *see, e.g.,* *Deutsch v. United States,* 67 F.3d 1080, 1091–92 (3d Cir.1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back). We exercise plenary review over a dismissal for frivolousness. *Tourscher v. McCullough,* 184 F.3d 236, 240 (3d Cir.1999); *accord* *McGore v. Wrigglesworth,* 114 F.3d 601, 604 (6th Cir.1997). We are especially careful when assessing frivolousness in the case of *in forma pauperis* complaints, for "prisoners often must rely on the courts as the only available forum to redress their grievances, even when those grievances seem insignificant to one who is not so confined." *See* *Deutsch,* 67 F.3d at 1090.

**[10]** **[11]** In dismissing Mitchell's retaliation claim, the District Court failed to recognize that "[g]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Allah v. Seiverling,* 229 F.3d 220, 224–25 (3d Cir.2000) (quoting *Thaddeus–X v. Blatter,* 175 F.3d 378, 386 (6th Cir.1999) (en banc)). A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials " 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,' " and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir.2001) (quoting *Allah,* 229 F.3d at 225) (alteration in original).

**[12]** Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment. *See* *Smith v. Mensinger,* 293 F.3d 641, 653 (3d Cir.2002) ("We have ... held that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment's guarantee of free access to the courts."); *Allah,* 229 F.3d at 225 (holding that an allegation that a prisoner was kept in administrative segregation to punish him for filing civil rights complaints stated a retaliation claim); *Babcock v. White,* 102 F.3d 267, 275–76 (7th Cir.1996) (prisoner could survive summary judgment on his claim that prison officials retaliated against him for "use of the 'inmate grievance system' and previous lawsuits"). Moreover, we believe that several months in disciplinary confinement would deter a reasonably firm prisoner from exercising his First Amendment rights. Finally, we agree with Mitchell that the word "retaliation" in his complaint sufficiently implies a causal link between his complaints and the misconduct charges filed against him.

Although Mitchell's retaliation claim may ultimately not succeed on the merits, it is not "indisputably meritless," "fantastic or delusional," "of little or no weight," or "trivial." *Neitzke,* 490 U.S. at 325, 327, 109 S.Ct. 1827; *Deutsch,* 67 F.3d at 1089. And while we would prefer that Mitchell's complaint be more detailed, we take seriously our charge to construe *pro se* complaints nonrestrictively. *Haines,* 404 U.S. at 520, 92 S.Ct. 594. To leave no doubt, the Commonwealth, in its role as *amicus*, agrees that the District Court erred in overlooking Mitchell's retaliation claim.

***531** While Mitchell has stated a nonfrivolous retaliation claim, the Supreme Court recently clarified in *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), that 1997e(a) requires a prisoner to exhaust his administrative remedies when alleging "particular episodes" of misconduct—which would include an act of retaliation. On appeal the Commonwealth's *amicus* brief acknowledges that "Mitchell appealed the hearing examiner's decision to the various levels *available* through the Inmate Disciplinary Procedure." Commonwealth's Br. at 5 (emphasis added).

**C. Due Process**

Mitchell's due process claim alleges that he received only five minutes to confer with an inmate assistant before his disciplinary hearing, that he was denied a fair opportunity to review the evidence against him, and that the hearing itself was conducted unfairly.

**[13]** **[14]** **[15]** Mitchell's procedural due process rights are triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).[4] Lesser restraints on a prisoner's freedom are deemed to fall "within the expected perimeters of the sentence imposed by a court of law." *Id.* If Mitchell had no protected liberty interest in remaining free of disciplinary custody, then the state owed him no process before placing him in disciplinary confinement. We therefore must decide whether Mitchell's contention that he had a protected liberty interest in avoiding disciplinary custody is frivolous. This is a question of constitutional fact over which we exercise independent appellate review "in order to preserve the precious liberties established and ordained by the Constitution." *Fabulous Assoc., Inc. v. Pa. Pub. Util. Comm'n,* 896 F.2d 780, 783 (3d Cir.1990) (quoting *Bose Corp. v. Consumers Union,* 466 U.S. 485, 511, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)).

The District Court, citing *Sandin*, dismissed Mitchell's claim as frivolous because "prison regulations on confinement of inmates do not create a liberty interest enforceable in a § 1983 action." However, *Sandin* did not pronounce a *per se* rule, as the District Court's opinion implies. In *Sandin*, to determine whether the prisoner's treatment—thirty days disciplinary segregation for resisting a strip search—implicated a liberty interest, the Supreme Court carefully compared the circumstances of the prisoner's confinement with those of other inmates. It found no liberty interest implicated because the prisoner's "disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody" in that "conditions at [the prison] involve[d] significant amounts of 'lockdown time' even for inmates in the general population." *Sandin,* 515 U.S. at 486, 115 S.Ct. 2293. But the Court left open the possibility that a liberty interest will be implicated by conditions ***532** that impose an "atypical and significant hardship." *Id.* at 484, 115 S.Ct. 2293.

**[16]** In deciding whether a protected liberty interest exists under *Sandin*, we consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *See* *Shoats v. Horn,* 213 F.3d 140, 144 (3d Cir.2000). Not surprisingly, our cases engaging in this inquiry have reached differing outcomes, reflecting the fact-specific nature of the *Sandin* test. *Compare* *Leamer v. Fauver,* 288 F.3d 532, 545 (3d Cir.2002) denial of the right to participate in a sex offender treatment program that was "mandated and promised" by New Jersey law implicated a protected liberty interest, *and* *Shoats,* 213 F.3d at 144 (eight years in administrative confinement, during which inmate was locked in his cell for all but two hours per week, denied contact with his family, and prohibited from visiting the library or "participating in any education, vocational, or other organization activities," clearly implicated a protected liberty interest), *with* *Smith,* 293 F.3d at 645, 654 (seven months in disciplinary confinement did not implicate a liberty interest), *Torres v. Fauver,* 292 F.3d 141, 151–52 (3d Cir.2002) (disciplinary detention for fifteen days and administrative segregation for 120 days was not atypical treatment in New Jersey prisons and therefore did not implicate a protected liberty interest), *and* *Griffin v. Vaughn,* 112 F.3d 703, 706–09 (3d Cir.1997) (administrative detention, which imposed strict restrictions on outside contact and personal conveniences, did not implicate a protected liberty interest).

This case appears to bear some similarity to *Griffin*, which also involved a Graterford inmate. We held that Griffin, who was detained for fifteen months in administrative custody under restrictions comparable to those here, did not have a liberty interest in avoiding that confinement. *See id.* The differences Mitchell has thus far raised between his case and *Griffin* appear, without more, constitutionally insignificant. For example, inmates in disciplinary custody[5] like Mitchell are permitted only one visitor every month and one pack of cigarettes every two weeks, DC–ADM 801 VI(D)(2), (4), whereas inmates in administrative custody like Griffin are allowed one visitor and two packs of cigarettes per week, Commonwealth of Pa., Dep't of Corr., *Administrative Custody Procedures*, Policy Statement DC–ADM 802 V(A)(1), (3) (Oct. 29, 1992). This marginal difference does not appear to

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

cross the constitutional line. Moreover, the prisoner in *Sandin*, whom the Supreme Court held did not bear "atypical and significant hardship," *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293, was, like Mitchell, in disciplinary custody.

**[17]** However, apparent similarities between *Griffin* and this case notwithstanding, given this case's procedural posture and the fact that Mitchell prepared his complaint *pro se*, the record is not sufficiently developed for us to determine whether there were other features of Mitchell's confinement that meaningfully distinguished his situation from that in *Griffin*. *See* *Perkins v. Kan. Dep't of Corr.,* 165 F.3d 803, 809 (10th Cir.1999) (reversing district court's *sua sponte* dismissal ***533** because the court "did not have the evidence before it from which it could engage in the analysis required by *Sandin*"); *Whitford v. Boglino,* 63 F.3d 527, 533 (7th Cir.1995) (same). Given the "fact-intensive inquiry" implied by *Sandin*, *see* *Ayers v. Ryan,* 152 F.3d 77, 83 (2d Cir.1998), we remand for development of the record. [6]

### D. Emotional Injury

Section 803(d) of the Prison Litigation Reform Act, codified at 42 U.S.C. § 1997e(e), predicates a prisoner's claim for mental or emotional injury suffered while in custody on a showing of accompanying physical injury. [7] The District Court, citing this provision, dismissed Mitchell's complaint to the extent it sought relief for "emotional trauma." Implicit in this dismissal is the determination that Mitchell has not alleged a physical injury. Mitchell, however, argues that the allegations in his conditions-of-confinement claim—that he was deprived of food, drink, and sleep for four days —describe physical injuries. Moreover, he contends that any physical injury, however minor, satisfies § 1997e(e) because that statutory section contains no requirement that the injury be more than *de minimis*. We hold that Mitchell has not stated a claim for physical injury, but grant him leave to amend his complaint in order to do so. We also agree with other circuits that have read 1997e(e) to require more than a *de minimis* physical injury before an emotional injury may be alleged.

#### 1. The Scope of § 1997e(e)

Section 1997e(e)'s requirement that a prisoner demonstrate physical injury before he can recover for mental or emotional injury applies only to claims for compensatory damages. Claims seeking nominal or punitive damages are typically not "for" mental or emotional injury but rather "to vindicate constitutional rights" or "to deter or punish egregious violations of constitutional rights," respectively. *See* *Allah v. Al–Hafeez,* 226 F.3d 247, 252 (3d Cir.2000). Accordingly, regardless how we construe § 1997e(e)' s physical injury requirement, it will not affect Mitchell's ability to seek nominal or punitive damages for violations of his constitutional rights. [8]

**[18]** We also agree with several other courts of appeals that § 1997e(e) does not apply to claims seeking injunctive or declaratory relief. [9] *See* *Thompson v. Carter,* 284 F.3d 411, 418 (2d Cir.2002) ("Section 1997e(e) does not prevent a prisoner from obtaining injunctive or declaratory relief." ***534** ); *Harris v. Garner,* 190 F.3d 1279, 1288 (11th Cir.1999), *vacated and reh'g en banc granted*, 197 F.3d 1059 (11th Cir.1999), *reinstated in part on reh'g*, 216 F.3d 970 (11th Cir.2000) (en banc), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001) (same); *Harper v. Showers,* 174 F.3d 716, 719 (5th Cir.1999) (same); *Perkins v. Kan. Dep't of Corr.,* 165 F.3d 803, 808 (10th Cir.1999) (same); *Davis v. Dist. of Columbia,* 158 F.3d 1342, 1346 (D.C.Cir.1998) (same); *Zehner v. Trigg,* 133 F.3d 459, 462–63 (7th Cir.1997) (same). Again, such claims seek not to remedy mental injury suffered but rather relief from ongoing or future constitutional violations. Moreover, § 1997e(e)'s reference to remedies for mental injuries "suffered"—in the past tense—implies that it does not restrict prospective equitable relief. *See* *Harris,* 190 F.3d at 1288; *Davis,* 158 F.3d at 1346. [10]

#### 2. Physical injury requirement

**[19]** The Commonwealth argues that Mitchell's allegations that he was deprived of food, drink, and sleep for four days do not describe a physical injury. Mitchell counters that physical injury—including starvation, dehydration, unconsciousness, pain, and hypoglycemia—follow inevitably from the conditions he alleges, and that he should not be penalized for inartful pleading. He notes also that his complaint alleged that these deprivations placed his "life and

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

health in jeopardy." Finally, he argues that, if necessary, he could easily amend his complaint to state physical injuries.

Loss of food, water, and sleep are not themselves physical injuries. However, physical injuries could result from such deprivation after four days. While no physical injuries were alleged in Mitchell's complaint, to the extent that they can be included in good faith in an amended complaint, Mitchell is permitted that opportunity to amend.

**3. The *de minimis* standard**

**[20]** If in an amended complaint Mitchell sufficiently alleges physical injury, an additional issue occurs: under § 1997e(e), must that physical injury be more than de minimis before he can assert emotional injury? As this is a question of statutory interpretation, it is subject to plenary review. *See* *Gibbs v. Cross,* 160 F.3d 962, 964 (3d Cir.1998).

**[21]** Other courts of appeals have read 1997e(e) to require a less-than-significant-but-more-than-*de minimis* physical injury as a predicate to allowing the successful pleading of an emotional injury. *See* *Oliver v. Keller,* 289 F.3d 623, 626–28 (9th Cir.2002); *Harris,* 190 F.3d at 1286–87 (11th Cir.); *Siglar v. Hightower,* 112 F.3d 191, 193–94 (5th Cir.1997).[11] In *Siglar*, the Fifth Circuit based its holding on the fact that the Circuit's Eighth Amendment jurisprudence requires more than a *de minimis*, but not a significant, physical injury. *Siglar,* 112 F.3d at 193. The Eleventh ***535** Circuit in *Harris* followed *Siglar*. The *Harris* Court also found significant that, in enacting 1997e(e), Congress sought to curtail frivolous prisoner litigation. Reading 1997e(e) to find any allegation of physical injury sufficient would "undermine the statute's essential purpose." *Harris,* 190 F.3d at 1286. It would also make "no sense in light of our basic understanding that 'routine discomfort is part of the penalty that criminal offenders pay for their offenses against society.' " *Id.* (quoting *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). The *Oliver* Court reached the same conclusion, but rejected the Fifth and Eleventh Circuits' reliance on Eighth Amendment jurisprudence.[12] *Oliver,* 289 F.3d at 628. Rather, *Oliver* found persuasive that Congress intended to reduce the volume of frivolous prisoner suits, *id.* at 627–28, and rejected the notion that 1997e(e)'s plain meaning is clear, *see id.* at 628 n. 6.

**[22]** **[23]** **[24]** Two canons of statutory construction drive our analysis. First, "the starting point for interpreting a statute is the language of the statute itself." *Smith v. Fid. Consumer Disc. Co.,* 898 F.2d 907, 909 (3d Cir.1990) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)). We do not look past the plain meaning unless it produces a result "demonstrably at odds with the intentions of its drafters," *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 563, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (internal quotation marks omitted), or an outcome "so bizarre that Congress could not have intended it," *Demarest v. Manspeaker,* 498 U.S. 184, 191, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991) (internal quotation marks omitted). Second, we attempt to ascribe meaning to each statutory provision. *Newmark v. Principi,* 283 F.3d 172, 176 (3d Cir.2002) ("It is incumbent upon courts to read each statutory provision as having meaning, and to construe the statute so the 'meaning of each word inform[s] the others and all in their aggregate tak[e] their purport from the setting in which they are used.' ") (quoting *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am.,* 508 U.S. 439, 454, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993)) (internal quotation marks omitted) (alterations in original).

We believe that reading 1997e(e) to allow a plaintiff to allege any physical injury, no matter how minor, would produce an unintended (indeed absurd) result. Were we not to read 1997(e) as requiring more than a *de minimis* physical injury, we would turn its physical injury prerequisite into a mere pleading requirement, thereby rendering the requirement meaningless as a practical matter. Another prisoner might be able to assert an emotional injury by pleading that he received a paper cut, for example. This result runs counter to Congress's intent "to curtail frivolous and abusive prisoner litigation." *Harris,* 190 F.3d at 1286 (quoting *Alexander v. Hawk,* 159 F.3d 1321, 1324 (11th Cir.1998)); *see* 141 Cong. Rec. S7525 (daily ed. May 25, 1995) (statement of Senator Dole). In so doing, Congress noted that, "unlike physical injuries, emotional injuries are inherently difficult to verify and therefore tend to be concocted for frivolous suits." *Dawes v. Walker,* 239 F.3d 489, 496 (2d Cir.2001) (Walker, J.). On the other hand, we do not adopt a test that would prevent those experiencing real physical injury at the hands of government officials from ***536** pursuing their rights. We therefore follow the approach

of the Fifth, Ninth, and Eleventh Circuits in requiring a less-than-significant-but-more-than-*de minimis* physical injury as a predicate to allegations of emotional injury. [13]

Because this case has come to us at the pleading stage, and because Mitchell's complaint does not specifically describe the extent of his physical injuries, we are not able to determine whether his injuries are more than *de minimis*. Thus, the District Court will need to address on remand this question as well. Mitchell's amending his complaint to allege more specifically the physical injuries he suffered might facilitate this inquiry.

### IV. Conclusion

If Mitchell were not provided grievance forms (a fact that needs to be determined by the District Court on remand), he has exhausted the available administrative remedies on his conditions-of-confinement claim as required by § 1997e(a). In any event, he has stated a nonfrivolous retaliation claim. On remand, the District Court should also determine whether Mitchell has been subjected to "atypical and significant hardship" implicating a protected liberty interest that triggers due process rights at his disciplinary hearing, and, if so, whether those rights were violated. Finally, he is given the opportunity to amend his complaint to allege physical injury within the meaning of § 1997e(e). If his amended complaint alleges physical injury, the District Court must determine whether it is more than *de minimis* as a predicate to asserting emotional injury. In this context, we reverse the District Court's dismissal of the complaint and remand for further proceedings not inconsistent with this opinion.

**All Citations**

318 F.3d 523

## Footnotes

* The Honorable Marjorie O. Rendell participated in the oral argument and conference and joined in the decision in this case on August 1, 2002, but became recused from this matter prior to filing of the opinion. This opinion and judgment are being entered insofar as the remaining judges are unanimous in this decision.

1 In early 1997, Mitchell filed a "private complaint" against Officer Wilson, whom he accused of planting contraband under his locker. The record does not reflect how or even whether this private complaint was resolved.

2 We appreciate the candor and professionalism of the Commonwealth's counsel. We extend as well our appreciation to Mitchell's appointed counsel for the time and talent they have dedicated to this case.

3 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

4 Additionally, state prisoners have a protected liberty interest in avoiding restraints that "exceed[ ] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293. Examples would be involuntary administration of psychotropic medication, *see* *Washington v. Harper,* 494 U.S. 210, 221–22, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), or involuntary transfer to a state mental hospital for treatment, *see* *Vitek v. Jones,* 445 U.S. 480, 494, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). Mitchell does not contend that his transfer falls into such a category.

5 Disciplinary custody is the “maximum restrictive status of confinement” for inmates in the Pennsylvania prison system. DC–ADM 801 IV(B). Administrative custody is a “status of confinement for non-disciplinary reasons which provides closer supervision, control, and protection than is provided in general population.” Commonwealth of Pa., Dep't of Corr., *Administrative Custody Procedures*, Policy Statement DC–ADM 802 IV(A) (Oct. 29, 1992).

6 In performing the inquiry *Sandin* requires, the District Court on remand will need to consider whether the deplorable conditions of Mitchell's cell during a portion of his disciplinary confinement implicated a protected liberty interest.

7 42 U.S.C.1997e(e) states that “[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.”

8 Mitchell's complaint specifically requests punitive damages but not nominal damages. As for the latter, however, “it is not necessary to allege nominal damages.” *Allah,* 226 F.3d at 251 (quoting *Basista v. Weir,* 340 F.2d 74, 87 (3d Cir.1965)) (internal quotation marks omitted). Moreover, Mitchell's complaint seeks “other relief as it may appear the plaintiff is entitled.” We construe this “catch-all” prayer broadly to include a request for nominal damages. Furthermore, he has requested nominal damages in this appeal.

9 We express no opinion, however, as to whether Mitchell has standing to bring a claim for equitable relief in light of the requirement, enunciated in *Los Angeles v. Lyons,* 461 U.S. 95, 105, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), that a plaintiff seeking equitable relief demonstrate that his injury is likely to be repeated.

10 We also observe that, apart from his claims for mental injury, Mitchell seeks damages for loss of “status, custody level and any chance at commutation.” These requests—unrelated to mental injury—are not affected by § 1997e(e)'s requirements.

11 The Ninth Circuit stated in *Oliver,* 289 F.3d at 627, that the Second Circuit has also adopted the *de minimis* standard in *Liner v. Goord,* 196 F.3d 132, 135 (2d Cir.1999), when the latter court wrote: “Certainly, the alleged sexual assaults would constitute more than *de minimis* injury if they occurred. *Cf.* *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir.1997) (relying on Eighth Amendment jurisprudence, court holds that physical injury required by § 1997e(e) must simply be more than *de minimis*).” However, we do not read this statement as adopting any particular standard, *de minimis* or otherwise.

12 The Court concluded that the Fifth Circuit did not accurately describe the Eighth Amendment standard set out in *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), which requires more than *de minimis* physical force—not more than *de minimis* physical injury—to state an Eighth Amendment claim.

13 Our requirement of more than *de minimis* physical injury for § 1997e(e) claims is not based on an analogy to Eighth Amendment jurisprudence, as is true in the Fifth and Eleventh Circuits. *See* *Harris,* 190 F.3d at 1286–87; *Siglar,* 112 F.3d at 193. Section 1997e(e)'s requirement is not limited to suits alleging Eighth Amendment violations. *See, e.g.*, *Thompson,* 284 F.3d at 415–17 (due process claim); *Allah,* 226 F.3d at 250 (First Amendment claim). Thus, while in *Smith v. Mensinger,* 293 F.3d 641 (3d Cir.2002), we refused to apply a more-than-*de minimis*-injury requirement in the Eighth Amendment context—holding

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

instead that the Eighth Amendment was triggered by more than *de minimis* force—that holding does not inform our analysis of the 1997e(e) issue here.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.