544 Fed.Appx. 75
This case was not selected for publication in West's Federal Reporter. See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also U.S.Ct. of Appeals 3rd Cir. App. I, IOP 5.1, 5.3, and 5.7.
United States Court of Appeals, Third Circuit.

Michael HINTON, Appellant
v.
Timothy MARK, Chief Hearing Examiner; Raymond Sobina, Superintendent; Patti McKissoch, Hearing Examiner; Mr. Patz, Psychologist; Sandra Gorniak, Accountant.

No. 12–2176
|
Submitted Pursuant to Third Circuit LAR 34.1(a) Nov. 12, 2013.
|
Opinion filed: Nov. 13, 2013.

**Synopsis**
**Background:** State prisoner brought § 1983 action alleging that prison officials failed to prevent his suicide attempt, improperly prevented him from sending money from his prison account to hire an attorney, and violated his constitutional rights at subsequent prison hearings. The United States District Court for the Western District of Pennsylvania, Kim R. Gibson, J., dismissed sua sponte, and prisoner appealed.

**Holdings:** The Court of Appeals held that:

[1] prisoner stated claim against prison officials for failing to prevent his suicide attempt;

[2] prisoner plausibly alleged his due process rights were violated when prison accountant blocked his attempt to send $570 from his prison account to hire a lawyer; and

[3] claim that officials violated due process by assessing his prisoner's account for medical costs related to his suicide attempt was not suitable for sua sponte dismissal.

Vacated and remanded.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

West Headnotes (3)

[1] **Prisons** Suicide

State prisoner's allegations were sufficient to state § 1983 claim against prison officials for failing to prevent his suicide attempt; prisoner alleged he announced that he intended to kill himself, that corrections officer then summoned prison psychologist to his cell, that he then directly told psychologist that he was suicidal, that psychologist knew about his history of suicide attempts and was aware that one of his family members had recently died, that psychologist considered placing prisoner in a psychiatric observation cell but did not do so because those cells were full, and instead noted that he was getting ready to leave for the weekend, stated that he could not do anything until Monday, and simply counseled prisoner to "be cool." 42 U.S.C.A. § 1983.

11 Cases that cite this headnote

[2] **Constitutional Law** Property and employment

**Constitutional Law** Access to courts

**Prisons** Money and finances; inmate accounts

**Prisons** Legal Assistance; Right to Counsel

State prisoner plausibly alleged that his due process rights were violated when a prison accountant blocked his attempt to send $570 from his prison account to his family to hire a lawyer to represent him at the disciplinary hearing for his suicide attempt. U.S.C.A. Const.Amend. 14.

[3] **Federal Civil Procedure** Dismissal on court's own motion

**Federal Civil Procedure** Fact issues

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

State prisoner's pro se § 1983 claim, that prison officials violated his due process rights by assessing his prison account for medical costs related to his suicide attempt, was not suitable for sua sponte dismissal, in light of the limited record and of the possibility that prisoner was not afforded an opportunity to challenge whether his prison account should be assessed; prisoner alleged that he never had a hearing to adjudicate whether his prison account could be debited, as required by Pennsylvania law, and that money was withdrawn from his prison account to pay the medical costs. U.S.C.A. Const.Amend. 14; 37 Pa.Code § 93.12(c)(2).

1 Case that cites this headnote

***76** On Appeal from the United States District Court for the Western District of Pennsylvania, (D.C. Civil Action No. 10–cv–00305), District Judge: Honorable Kim R. Gibson.

**Attorneys and Law Firms**

Michael Hinton, Pittsburgh, PA, pro se.

Attorney General Pennsylvania, Office of Attorney General of Pennsylvania, Pittsburgh, PA, for Timothy Mark, Chief Hearing Examiner; Raymond Sobina, Superintendent; Patti McKissoch, Hearing Examiner; Mr. Patz, Psychologist; Sandra Gorniak, Accountant.

Before: FUENTES, GREENBERG and VAN ANTWERPEN, Circuit Judges.

OPINION

PER CURIAM.

Michael Hinton, a Pennsylvania state prisoner proceeding pro se, appeals an order of the United States District Court for the Western District of Pennsylvania that sua sponte dismissed his civil rights action. For the reasons below, we will vacate the judgment of the District Court and remand for further proceedings.

In 2010, Hinton filed a complaint, which he later amended, pursuant to 42 U.S.C. § 1983, alleging that prison officials failed to prevent his suicide attempt, improperly prevented him from sending money from his prison account to hire an attorney, and violated his constitutional rights at subsequent prison hearings. A Magistrate Judge recommended dismissing the complaint sua sponte for failure to state a claim. The District Court adopted that recommendation and denied further leave to amend the complaint. Hinton appealed. [1]

Hinton claimed that he has a "history of suicide attempts ... based on [his] mental illness." Compl., ¶ 21 (Dist.Ct.Doc.1–2). While incarcerated at SCI–Albion on January 2, 2009, Hinton pressed an "emergency call button" in his cell. When a corrections officer responded, Hinton stated that he was contemplating suicide because he had recently learned about the death of a family member. Consequently, Mr. Patz, a prison psychologist, went to see Hinton in his cell. When Hinton repeated his suicide threat to Patz, Patz "told [Hinton] that the psychiatric observation cell was full [and] that [Hinton] has to be cool because [Patz] was getting ready to leave for today [and] could not do anything until Monday." Compl. ¶ 16. Later, Hinton took nine Sinequan pills in an attempt to kill himself. A corrections officer who witnessed the suicide attempt contacted the prison medical staff, who had Hinton transported to the hospital. He remained in the hospital until January 4, 2009.

The Magistrate Judge concluded that "Hinton alleges at most that Patz failed to take additional steps that a reasonable person might have taken to prevent Hinton's alleged suicide attempt. If Hinton had actually suffered harm[,] that might at most amount to an allegation of negligence, but not deliberate indifference." [2] ***77** The Magistrate did not specifically consider the three elements that plaintiffs in prison suicide cases bear the burden of establishing: "(1) the detainee had a 'particular vulnerability to suicide,' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with reckless indifference' to the detainee's particular vulnerability." [3] *Colburn v. Upper Darby Twp.,* 946 F.2d 1017, 1023 (3d Cir.1991) (quoting *Colburn v. Upper Darby Twp.,* 838 F.2d 663, 669 (3d Cir.1988)).

**[1]** Hinton's allegations state a claim under this standard. Hinton announced that he intended to kill himself, which indicates a "strong likelihood, rather than a mere possibility, that self-inflicted harm will occur." *Colburn,* 946 F.2d

at 1024 (quoting *Torraco v. Maloney,* 923 F.2d 231, 236 (1st Cir.1991)). Patz was clearly aware of this likelihood. He had been summoned to Hinton's cell by a corrections officer who had responded to Hinton's emergency call. Hinton then directly told Patz that he was suicidal. Hinton claims that Patz knew about his history of suicide attempts and was aware that one of his family members had recently died, factors which arguably increase the likelihood of self-harm. Am. Compl. ¶ 1 (Dist.Ct.Doc. No. 11). These allegations demonstrate that Patz knew that Hinton had a "particular vulnerability to suicide." *Colburn,* 946 F.2d at 1025 (noting that "[t]he strong likelihood of suicide must be so obvious that a lay person would easily recognize the necessity for preventative action; the risk of self-inflicted injury must not only be great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges."). Moreover, Patz arguably acted with reckless indifference. He allegedly considered placing Hinton in a "psychiatric observation cell," but did not do so because those cells were full. Instead, Patz noted that he was getting ready to leave for the day (it was a Friday), stated that he could not do anything until Monday, and simply counseled Hinton to "be cool." Under these circumstances, it was error to sua sponte dismiss the complaint for failure to state a claim. *See* *Colburn,* 838 F.2d at 669 (3d Cir.1988) (stating that "failure to take any steps to save a suicidal [inmate] from injuring himself may also constitute" a constitutional violation.).

Hinton was "given a misconduct" for his suicide attempt. Compl. ¶ 15. A disciplinary hearing was held on January 9, 2009, and Hinton pleaded guilty. *Id.* at ¶ 16. He was ordered to serve 90 days in disciplinary confinement and his prison account was "assess[ed][for] any costs incurred as a result of his actions." *See* Am. Compl., Ex. A (Dist.Ct.Doc. No. 7–1). The Department of Corrections ("DOC") notified Hinton that a hearing would be held to determine the amount of money that would be assessed from his account. He was assessed a fee of $6318.30, and his rate of payment was set at 30%. *See* Objections to Report and Recommendation ("R & R"), Ex. A (Dist.Ct.Doc. No. 14–1). Hinton also claimed that a prison accountant, Sandra ***78** Gorniak, blocked his attempt to send $570 from his prison account to his family to hire a lawyer to represent him at that hearing. *See* Am. Compl., ¶ 7 (Dist.Ct.Doc. No. 7).

**[2]** With respect to the attempted $570 withdrawal, the Magistrate Judge held that Hinton's claims were "implausible."[4] We disagree. To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). It is not implausible that Gorniak prevented Hinton from withdrawing money from his prison account. Moreover, such action can constitute a due process violation. *See* *Reynolds v. Wagner,* 128 F.3d 166, 179 (3d Cir.1997) (recognizing that inmates have a property interest in their prison account funds); *see also* *Burns v. PA Dept. of Corr.,* 544 F.3d 279, 291 (3d Cir.2008) (holding that assessment of prison funds, as distinguished from an actual deduction or seizure, constituted a protected property interest for purposes of procedural due process).

**[3]** The Magistrate Judge also rejected Hinton's due process claim pertaining to the assessment of his prison account for medical costs related to his suicide attempt. "[C]harging inmates for medical fees is not unconstitutional *per se* [,]" and due process may be satisfied if the inmate has notice of the fee policy and access to post-deprivation remedies. *Reynolds,* 128 F.3d at 179–81. Under Pennsylvania law, the DOC "will charge a fee to an inmate for ... [m]edical service provided to the inmate as the result of a self-inflicted injury...." 37 Pa.Code § 93.12(c)(2). Whether an inmate is responsible for that fee is determined at a disciplinary hearing, while the amount of that fee is separately determined at what is known as a "*Holloway* hearing." *Burns v. PA Dept. of Corr.,* 642 F.3d 163, 178–79 (3d Cir.2011).

Hinton claims that he "never had a hearing" to adjudicate whether his prison account could be debited. Am. Compl., ¶ 4 (Dist.Ct.Doc. No. 11). In support of this assertion, Hinton notes that the Misconduct Number on the Disciplinary Hearing Report (B046684) does not match the Misconduct Number listed on the *Holloway* hearing notice (A466795). *See* Am. Compl., Exs. A & C (Dist.Ct.Doc. No. 7–1). If, as the Magistrate Judge concluded, this was simply a clerical error, it is likely that there was no due process violation. Notably, the Disciplinary Hearing Report states, "assess inmate's account any costs incurred as a result of his actions."[5] But Hinton asserts that the charge that he pleaded guilty to at the Disciplinary Hearing (identified on the Report simply as "36") pertained to possession of contraband, and that the DOC


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

issued a separate Misconduct Number (A842593) for offenses related to his suicide attempt. It could be that the possession of contraband charge was related to the Sinequan pills ingested by Hinton, and that his guilty plea to that charge was sufficient to support the prison account assessment sanction.

Given the limited record, however, it is difficult to sort out this claim. The Magistrate Judge avoided the shortcomings in the record by concluding that Hinton ***79** "does not allege that any amount was assessed before his *Holloway* hearing, nor even that any amount has been taken from his account since then." Clearly, though, Hinton asserted that money was withdrawn from his prison account to pay the medical costs. *See* Am. Compl., ¶ 12 (Dist.Ct.Doc. No. 11) (stating that a defendant "even went as far as to ... go on in deducting and taking funds for medical expenses unjustly."); Objections to R & R, Exhibits A–1 to A–3 (Dist.Ct.Doc. No. 14–1) (copies of inmate account statements listing deductions for "medical costs"). Based on the possibility that Hinton was not afforded an opportunity to challenge whether his prison account should be assessed, we conclude that this claim was not suitable for sua sponte dismissal.

For the foregoing reasons, we will vacate the District Court's judgment and remand for further proceedings consistent with this opinion. [6]

**All Citations**

544 Fed.Appx. 75

## Footnotes

1 We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review of the District Court's sua sponte dismissal for failure to state a claim. *See* *Allah v. Seiverling,* 229 F.3d 220, 223 (3d Cir.2000). In deciding whether the District Court's dismissal of Hintons' complaint was proper, we "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996).

2 To the extent that the Magistrate Judge concluded that Hinton's claim failed because he did not satisfy the physical injury requirement of 42 U.S.C. § 1997e(e), this was error. *Cf.* *Mitchell v. Horn,* 318 F.3d 523, 536 (3d Cir.2003) ("requiring a less-than-significant-but-more-than-de minimis physical injury as a predicate to allegations of emotional injury.").

3 Although this standard is framed in terms of pretrial detainees, we note that the same standard may apply to convicted prisoners. *See* *Woloszyn v. County of Lawrence,* 396 F.3d 314, 319 n. 5 (3d Cir.2005) (noting that "in developing our jurisprudence on pre-trial detainees' suicides we looked to the Eighth Amendment, which prohibits the infliction of cruel and unusual punishment on convicted prisoners....").

4 The Magistrate Judge also noted that Hinton "does not even identify his counsel." It is not clear, however, why such identification is necessary to state a claim.

5 This statement undermines Hinton's allegation that the Report fails to "include a statement describing the item ... or the reimbursement that may be ordered...." Am. Compl., ¶ 4 (Dist.Ct.Doc. No. 11).

6 We grant Hinton's motion to supplement the appendix with an affidavit that was submitted to the District Court. Fed. R.App. P. 10(e)(2)(C). Hinton's "Motion to Response to Appellant Brief," which requests sanctions against the Appellees for failing to file a brief, is denied. We also deny Hinton's request to have the Department of Corrections cease deducting filing fees from his prison account pending the outcome of this appeal.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.